| | |
|---|---|
| DUNN ISAACSON RHEE LLP<br>KAREN L. DUNN (*pro hac vice*)<br>kdunn@dirllp.com<br>JESSICA E. PHILLIPS (*pro hac vice*)<br>jphillips@dirllp.com<br>KYLE N. SMITH (*pro hac vice*)<br>ksmith@dirllp.com<br>401 9th Street NW<br>Washington, DC 20004<br>Telephone: (202) 240-2900<br><br>CLEARY GOTTLIEB STEEN &<br>HAMILTON LLP<br>ANGELA L. DUNNING (212047)<br>adunning@cgsh.com<br>1841 Page Mill Road, Suite 250<br>Palo Alto, CA 94304<br>Telephone: (650) 815-4131 | COOLEY LLP<br>KATHLEEN R. HARTNETT (314267)<br>khartnett@cooley.com<br>MARK R. WEINSTEIN (193043)<br>mweinstein@cooley.com<br>ELIZABETH L. STAMESHKIN (260865)<br>lstameshkin@cooley.com<br>3175 Hanover Street<br>Palo Alto, CA 94304-1130<br>Telephone: (650) 843-5000<br><br>BOBBY A. GHAJAR (198719)<br>bghajar@cooley.com<br>1333 2nd Street, Suite 400<br>Santa Monica, CA 90401<br>Telephone: (310) 883-6400<br><br>PHILLIP MORTON (*pro hac vice forthcoming*)<br>pmorton@cooley.com<br>1299 Pennsylvania Avenue NW, Suite 700<br>Washington, DC 20004<br>Telephone: (202) 842-7800 |

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN CARREYROU, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC, et al.,<br><br>        Defendants. | Case No. 3:25-cv-10897<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO SEVER**<br><br>Date: April 9, 2026<br>Time: 10:00 a.m.<br>Dept: Courtroom 8, 4th Floor<br>Judge: The Honorable P. Casey Pitts<br><br>Trial Date: None<br>Date Action Filed: December 22, 2025 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii
NOTICE OF MOTION ............................................................................................................... 1
INTRODUCTION ....................................................................................................................... 2
BACKGROUND AND PROCEDURAL FACTS ...................................................................... 3
    I.    This Action ..................................................................................................................... 3
    II.   The *Kadrey* Action ....................................................................................................... 4
    III.  The *Entrepreneur* Action ............................................................................................. 5
    IV.  Other Actions Involving Other Defendants ................................................................. 6
LEGAL STANDARD ................................................................................................................. 6
ARGUMENT ............................................................................................................................... 7
    I.    Plaintiffs' Claim Against Meta Does Not Arise Out of the Same Transaction or Occurrence as Their Claims Against Other Defendants ............................................. 7
    II.   The Claim Against Meta Presents Distinct Questions of Fact and Law from Their Claims Against the Other Defendants ........................................................................ 10
    III.  The Claim Against Meta Will Require Distinct Witnesses and Documentary Proof ............. 11
    IV.  Severance Would Promote Judicial Economy Because the Claim Against Meta Substantially Overlaps With Those in *Kadrey* and *Entrepreneur* ........................... 12
    V.   Severance Would Avoid Prejudice to Meta and Would Not Prejudice Plaintiffs ..... 13
CONCLUSION .......................................................................................................................... 15

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Adobe Sys. Inc. v. A & S Elecs., Inc.*,
 2016 WL 9114001 (N.D. Cal. June 20, 2016) ................................................................. 7

*Adobe Sys. Inc. v. Colorado Internet Servs.*,
 2014 WL 1007627 (N.D. Cal. Mar. 12, 2014) ............................................................. 7, 9

*Afifeh v. Ahmadabadi*,
 2022 WL 1617115 (C.D. Cal. Apr. 15, 2022) ................................................................. 8

*Bartz v. Anthropic PBC*,
 787 F. Supp. 3d 1007 (N.D. Cal. 2025) ........................................................................ 14

*Bravado Int'l Grp. Merch. Servs. v. Cha*,
 2010 WL 2650432 (C.D. Cal. June 30, 2010) ................................................................ 8

*Bridgeport Music, Inc. v. 11C Music*,
 202 F.R.D. 229 (M.D. Tenn. 2001) ............................................................................ 9, 10

*Coleman v. Quaker Oats Co.*,
 232 F.3d 1271 (9th Cir. 2000) ...................................................................................... 12

*Colors of India v. Nielsen*,
 2018 WL 6430118 (C.D. Cal. Oct. 19, 2018) ............................................................... 13

*Coughlin v. Rogers*,
 130 F.3d 1348 (9th Cir. 1997) .................................................................................. 8, 10

*E.C. v. Lincoln Military Prop. Mgmt. LP*,
 2022 WL 4241734 (S.D. Cal. Sept. 13, 2022) .............................................................. 12

*EIT Holdings LLC v. Yelp!, Inc.*,
 2011 WL 2192820 (N.D. Cal. May 12, 2011) ........................................................... 9, 11

*Fashion Ave. Sweater Knits, LLC v. A'Gaci, LLC*,
 2020 WL 13248958 (C.D. Cal. Oct. 26, 2020) ............................................................... 7

*Golden Scorpio Corp. v. Steel Horse Bar & Grill*,
 596 F. Supp. 2d 1282 (D. Ariz. 2009) ............................................................................ 9

*Hernandez v. City of San Jose*,
 2017 WL 2081236 (N.D. Cal. May 15, 2017) .............................................................. 10

*In re EMC Corp.*,
 677 F.3d 1351 (Fed. Cir. 2012) .................................................................................. 8, 9

*Jetpack Enters., LLC v. Jetlev, LLC*,
 2016 WL 11020227 (C.D. Cal. Aug. 31, 2016) ............................................................ 10

*Joanne Fabric, Inc. v. Brad & Zoe, Inc.*,
 2018 WL 6137158 (C.D. Cal. Apr. 4, 2018) .................................................................. 8

| | |
|---|---|
| *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026 (N.D. Cal. 2025) | 5, 14 |
| *Khanna v. State Bar of Cal.*, 2007 WL 2288116 (N.D. Cal. Aug. 7, 2007) | 7 |
| *L.B. v. LinkedIn Corp.*, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) | 7, 13, 14 |
| *Lam Rsch. Corp. v. Flamm*, 2016 WL 1237831 (N.D. Cal. Mar. 30, 2016) | 14 |
| *Netlist, Inc. v. Smart Modular, Inc.*, 2013 WL 12128691 (C.D. Cal. Nov. 26, 2013) | 12 |
| *On The Cheap, LLC v. Does 1-5011*, 280 F.R.D. 500 (N.D. Cal. 2011) | 8 |
| *Sw. Fair Hous. Council v. WG Chandler Villas SH LLC*, 2019 WL 1382500 (D. Ariz. Mar. 27, 2019) | 14 |
| *Third Degree Films, Inc. v. John Does 1 Through 4*, 2013 WL 3762625 (S.D. Cal. July 16, 2013) | 7 |
| *Trazo v. Nestle USA, Inc.*, 2013 WL 12214042 (N.D. Cal. Dec. 4, 2013) | 10, 13 |
| *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067 (C.D. Cal. 2002) | 10 |
| *XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*, 2022 WL 18110171 (S.D. Cal. Nov. 22, 2022) | 13, 14 |

**Rules**

| | |
|---|---|
| Fed. R. Civ. P. 20(a)(2) | 6, 7 |
| Fed. R. Civ. P. 21 | 7 |

**Treatises**

| | |
|---|---|
| 7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1653 (3d ed. 2025) | 8 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on April 9, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable P. Casey Pitts of the United States District Court for the Northern District of California, Defendant Meta Platforms, Inc. ("Meta") will and does move this Court for an order severing Plaintiffs' claim against Meta in this action from their claims against the other Defendants. This motion is brought under Federal Rule of Civil Procedure 21, including on the grounds that Plaintiffs' Copyright Act claim against Meta arises from different transactions or occurrences than those underlying Plaintiffs' claims against the other Defendants. Plaintiffs' claim against Meta is also related to (and, indeed, squarely overlaps with) the claims in *Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC (N.D. Cal.), and *Entrepreneur Media, LLC v. Meta Platforms, Inc.*, No. 3:25-cv-09579-VC (N.D. Cal.), both pending before Judge Chhabria, and thus should be severed from this case to facilitate its relation to those actions.

Meta's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, any other matters of which the Court may take judicial notice, other documents on file in this action, any oral argument of counsel, and any other matters properly before the Court.

Dated: March 2, 2026

Respectfully submitted,

DUNN ISAACSON RHEE LLP

By: /s/ *Karen L. Dunn*
Karen L. Dunn
Jessica E. Phillips
Kyle N. Smith

COOLEY LLP
Kathleen R. Hartnett
Mark R. Weinstein
Elizabeth Lee Stameshkin
Bobby A. Ghajar
Phillip Morton

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Angela L. Dunning

*Counsel for Defendant Meta Platforms, Inc.*

# INTRODUCTION

This action improperly joins Plaintiffs' copyright claim against Meta with claims against a disparate group of other companies that—according to Plaintiffs' own allegations—acted independently, in competition with each other, and based on their own internal decision-making to create their own separate AI large language models.[1] The Complaint characterizes Defendants as participants in an "arms race," each attempting to "seize control of what they believe will become a new infrastructure layer for commerce, communication, and knowledge work." Dkt. 1 ¶ 35. The Complaint alleges no common transaction or occurrence that links the claims against the Defendants, and Plaintiffs do not contend that Meta has acted in concert or conspired with any other Defendant. Joining these Defendants in a single case creates exactly the inefficiencies and risks of prejudice that Federal Rule of Civil Procedure 21 is designed to prevent.

Plaintiffs' claim against Meta is substantively indistinguishable from one of the direct copyright infringement claims asserted against Meta in *Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC (N.D. Cal.), and *Entrepreneur Media, LLC v. Meta Platforms, Inc.*, No. 3:25-cv-09579-VC (N.D. Cal.), both pending before Judge Chhabria. Like this case, both *Kadrey* and *Entrepreneur* arise from allegations that Meta infringed the plaintiffs' copyrighted works by using them to develop and train Meta's large language models without authorization. Those cases have already had extensive judicial management, and, in *Kadrey*, fact discovery has ended and the Court has already issued some dispositive rulings. Severance will facilitate the relation of Plaintiffs' claim to those in *Kadrey* and *Entrepreneur* and the orderly and efficient resolution of each of these cases.[2]

By contrast, the claims against the other Defendants in this case concern those Defendants' independent conduct and will require entirely different witnesses, documents, and proof. Forcing these

---

[1] The Complaint originally named six defendants: OpenAI, Inc. (and several affiliated entities), Meta, Google LLC, Perplexity AI, Inc, xAI Corporation, and Anthropic PBC. On February 20, 2026, Plaintiffs stipulated to sever their claim against OpenAI for transfer to the OpenAI multidistrict litigation in the Southern District of New York, Dkt. 98, and the Court has so ordered that severance, Dkt. 99. Defendants Google, Anthropic, and Perplexity have also filed motions to sever. Dkts. 94, 106, 112.

[2] Indeed, the OpenAI stipulation and subsequent severance order underscores that severance is appropriate where claims against a defendant substantially overlap with related litigation elsewhere and confirms the case-management concerns presented by Plaintiffs' misjoinder here.

unrelated Defendants to proceed together in a single case would not create efficiencies, but instead would involve multiple separate, non-overlapping tracks of discovery against alleged competitors, requiring complex measures to protect competitively sensitive information, and would subject Meta to duplicative discovery and motion practice to that already underway in *Kadrey* and *Entrepreneur*. Failing to separate the claim against Meta also risks inconsistent rulings on identical issues presented by *Kadrey* and *Entrepreneur*.

Because Plaintiffs improperly joined Meta as a defendant under Rule 20, the claim against Meta should be severed and dismissed under Rule 21. Severing the claim against Meta will streamline this action, eliminate unnecessary complexity, minimize the risk of duplicative discovery against Meta, and facilitate the orderly resolution of Plaintiffs' claim against Meta alongside the substantially similar claims already being adjudicated in *Kadrey* and *Entrepreneur*. On the other side, severance will not prejudice Plaintiffs.

For these reasons, and the reasons detailed below, the Court should sever the claim against Meta.

## BACKGROUND AND PROCEDURAL FACTS

### I. This Action

Plaintiffs are six book authors who allegedly hold copyrights in seven at-issue books. Plaintiffs filed this action on December 22, 2025, asserting a single claim for copyright infringement against six distinct companies, including Meta, that have independently developed their own generative AI ("GenAI") models. Dkt. 1 ¶¶ 1-17. According to the Complaint, the six originally named Defendants independently pirated copies of Plaintiffs' books from a variety of online sources and then improperly reproduced and used them to train their respective GenAI models. *Id.* ¶¶ 1-2, 121-23. The Complaint alleges that the Defendants developed different AI models using different datasets, training methods, and technical infrastructures and processes. *See, e.g.*, Dkt. 1 ¶¶ 25-30.[3] The Complaint further alleges that the Defendants used the Plaintiffs' works in different ways, at different times, with different systems, and for different products and services. *Id.* ¶¶ 49-118.

---

[3] Plaintiffs are opt-outs to the class settlement in *Bartz v. Anthropic*, 3:24-cv-05417-AMO (N.D. Cal.).

Plaintiffs divide their Complaint into discrete sections in which they levy independent allegations against each specific Defendant. As to Meta, the Complaint focuses on the training of the Llama family of models with materials allegedly obtained from datasets called Common Crawl, C4, LibGen, Books3, and Z-Library. *See id.* ¶¶ 81–89. By contrast, the Complaint's allegations against the other Defendants are materially distinct. For example, the claim against Anthropic centers on the development of the Claude models and on Anthropic's own alleged methods of acquiring and using training data, including Books3, which was allegedly acquired and used to train the Claude models. *See id.* ¶¶ 39, 49-59. The claim against Google focuses on Google's development of the Gemini models and Google-specific allegations regarding how it allegedly sourced and used training materials, including datasets from C4. *Id.* ¶¶ 38, 72-80. The Complaint alleges that xAI trained its Grok models on copyrighted materials from LibGen. *Id.* ¶¶ 90, 104. The Complaint alleges that Perplexity ingested copyrighted materials via "large-scale crawling and scraping systems." *Id.* ¶ 106.

The Complaint does not allege that any of the Defendants coordinated their data acquisition, shared training pipelines, relied on common personnel, consulted each other, or acted pursuant to a joint plan. Instead, Plaintiffs plead that each Defendant participated *independently* in what they characterize as an industry-wide "Generative AI arms race," making separate choices through separate internal processes. *Id.* ¶¶ 34–48.

Moreover, the Complaint seeks individualized—rather than joint and several—relief against each Defendant, including a judgment "against each Defendant," a declaration that "each Defendant has infringed" Plaintiffs' copyrights, an injunction "enjoining each Defendant," and damages from each Defendant. *Id.* ¶¶ 128-33.

Indeed, the procedural posture has already begun to diverge among Defendants: Anthropic has moved to dismiss, Dkt. 96, Google, xAI, and Perplexity have stated their intent to do so, Dkt. 100, while Meta has filed its answer, Dkt. 109.

## II. The *Kadrey* Action

*Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC (N.D. Cal.), was filed on July 7, 2023, and is a putative class action challenging Meta's download and use of copyrighted books to train its

Llama family of large language models. *Kadrey* Compl., Dkt. 1 ¶¶ 1-5, 16-42. *Kadrey* became the lead action in a group of cases asserting claims against Meta based on the same alleged conduct, including *Chabon v. Meta Platforms, Inc.*, No. 3:23-cv-04663-VC, *Huckabee v. Meta Platforms, Inc.*, No. 3:23-cv-06663-VC, and *Farnsworth v. Meta Platforms, Inc.*, No. 3:24-cv-06893-VC. Those cases were related and consolidated because they raised similar claims predicated on the same course of conduct: Meta's alleged acquisition and use of copyrighted works to develop and train the Llama models. *See Kadrey* Dkts. 31, 86, 210; Civ. Loc. R. 3-12(a).

The consolidated *Kadrey* Plaintiffs filed three amended complaints, with the last adding a Copyright Act claim for distribution in addition to reproduction. *See Kadrey* Dkt. 407. Fact discovery closed on December 13, 2024, following an extended discovery period involving production of over 200,000 pages of documents in addition to terabytes of code and data, and 48 depositions. The parties then cross-moved for summary judgment on the reproduction claim, but not the distribution claim. At summary judgment on reproduction, the court held that, based on the record developed in the case, Meta's download and use of *Kadrey* Plaintiffs' works to develop and train the Llama models constituted fair use. *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1060 (N.D. Cal. 2025).

Following summary judgment on reproduction, the parties have been completing limited, targeted discovery specific to the remaining distribution theory. *See Kadrey* Dkts. 660, 666. That claim will eventually proceed through expert discovery and summary judgment briefing.

### III. The *Entrepreneur* Action

*Entrepreneur Media, LLC v. Meta Platforms, Inc.*, No. 3:25-cv-09579-VC (N.D. Cal.), was filed on November 6, 2025, and asserts copyright claims against Meta based on the same alleged data acquisition and AI-training conduct at issue in *Kadrey*. *Entrepreneur* Compl., Dkt. 1 ¶¶ 1-9, 53-60. On November 25, 2025, the court granted *Entrepreneur*'s motion to relate the case to *Kadrey*, recognizing the substantial overlap in factual allegations and legal theories. *Entrepreneur* Dkt. 16. Discovery produced in *Kadrey* has already been reproduced for use in *Entrepreneur*. *Entrepreneur* Dkt. 40 at 2. And *Entrepreneur* is proceeding on a schedule set by the Court that builds on the existing *Kadrey* record. *Id.* at 2-3.

## IV. Other Actions Involving Other Defendants

Other Defendants named here have active, related generative AI copyright lawsuits currently pending against them in this District and others. *See, e.g.*, *Bartz v. Anthropic PBC*, No. 3:24-cv-05417 (N.D. Cal.) (Martinez Olguin, J.); *In re: OpenAI, Inc. Copyright Infringement Litig.*, No. 1:25-md-03143 (S.D.N.Y.); *In re Google Generative AI Copyright Litig.*, Case No. 5:23-cv-03440 (N.D. Cal.) (Lee, Eumi, J.). In their severance stipulation with OpenAI, Plaintiffs admitted that "severance and (subsequent) transfer of Plaintiffs' claims against the OpenAI Defendants for [pretrial coordination with the OpenAI MDL] is reasonable and serves the interests of judicial economy and efficiency." Dkt. 98 at 1.

\* \* \*

Plaintiffs' allegations against Meta in this Action mirror those in *Kadrey* and *Entrepreneur*. Compare *Kadrey* TACC, Dkt. 407 ¶¶ 1-9; *Entrepreneur* Compl., Dkt. 1 ¶¶ 1-9, *with Carreyrou* Compl., Dkt. 1 ¶¶ 1-17. As pled, Plaintiffs in this action are members of the alleged putative class asserted in *Kadrey*,[4] and the claim they assert against Meta is substantially overlapping with claims already litigated or currently being litigated in *Kadrey* and *Entrepreneur*. By contrast, the claims asserted against the other Defendants in this action will require distinct discovery, witnesses, documents, and proof concerning different models, systems, datasets, and company practices.

## LEGAL STANDARD

Joinder of multiple defendants in a single action is proper only if: (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (2) the complaint raises "any question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2); *Adobe Sys. Inc. v. A & S Elecs., Inc.*, 2016

---

[4] The alleged putative class in *Kadrey* is defined as:

> All persons or entities domiciled in the United States that own a United States copyright in any work that was or is used by Meta in the process of LLM training, research, or development, including but not limited to the training and development of its Llama models between July 7, 2020 and the present.

*Kadrey* TACC, Dkt. 407 ¶ 115.

WL 9114001, at *3 (N.D. Cal. June 20, 2016). Joinder is improper unless both elements of Rule 20(a)(2) are satisfied. *See Adobe Sys.*, 2016 WL 9114001, at *3.

The appropriate remedy for misjoinder is severance under Rule 21. Fed. R. Civ. P. 21 ("[T]he court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."). Severance is proper where it "will serve the ends of justice and further the prompt and efficient disposition of litigation." *Khanna v. State Bar of Cal.*, 2007 WL 2288116, at *2 (N.D. Cal. Aug. 7, 2007) (internal quotation marks and citation omitted). Severance is a common remedy for misjoinder in this Circuit. *See, e.g.*, *Adobe Sys. Inc. v. Colorado Internet Servs.*, 2014 WL 1007627, at *4 (N.D. Cal. Mar. 12, 2014); *Fashion Ave. Sweater Knits, LLC v. A'Gaci, LLC*, 2020 WL 13248958, at *1-2 (C.D. Cal. Oct. 26, 2020); *Third Degree Films, Inc. v. John Does 1 Through 4*, 2013 WL 3762625, at *1 (S.D. Cal. July 16, 2013).

In deciding whether to sever claims under Rule 21, courts consider the following factors: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *3 (N.D. Cal. Oct. 10, 2025). The first two severance factors overlap directly with the Rule 20 misjoinder inquiry. *See* Fed. R. Civ. P. 20(a)(2). Each of the relevant factors weighs heavily in favor of severing the claim against Meta.

## ARGUMENT

### I. Plaintiffs' Claim Against Meta Does Not Arise Out of the Same Transaction or Occurrence as Their Claims Against Other Defendants

Because the claim asserted against Meta in this action does not arise out of the same transaction or occurrence as the claims asserted against the other Defendants, Meta is misjoined. *See* Fed. R. Civ. P. 20(a)(2). Plaintiffs do not allege any joint action or coordinated scheme; the Complaint pleads defendant-by-defendant conduct undertaken through separate internal decision-making and personnel. *Compare* Dkt. 1 ¶¶ 81-89 (key allegations against Meta), *with id.* ¶¶ 49-80, 90-118 (key allegations against other Defendants).

"The Ninth Circuit has interpreted the phrase 'same transaction, occurrence, or series of transactions or occurrences' to require a degree of factual commonality underlying the claims." *Bravado Int'l Grp. Merch. Servs. v. Cha*, 2010 WL 2650432, at *4 (C.D. Cal. June 30, 2010) (citing *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)). Because "it is well established that defendants who merely infringe the same copyright do not satisfy the same occurrence and transaction requirement of Rule 20," severance is common in copyright cases against joined defendants. *Afifeh v. Ahmadabadi*, 2022 WL 1617115, at *1 (C.D. Cal. Apr. 15, 2022) (alteration and internal quotation marks removed); *see also Joanne Fabric, Inc. v. Brad & Zoe, Inc.*, 2018 WL 6137158, at *1-2 (C.D. Cal. Apr. 4, 2018) (granting severance because "[t]he mere fact that all defendants allegedly infringed on Plaintiff's copyright does not establish relatedness" and explaining that "[c]ourts in [California] routinely dismiss defendants for misjoinder in copyright cases"); *On The Cheap, LLC v. Does 1-5011*, 280 F.R.D. 500, 502-03 (N.D. Cal. 2011) (severing claims against torrenting defendants in a copyright infringement case because "downloading the same file did not mean that each of the defendants were engaged in the same transaction or occurrence").

Here, the Complaint pleads that each Defendant obtained and used the alleged copyrighted works, and developed and deployed its GenAI systems, through its own internal processes and employees. *See* Dkt. 1 ¶¶ 34-118. Allegations of similar conduct across competitors do not transform independent acts into a single transaction or occurrence. *In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012); 7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1653 (3d ed. 2025) ("[J]oinder will not be allowed based solely on the assertion that the defendants committed the same type of violations in the same way."). Defendants' transactions to obtain the allegedly copyrighted works are independent and defendant-specific transactions occurring at different times and through different methods.

The Complaint underscores this lack of a common transaction by pleading defendant-specific courses of action tied to each company's own development efforts in what Plaintiffs label an "arms race." *See supra* pp. 3-4. These defendant-by-defendant allegations confirm that there is no shared transaction or occurrence that gave rise to the claim against each of the Defendants. That multiple

companies are alleged to have pursued similar objectives in the same industry does not supply the "aggregate of operative facts" required for joinder under Rule 20. *In re EMC Corp.*, 677 F.3d at 1359).

Courts routinely sever claims in precisely these circumstances. In *Adobe Systems Inc. v. Colorado Internet Services, LLC*, the court severed copyright and trademark infringement claims against defendants accused of "separately" selling counterfeit or unauthorized copies of Adobe's software products. 2014 WL 1007627, at *1, *3. The court reasoned that the claims did not "arise out of the same 'transaction or occurrence'" where the defendants were "alleged to have engaged in similar misconduct, in separate instances." *Id.* at *3. The court further explained that "the fact that all Defendants here allegedly could have obtained the counterfeit or unauthorized copies of the Adobe products from the same or similar sources, without concerted action, does not satisfy the same transaction or occurrence test for purposes of Rule 20." *Id.* Likewise, in *EIT Holdings LLC v. Yelp!, Inc.*, the court severed claims where defendants were "unrelated companies" accused of infringing the same patent claims, and the plaintiff's allegations would "require proof of facts specific to each individual defendant." 2011 WL 2192820, at *1, *3 (N.D. Cal. May 12, 2011). And in *Bridgeport Music, Inc. v. 11C Music*, the court severed copyright infringement claims brought against "over 770 … publishing companies, copyright administrators, record labels, entertainment companies, copyright clearance companies, and performance rights organizations" for "'sampling' of music in which [plaintiffs] claim an ownership interest." 202 F.R.D. 229, 231 (M.D. Tenn. 2001). The court rejected the plaintiffs' argument "that its infringement counts are properly joined because Plaintiffs suffered the same harm in each instance." *Id.* at 232. "According to this logic," the court reasoned, "a copyright plaintiff could join as defendants any otherwise unrelated parties who independently copy material owned by the plaintiff." *Id.*; s*ee also Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1285-86 (D. Ariz. 2009) (severing claims against defendant, collecting cases, and reasoning that "[t]he authority from other courts provides that allegations against multiple and unrelated defendants for acts of patent, trademark, and copyright infringement do not support joinder under Rule 20(a)").

Because Plaintiffs' claim against Meta is based on Meta's own alleged acts, undertaken independently of any other Defendant, that claim does not arise from the same transaction or occurrence

as Plaintiffs' claims against the other Defendants. Meta has thus been misjoined as a Defendant under Rule 20 and severance should be granted under Rule 21.

## II. The Claim Against Meta Presents Distinct Questions of Fact and Law from Their Claims Against the Other Defendants

To the extent that there are some common questions of law or fact between the claim against Meta and those against the other Defendants such as validity or ownership, they are dwarfed by questions particular to each Defendant. Severance is proper under Rule 21 where, as here, common questions are "few[er]," *Hernandez v. City of San Jose*, 2017 WL 2081236, at *10, *11 (N.D. Cal. May 15, 2017) (severing claims despite the existence of some common questions), and less "significant," *Jetpack Enters., LLC v. Jetlev, LLC*, 2016 WL 11020227, at *3 (C.D. Cal. Aug. 31, 2016) (same), than the distinct questions of law and fact. *See Trazo v. Nestle USA, Inc.*, 2013 WL 12214042, at *3, *4 (N.D. Cal. Dec. 4, 2013) (severing claims despite the presence of some common questions where "each misbranding theory requires a very different analysis to determine if the statements were false or misleading dependent upon product packaging, product type, and … the claims asserted," and thus the "mix" of questions "weighs in favor of severance" (internal quotation marks and citation omitted)).

The fact that Plaintiffs' claims arise under the same general law does not suffice. *See Coughlin*, 130 F.3d at 1351; *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1081 (C.D. Cal. 2002) ("While it is true that Plaintiffs have alleged claims against Defendants based on the same general theory of law, this is not a sufficient ground to find that their claims raise common legal or factual questions."). *Bridgeport Music* is again informative. There, the court found misjoinder in spite of the plaintiffs' contention that "common questions concern 1) ownership of the allegedly infringed songs; 2) whether copyright material was actually copied; 3) the existence of licenses; and 4) whether copied material is subject to *de minimis* or fair use exceptions," and where the plaintiffs "also anticipate[d] that the parties [would] rely on expert testimony to prove many of these factual questions and that the same testimony [would] be applicable to numerous questions." 202 F.R.D. at 232. The same analysis applies here because each Defendant's conduct turns on distinct factual circumstances that must be developed through discovery and considered by the Court.

Here, even accepting Plaintiffs' high-level framing, the Complaint pleads defendant-specific factual predicates that will require separate discovery and proof as to each company. As a result, the discovery needed to adjudicate Plaintiffs' claim against Meta will be completely different from the discovery needed as to their claim against Anthropic, Google, xAI, or Perplexity. Meta-specific discovery will focus on, among other things, Meta's internal decisions regarding which book datasets to obtain; how and when those datasets were acquired; the technical process used to obtain them; how they were used to train and refine Meta's models; and how those choices were reflected in Meta's internal deliberations. None of that discovery will meaningfully overlap with the internal pipelines, custodians, or technical systems of the other Defendants, whose alleged practices followed different sourcing paths and model-training architectures. *See supra* pp. 3-4, 8. Each Defendant will also likely assert distinct defenses—including licensing, statute of limitations, and fair use—that turn on defendant-specific facts and individualized evidence. The Complaint alleges multiple factually distinct infringement narratives packaged under a single caption.

## III. The Claim Against Meta Will Require Distinct Witnesses and Documentary Proof

Severance is warranted because the claim against Meta will require a set of witnesses and documents entirely distinct from those required to litigate Plaintiffs' claims against the other Defendants.

Plaintiffs allege no coordinated conduct, but rather entirely separate conduct between unrelated companies in a competitive market. *See supra* pp. 3-4. Discovery for Meta—but not for the other Defendants—will focus on its Llama models and how those models were trained. The relevant witnesses will be the individuals who worked on the Llama models, and the relevant documents will be those witnesses' documents. Those witnesses and documents will have no usefulness in answering questions related to the allegations against any of the other Defendants. *Compare* Compl. ¶¶ 81-89, *with id.* ¶¶ 49-59; 72-80. Courts have repeatedly recognized that where claims against different defendants "would require proof of facts specific to each individual defendant," joinder is improper and severance is appropriate. *EIT Holdings*, 2011 WL 2192820, at *1).; *see also supra* pp. 9-10.

In addition, allowing a single jury to hear evidence concerning multiple defendants' entirely independent internal conduct that happens to share industry-wide similarities also raises substantial risks

META'S MOTION TO SEVER
Case No. 3:25-cv-10897

of jury confusion and prejudice. *See, e.g.*, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296–97 (9th Cir. 2000) (affirming the district court's severance of ten Plaintiffs' age discrimination claims arising under the laws of six different states even where joinder was proper, acknowledging the risk of jury confusion); *E.C. v. Lincoln Military Prop. Mgmt. LP*, 2022 WL 4241734, at *5 (S.D. Cal. Sept. 13, 2022) (recognizing that the "likelihood of prejudice to defendant and confusion of the jury … are proper considerations for the court" in deciding whether to sever ).

### IV. Severance Would Promote Judicial Economy Because the Claim Against Meta Substantially Overlaps With Those in *Kadrey* and *Entrepreneur*

Severance is warranted because it would promote judicial economy and the efficient administration of justice.

The claim asserted against Meta in this action substantially overlaps with those in *Kadrey* and *Entrepreneur*. All three actions arise from the same alleged course of conduct and involve the same core legal theories—copyright infringement based on Meta's acquisition of copyrighted works from repositories such as Common Crawl, LibGen, Bibliotik, Z-Library, and Books3, as well as the use of those works to train its Llama models. As pled, Plaintiffs in this action are members of the putative class asserted in *Kadrey*, and the claim they assert against Meta here are encompassed by the claims already in front of Judge Chhabria, subject only to identification of the particular works at issue in each case.

Plaintiffs' admissions in their recent stipulation to sever their claim against OpenAI for consolidation with the OpenAI MDL further confirm that severance is "reasonable and serves the interests of judicial economy and efficiency" where claims against a defendant substantially overlap with related litigation elsewhere and would otherwise proceed in parallel. Dkt. 98 at 1; Dkt. 99. The same case-management considerations apply here, where the claim against Meta substantially overlaps with *Kadrey* and *Entrepreneur* already pending before Judge Chhabria.

Given this duplication of allegations and claims, severing the claim against Meta in this case would "promote[] judicial economy," facilitating their relation to *Kadrey* and *Entrepreneur*, and thus allow Meta to defend against the same allegations and issues in a coordinated manner. *See Netlist, Inc. v. Smart Modular, Inc.*, 2013 WL 12128691, at *7 (C.D. Cal. Nov. 26, 2013) (severing claims so they could be consolidated with related pending actions); *XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*,

2022 WL 18110171, at *5 (S.D. Cal. Nov. 22, 2022) (severing claims so they could be transferred to another district where related litigation was pending).

In *L.B. v. LinkedIn Corp.*, the court granted severance where claims against a defendant were "duplicative of—or at least substantially overlap[ped] with" claims pending in an earlier filed class action in which the defendant was a putative class member. 2025 WL 2899514, at *3. Both cases involved similar claims based on "allegations that Meta received sensitive health information through healthcare providers' installation of [a Meta application] on their websites." *Id.* In granting severance, the court reasoned:

> Given these overlapping issues of fact and law, severance and consolidation would likely promote judicial economy by avoiding simultaneous and largely duplicative discovery proceeding in parallel in separate cases. Further, allowing the claims against Meta to proceed in this case could risk inconsistent rulings … resulting in prejudice to Meta.

*Id.*

As in *L.B.*, severance here would reduce the significant and unnecessary burden on Meta and the judicial system associated with simultaneous, largely duplicative discovery processes proceeding in parallel in different cases. *See Colors of India v. Nielsen*, 2018 WL 6430118, at *5 (C.D. Cal. Oct. 19, 2018) ("Indeed, severing the claims would likely avoid lengthy delays associated with duplicative, unnecessary discovery requests."). In addition to the unnecessary burden and expense of requiring Meta to engage in duplicative discovery negotiations and make duplicative productions, requiring the claim against Meta in this case to proceed separately from *Kadrey* and *Entrepreneur* would prevent repetitious discovery disputes, undue burden on the judicial system, and the risk of inconsistent rulings. *See Trazo*, 2013 WL 12214042, at *3 ("Severing Plaintiff's case … will help streamline discovery and allow the parties to focus on the distinct evidence required to support each separate claim.").

V.  **Severance Would Avoid Prejudice to Meta and Would Not Prejudice Plaintiffs**

Finally, if substantially identical claims against Meta proceed simultaneously in multiple actions before different judges, Meta faces a material risk of inconsistent rulings on key discovery, evidentiary, and legal questions. Courts have recognized that avoiding such inconsistent rulings is a legitimate basis

for severance. *See L.B.*, 2025 WL 2899514, at *3 (recognizing risk of inconsistent rulings as a basis for severance); *XpandOrtho*, 2022 WL 18110171, at *9.

The risk of inconsistent rulings is not hypothetical. Courts in this District have already taken different approaches to fair use in cases involving large language model training on copyrighted books at the summary judgment stage. For example, in *Bartz v. Anthropic PBC*, Judge Alsup rejected an argument by authors that training of LLMs would result in an explosion of works competing with their works, stating that this was "no different than it would be if they complained that training schoolchildren to write well would result in an explosion of competing works." 787 F. Supp. 3d 1007, 1032 (N.D. Cal. 2025). Two days later in *Kadrey*, Judge Chhabria explicitly disagreed with Judge Alsup's analysis, stating that "using books to teach children to write is not remotely like using books to create a product," and that "[t]his inapt analogy is not a basis for blowing off the most important factor in the fair use analysis." 788 F. Supp. 3d at 1037. These decisions underscore that fair use in the generative-AI context remains an evolving and contested legal issue. Allowing these substantially overlapping claims against Meta to proceed simultaneously before different judges creates a concrete risk of inconsistent legal standards governing the same underlying conduct and Meta's obligations moving forward.

Additionally, as Plaintiffs allege, Defendants are "competitors" in developing generative AI tools. ECF 1 ¶ 36; *see also id.* ¶¶ 2, 35. Joinder would create serious inefficiencies and risk extreme prejudice arising from the need to protect competitively sensitive information among alleged competitors. Litigating the internal design, data acquisition, and model-training processes of several competing companies in a single action would require complex protective orders, expert-access limitations, and attorney walls to prevent disclosure of proprietary technologies to competitors. Courts have recognized that such competitive dynamics weigh in favor of severance. *See, e.g., Lam Rsch. Corp. v. Flamm*, 2016 WL 1237831, at *2 (N.D. Cal. Mar. 30, 2016); *Sw. Fair Hous. Council v. WG Chandler Villas SH LLC*, 2019 WL 1382500, at *3 n.4 (D. Ariz. Mar. 27, 2019).

By contrast, severance will not prejudice Plaintiffs. Plaintiffs' claim against Meta will proceed with actions where discovery is already underway or complete as to the relevant conduct. Severance will also not delay Plaintiffs' pursuit of claims against other Defendants. The claims asserted against other

Defendants in this action will require separate discovery, different witnesses, and distinct proof concerning those Defendants' own independent internal conduct.

## CONCLUSION

The Court should sever and dismiss Plaintiffs' claim against Meta.

Dated: March 2, 2026

Respectfully submitted,

DUNN ISAACSON RHEE LLLP

By: /s/ *Karen L. Dunn*
Karen L. Dunn
Jessica E. Phillips
Kyle N. Smith

COOLEY LLP
Kathleen R. Hartnett
Mark R. Weinstein
Elizabeth Lee Stameshkin
Bobby A. Ghajar
Phillip Morton

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Angela L. Dunning

*Counsel for Defendant Meta Platforms, Inc.*