**WHITE & CASE LLP**
YAR R. CHAIKOVSKY (CA 175421)
yar.chaikovsky@whitecase.com
ANDY LEGOLVAN (CA 292520)
andy.legolvan@whitecase.com
AMIR JABBARI (CA 339097)
amir.jabbari@whitecase.com
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

ANNA B. NAYDONOV (*pro hac vice*)
anna.naydonov@whitecase.com
MARK DAVIES (*pro hac vice*)
mark.davies@whitecase.com
701 13th St NW # 600
Washington, DC 2005-3807
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

Attorneys for
Defendant Anthropic PBC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMBRONNE INC., LISA BARRETTA, PHILIP SHISHKIN, JANE ADAMS, MATTHEW SACKS, and MICHAEL KOCHIN,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC; GOOGLE LLC; OPENAI, INC.; OPENAI OPCO LLC; OPENAI GP LLC; OPENAI GLOBAL LLC; OAI CORPORATION LLC; OPENAI HOLDINGS LLC; META PLATFORMS, INC.; XAI CORPORATION; PERPLEXITY AI, INC., APPLE, INC.; and NVIDIA CORPORATION<br><br>Defendants. | Case No.  3:25-cv-10897-PCP<br><br>**DEFENDANT ANTHROPIC PBC'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO SEVER**<br><br>Judge: Hon. P. Casey Pitts |

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION .................................................................................................... 1

II.   ARGUMENT ........................................................................................................... 2

     A.    Plaintiffs' Own Pleadings Confirm Eight Separate Transactions ........................... 2

     B.    Plaintiffs' Cited Cases Support Severance .............................................................. 4

     C.    The Factual and Legal Questions Plaintiffs Pose Are Defendant-Specific, Not Common .......................................................................................................... 6

     D.    Joinder of Competitors Creates Concrete, Not Speculative, Prejudice ................... 8

III.   CONCLUSION ........................................................................................................ 9

## I.  **<u>INTRODUCTION</u>**

This case is eight separate lawsuits dressed as one. Plaintiffs' opposition invents an "industry-wide practice" joinder theory, but its own pleadings reveal no common transaction or occurrence. The Court should refuse to contort Rule 20 in ways that contradict precedent and the plain language of the rule.

Plaintiffs' opposition concedes that numerous foundational factual and legal questions at issue are individual to each Defendant. Specifically, Plaintiffs do not dispute that each Defendant built a different AI model, using different training datasets, acquired at different times, from different sources. Plaintiffs organize their Amended Complaint into discrete, Defendant-by-Defendant sections. *See* Am. Compl. ¶¶ 119–129 (Anthropic); ¶¶ 130–140 (OpenAI); ¶¶ 141–149 (Google); ¶¶ 150–160 (Meta); ¶¶ 161–175 (xAI); ¶¶ 176–189 (Perplexity); ¶¶ 190–212 (NVIDIA); ¶¶ 213–230 (Apple). They seek individualized statutory damages against each Defendant, separately calculated. *Id*. ¶¶ 240–248. They say that they chose not to proceed as a class action so they could retain "full control" and preserve individualized recovery. *See id*. ¶¶ 20–22; Opp. at 16. And they concede that Defendants are "competitors," each racing to "win the generative AI race." Am. Compl. ¶¶ 3, 47. Plaintiffs, however, insist that these eight independent competitors' separate courses of conduct constitute a single "transaction or occurrence," raising common questions of law or fact. They do not, and severance is proper.

Joinder under Rule 20 requires that claims arise from the same transaction or occurrence, not merely from the similar conduct. Plaintiffs invent a "single act genesis" theory, contending that each Defendant's conduct flows from a single act in 2018 when an OpenAI employee downloaded Library Genesis. After that, they assert, each Defendant made an independent decision to access "overlapping"—but still different—shadow libraries, which makes them participants in a common industry-wide scheme. *Id*. ¶¶ 10–16, 63; Opp. at 1–2. Albeit creative, this new theory fails to satisfy Rule 20. This is because it does not ask whether Defendants are members of the same industry or whether their conduct was part of a broader industry practice. Rather, it inqires whether the claims before the Court arose "out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2).

DEFENDANT ANTHROPIC'S REPLY ISO MOTION TO SEVER
CASE NO: 3:25-cv-10897-PCP

Here, for each Plaintiff and each Defendant, the question is whether each Plaintiff's specific work was present in the specific dataset that the specific Defendant downloaded and used to train its specific model, and if so, how each Defendant used the specific work. *See* Am. Compl. ¶¶ 34-41. That question is not common. It is eight separate questions for eight separate Defendants, multiplied across each Plaintiff's work. Had Defendants coordinated their data acquisition, shared datasets with one another, or even discussed among themselves which repositories to access, the analysis might be different. But the Amended Complaint alleges none of that. It claims eight independent companies each made their own decisions about what data to obtain, from which source, and for which product—connected only by the fact that they compete in the same industry.

The original Complaint gave this candid assessment: each Defendant downloaded the asserted works at "different times, through different mechanisms" (Compl. ¶ 45). Faced with motions to sever, Plaintiffs have now recast the same conduct as a "factual core," (Am. Compl. ¶ 10), a "unifying factual and evidentiary nucleus," (*Id.* ¶ 16), and a "cascading pattern," (*Id.* ¶¶ 13-16). But labels are not facts. Eight separate decisions to build competing products do not become one transaction because a new pleading calls them a pattern. Under that logic, every pharmaceutical company that independently used similar chemical compound later found to cause harm could be joined in a single suit—not because they acted together, but because each made the same independent choice. Rule 20 does not permit that result.

Plaintiffs' own case law also forecloses that result. Several directly reject the industry-wide-pattern theory, and none joins competitors in one action based on an alleged industry practice. At bottom, this is still eight separate cases dressed as one. The claims against each Defendant should be severed.

## II.    **ARGUMENT**

### A.    **Plaintiffs' Own Pleadings Confirm Eight Separate Transactions**

The original Complaint reveals what this case is actually about. Plaintiffs alleged each Defendant assembled training data from repositories that were "separate" and "distinct" given their "differing [] origin, structure, and method of distribution." Compl. ¶ 43. They alleged conduct reflecting "intentional sourcing, selection, and accumulation of multiple pirated book datasets at

different times, through different mechanisms, and in conscious disregard of copyright law." *Id.* ¶ 45. They acknowledged Defendants are "competitors"—each attempting to "accelerate commercial development and win the generative-AI race." *Id.* ¶¶ 3, 47. The original Complaint makes clear that this is not a case about coordinated conduct. It is a case about eight separate companies making eight separate decisions to build competing AI products.

The Amended Complaint now attempts to disguise that, but the same conclusion remains clear. Plaintiffs now pivot to alleging "[t]hese repositories are interrelated, overlapping, and in many cases direct descendants of one another." Am. Compl. ¶ 63. But where allegations in an amended complaint contradict those in a prior complaint, the Court need not accept them as true. *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1144–45 (N.D. Cal. 2010) (declining to credit amended complaint allegations that directly contradicted a prior pleading where plaintiff offered no explanation for the change). The original admission that the datasets were "distinct" and "separate" forecloses Plaintiffs' joinder theory and confirms that each Defendant's use of a different repository was an independent transaction, not part of the same transaction or occurrence. Even accepting Plaintiffs' repackaged allegations, the joinder theory still fails. New labels and bare legal assertions do not change the underlying facts: eight independent competitors accessed different repositories, at different times, under different circumstances, to train unrelated and competing AI models. *See* Am. Compl. ¶¶ 3, 9, 43, 45, 47.

Plaintiffs' "industry-wide practice" theory fares no better. Opp. at 1, 2. Courts have consistently held that independent actors who merely allegedly infringe the same intellectual property do not satisfy Rule 20's same transaction or occurrence requirement. *Adobe Sys. Inc. v. Colo. Internet Servs., LLC*, No. 13-cv-4193, *EMC*, 2014 WL 1007627, at *3 (N.D. Cal. Mar. 12, 2014); *Afifeh v. Ahmadabadi*, No. 2:22-cv-00928, 2022 WL 1617115, at *1 (C.D. Cal. Apr. 15, 2022). Absent an agreement, coordination, or concerted action among defendants, "similar misconduct against Plaintiff is an insufficient basis on which to join them in this suit." *Afifeh*, 2022 WL 1617115, at *2. The Amended Complaint identifies none. Under Plaintiffs' logic, any plaintiff who alleges that multiple companies in the same industry each independently infringed the same copyright could join them all in a single action. Rule 20 has never permitted that result.

- 3 -

Finally, Plaintiffs argue that Rule 20 should be applied flexibly. While true, the courts that have done so where there is genuine, substantial factual overlap among claims: for example, the same employer applying the same policy, or the same agency administering the same program. *See, e.g.*, *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp.*, Inc., 99 F. Supp. 3d 1110, 1188 (C.D. Cal. 2015); *Pablo Sequen v. Kaiser*, No. 25-cv-06487-PCP, 2025 WL 3275602, at *3-4 (N.D. Cal. Nov. 24, 2025). Flexibility has never been stretched to separate companies, operating independently with separate decisionmakers and separate internal processes—merely because they are alleged to have infringed the same intellectual property accessed through similar sources. Neither Plaintiffs' pleadings nor their invented "industry-wide conduct" theory thus satisfies Rule 20(a)(2)(A)'s same transaction or occurrence requirement.

### B.    Plaintiffs' Cited Cases Support Severance

None of the cases Plaintiffs cite support their "industry-wide practice" theory. And some expressly refute it.

***Almont***. Plaintiffs lean heavily on *Almont* as their closest analog for multi-party joinder under a "systematic behavior" theory. Opp. at 8–9 (citing *Almont*, 99 F. Supp. 3d at 1188). *Almont* is inapposite because the court upheld joinder there only because United served as a single centralized administrator through which every claim by every plaintiff flowed, making the conduct a common series of transactions or occurrences. *Almont*, 99 F. Supp. 3d at 1188. No equivalent exists here. No single entity's conduct connects the eight Defendants' independent decisions.

***Wynn***. The Rule 20(a) holding of *Wynn* supports severance here. There, plaintiffs alleged that fifty entities were "jointly responsible" for an industry-wide discriminatory practice and should be joined in one action—the same structure Plaintiffs advance here. *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1078, 1081 (C.D. Cal. 2002). The court rejected that theory, holding that "joinder is [not] warranted merely because each Defendant's [actions] … comprise an industry-wide discriminatory practice." *Id.* at 1080. The holding directly undermines Plaintiffs' theory that a single act by OpenAI satisfies Rule 20.

***Hard Drive Productions.*** Plaintiffs attempt to distinguish *Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150 (N.D. Cal. 2011), on the grounds that it involved anonymous

- 4 -

individuals subject to settlement-pressure concerns, whereas Defendants here are sophisticated enterprises. Opp. at 13–14. That distinction fails to refute the court's actual holding: independent actors who each access the same resource do not thereby participate in the same transaction or occurrence, regardless of their sophistication or identities. The court rejected joinder even though the plaintiff specifically alleged that defendants "acted in cooperation with one another" and that "the nature of the BitTorrent protocol" linked them. *Hard Drive Prods.*, 809 F. Supp. 2d at 1161-62. If joinder failed there despite allegations of cooperation, it cannot succeed here where none is alleged.[1]

***Pablo Sequen.*** Joinder was proper there because all four plaintiffs were confined at the same ICE facility, subject to the same policies promulgated by the same federal agency. *Pablo Sequen*, 2025 WL 3275602, at *3–4. That structural unity—one facility, one agency, one set of uniform policies—is absent here. No shared facility, shared policy, or shared decisionmaker exists here. Instead, there are only eight independent enterprises. And each made its own decisions about what data to obtain, from which source, for which product, and how it would be used.

***In re EMC.*** Plaintiffs cite *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012) for the proposition that the same transaction or occurrence test requires only an "actual link" between operative facts. Opp. at 8. But *EMC* applies a patent-specific statutory standard, 35 U.S.C. § 299, which has no application to copyright joinder under Rule 20. And even then, the kind of link *EMC* requires—a relationship among the Defendants, identically sourced components, or licensing agreements between them—is absent here. Rather, here eight companies independently built competing models from separately sourced datasets with no relationship to one another. *Id.* at 1359.

In short, not one of Plaintiffs' cited cases involved independent competitors with no relationship to one another, no shared decision-making process, and no common conduct beyond independently accessing overlapping sources. Plaintiffs' own litigation choices confirm the point.

---

[1] Even within the Seventh Circuit's district courts—historically the most receptive forum for swarm-based joinder—the recent trend has moved against permitting joinder based on participation in a shared repository or protocol alone. *Pathway IP LLC v. The Individuals,* No. 24-cv-5218, 2025 WL 815648, at *4 (N.D. Ill. Mar. 13, 2025) (rejecting BitTorrent-style swarm analogy as insufficient basis for permissive joinder under Rule 20).

- 5 -

OpenAI's claims were severed by stipulation for transfer to a dedicated MDL thereby consolidating multiple plaintiffs' claims against one defendant whose conduct is the common transactional thread. That is Rule 20 working as designed. What Plaintiffs are attempting here is the inverse: joining eight separate defendants whose only connection is that they operate in the same industry. No case they cite permits that.

**C.    The Factual and Legal Questions Plaintiffs Pose Are Defendant-Specific, Not Common**

Plaintiffs cannot satisfy Rule 20(a)(2)(B) as each Defendant's conduct raises distinct questions of law and fact.

Contrary to Plaintiffs' claims, at issue as to each Defendant is not whether shadow libraries exist, their origin story, or whether AI companies as a category used them. Each Plaintiff's claim rests on legal and factual questions distinct for each Defendant. Specifically, whether each Plaintiff's specific work was present in the specific dataset that each specific Defendant downloaded and used to train its own model, and how each Defendant used the work. That is an inherently individualized inquiry.

Plaintiffs allege that each Defendant downloaded from different libraries: Anthropic from The Pile and LibGen; Google from C4 and Z-Library; Meta from The Pile, LibGen, Z-Library, and Anna's Archive; xAI from LibGen and Anna's Archive; Perplexity from Anna's Archive; Apple from The Pile and Anna's Archive; and NVIDIA from The Pile and Anna's Archive. Am. Compl. ¶¶ 34–41. Each Defendant's copying—or lack thereof—therefore requires a separate factual record: which library was downloaded, when, whether Plaintiffs' works were contained in it at the time of download by the particular Defendant, and how those works were used in training. After all, the repositories themselves were not static: their contents varied depending on when each Defendant accessed them, meaning that even two Defendants who downloaded from the same shadow library may have obtained materially different sets of works. *See* Am. Compl. n.12.

*ROSS* and *Bartz* illustrate why fair use is not a common question. In *ROSS*, training a non-generative AI on legal headnotes to produce a competing legal research tool was held not transformative because both the original and the copy served the same legal-research market.

*Thomson Reuters Enter. Ctr. GMBH v. ROSS Intelligence Inc.*, 765 F. Supp. 3d 382, 398 (D. Del. 2025), *appeal docketed*, No. 25-2153 (3d Cir. June 24, 2025). The court expressly limited its holding to non-generative AI. *Id.* In *Bartz*, the opposite: training a large language model on books to produce new text outputs was "quintessentially transformative" because the model did not replicate or supplant the works but "turn[ed] a hard corner and create[d] something different." *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1022 (N.D. Cal. 2025). The architecture and purpose of each defendant's specific model drives not only the transformative factor but also the fourth-factor market-harm analysis. Where outputs contain no traceable reproduction of the original works, training copies do not displace demand for them. *Id.* at 1032. The third-factor analysis follows the same logic. *Bartz*, 787 F. Supp. 3d at 1031. Not all Plaintiffs' works will have been used in the same amounts by all Defendants. These are not common questions.

The market-harm inquiry generates a matrix of individualized questions, one for each Defendant–Plaintiff–work pairing. Multiplied across eight Defendants and six Plaintiffs, the market-harm factor alone generates dozens of individualized questions that require Defendant-specific expert testimony, output analysis, and Plaintiff-specific market evidence.

Nor does the market-harm inquiry require all Defendants in one courtroom. The standard asks whether "unrestricted and widespread conduct of the sort engaged in by the defendant" would substantially harm the potential market—a hypothetical inquiry about a type of conduct, not an empirical survey of what other companies did. *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1163 (9th Cir. 2022). Indeed, *McGucken* itself evaluated market-wide effects in a single-defendant case without joining every publisher who may have copied the plaintiff's work. *Id.* at 1164. To the extent cumulative market evidence is relevant in any individual proceeding, it can be presented through expert testimony and third-party discovery.

Willfulness similarly raises individualized, not common, questions. The Ninth Circuit has recognized that willfulness requires "an assessment of a defendant's state of mind" that is inherently fact-specific. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016). It turns on what each specific Defendant knew and when. 17 U.S.C. § 504(c). That assessment demands Defendant-specific documents and testimony, not generalized evidence about industry awareness.

- 7 -

*See WiAV Networks LLC v. 3Com Corp.*, No. 10-cv-3448, 2010 WL 3895047, at *1-3 (N.D. Cal. Oct. 1, 2010) (finding joinder improper where "willfulness issues, time frames and accused conduct, and discovery issues will obviously vary from company to company"). The same is true of innocent infringement: whether a Defendant had reasonable grounds to believe its use was not infringing turns on that Defendant's own knowledge, sophistication, and circumstances—questions no less individualized than willfulness. Plaintiffs cannot simultaneously contend that willfulness is a common question for joinder purposes when at trial they necessarily need to prove it through individualized evidence about each Defendant's acquisition decisions, and state of mind.

### D. Joinder of Competitors Creates Concrete, Not Speculative, Prejudice

Even if Rule 20's threshold requirements were met, the Court should exercise its independent authority under Rule 21 to sever.

First, joinder of eight direct competitors is prejudicial to all of them. Training data sources, processing methods, and corpus composition are among the most competitively sensitive information in this industry. A joint proceeding forces each Defendant to produce that material into a shared discovery pool accessible to its direct competitors, each of whom has every incentive to exploit what it learns. A protective order reduces but does not eliminate that risk; the only workable alternative would be separate, compartmentalized protective orders preventing cross-defendant access, an unworkable structural problem of Plaintiffs' own making. Courts have recognized exactly this danger. *Wynn*, 234 F. Supp. 2d at 1089 (severing claims where joinder of competitors created substantial risk of prejudice through guilt by association); *see also Sw. Fair Hous. Council v. WG Chandler Villas SH LLC*, No. 18-cv-00210, 2019 WL 1382500, at *3 n.4 (D. Ariz. Mar. 26, 2019) ("absent severance, discovery would be needlessly complicated by the fact that many if not all of the Defendants appear to be competitors who would understandably be reluctant to disclose sensitive, proprietary information to one another"). Plaintiffs cannot use the mechanics of joinder to force Anthropic to litigate its most sensitive proprietary information in a courtroom shared with its seven largest competitors.

Plaintiffs' related argument that each Defendant is "a necessary witness in the claims against the others" because the market-harm inquiry requires assessing cumulative industry-wide

- 8 -

effects, fares no better. *Id*. Under that theory, *every* AI company would be a necessary party in *every other* AI copyright case, a result with no limiting principle. Indeed, Plaintiffs have named only a subset of the developers of LLMs. And, again, third-party discovery rules allow Plaintiffs to procure the evidence they say they need. Plaintiffs cite no case law suggesting that joinder of all market actors is necessary to analyze factor four under fair use.

Next, Plaintiffs argue that severance is premature at the pleading stage because manageability concerns are problems "down the road" addressable through phased proceedings or bifurcated trials. *Id.* at 15. But misjoinder is properly resolved at the pleading stage. A court does not need discovery to determine whether eight Defendants' independent business decisions constitute the same transaction or occurrence. Courts routinely resolve misjoinder at the pleading stage based on the face of the complaint, and indeed, two of Plaintiffs' own cited cases did exactly that. *See Hard Drive Prods.,* 809 F. Supp. 2d at 1150; *Wynn*, 234 F. Supp. 2d at 1067.

Finally, Plaintiffs argue this Court should consolidate the actions. Opp. at 17–18. But, like other Defendants who have pending related proceedings, Anthropic intends to relate its severed case to *Bartz*, ensuring that Plaintiffs' claims against Anthropic proceed efficiently and without duplication. OpenAI has already been severed by stipulation for transfer to its MDL. Dkt. 99. Google intends to relate to *In re Google Generative AI Copyright Litigation*, No. 5:23-cv-03440 (N.D. Cal.). And Meta intends to relate to *Kadrey v. Meta Platforms, Inc*., No. 3:23-cv-03417-VC (N.D. Cal.) and *Entrepreneur Media, LLC v. Meta Platforms, Inc.,* No. 3:25-cv-09579-VC (N.D. Cal.). Severance places each claim on the path to efficient resolution, whether through relation to existing proceedings or through standalone actions that can proceed on their own focused records.

## III.    CONCLUSION

For the foregoing reasons, the Court should sever and dismiss Plaintiffs' claims against all Defendants other than Anthropic and require Plaintiffs to refile those claims in separate actions. Plaintiffs' own pleadings, the individualized nature of each claim, and the concrete prejudice of forcing eight competitors into joint proceedings all compel the same result.

DEFENDANT ANTHROPIC'S REPLY ISO MOTION TO SEVER
CASE NO: 3:25-cv-10897-PCP

Dated:    March 26, 2026                    WHITE & CASE LLP

                                           By:    /s/ Yar Chaikovsky
                                                  Yar R. Chaikovsky

                                           Anna B. Naydonov
                                           Mark Davies
                                           Andy LeGolvan
                                           Amir Jabbari


                                           Attorneys for
                                           Defendant Anthropic PBC

- 10 -