**MAYER BROWN LLP**
MATTHEW D. INGBER (*pro hac vice*)
*MIngber@mayerbrown.com*
ALLISON M. AVIKI (*pro hac vice*)
*AAviki@mayerbrown.com*
GRAHAM WHITE (*pro hac vice forthcoming*)
GWhite@mayerbrown.com
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone:    (212) 506-2500
Facsimile: (212) 262-1910

MICHAEL A. CALVANICO (SBN 344792)
*MCalvanico@mayerbrown.com*
333 South Grand Avenue, 47th Floor
Los Angeles, California 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

*Attorneys for Defendant*
*Perplexity AI, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMBRONNE INC., LISA BARRETTA, PHILIP SHISHKIN, JANE ADAMS, MATTHEW SACKS, AND MICHAEL KOCHIN,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC; GOOGLE LLC; OPENAI, INC.; OPENAI OPCO LLC; OPENAI GP LLC; OPENAI GLOBAL LLC; OAI CORPORATION LLC; OPENAI HOLDINGS LLC; META PLATFORMS, INC.; XAI CORPORATION; PERPLEXITY AI, INC.; APPLE, INC.; and NVIDIA CORPORATION,<br><br>Defendants. | Case No. 5:25-cv-10897-PCP<br><br>Hon. P. Casey Pitts<br><br>**DEFENDANT PERPLEXITY AI, INC.'S REPLY IN SUPPORT OF MOTION TO SEVER AND DISMISS PURSUANT TO FED. R. CIV. P. 20 & 21**<br><br>Date: TBD<br>Time: TBD<br>Location: Courtroom 8, 4th Floor |

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT................................................................................................................................... 2

      I.      The Court Should Sever Perplexity Because Plaintiffs Cannot Meet The
            Requirements of Rule 20.................................................................................................. 2

      II.     In The Alternative, The Court Should Exercise Its Discretion to Sever
            Perplexity ........................................................................................................................ 6

      III.    The Court Should Dismiss Perplexity Without Prejudice.......................................... 8

CONCLUSION ............................................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adobe Sys. Inc. v. Colorado Internet Servs., LLC*,
  2014 WL 1007627 (N.D. Cal. Mar. 12, 2014)...............................................................1, 3, 5, 8

*Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group, Inc.*,
  99 F. Supp. 3d 1110 (C.D. Cal. 2015)..........................................................................................3

*Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*,
  1994 WL 16780779 (N.D. Cal. Apr. 19, 1994) ...........................................................................6

*Arteris S.A.S. v. Sonics, Inc.*,
  2013 WL 3052903 (N.D. Cal. June 17, 2013) ..........................................................................8, 9

*Chicken Soup for the Soul, LLC v. Anthropic PBC, et al.*,
  No. 3:26-cv-02333-LJC (N.D. Cal. Mar. 17, 2026)....................................................................2

*Desert Empire Bank v. Ins. Co. of N. Am.*,
  623 F.2d 1371 (9th Cir. 1980).....................................................................................................6

*DIRECTV, Inc. v. Hosey*,
  289 F. Supp. 2d 1259 (D. Kan. 2003) ..........................................................................................9

*In re DMCA Subpoena to Reddit, Inc.*,
  441 F. Supp. 3d 875 (N.D. Cal. 2020) .........................................................................................8

*In re EMC Corp.*,
  677 F.3d 1351 (Fed. Cir. 2012).................................................................................................3, 4

*Fashion Ave. Sweater Knits, LLC v. A'Gaci, LLC*,
  2020 WL 13248958 (C.D. Cal. Oct. 26, 2020) ............................................................................8

*Hubbard v. Hougland*,
  2010 WL 1416691 (E.D. Cal. Apr. 5, 2010)................................................................................3

*IO Grp., Inc. v. Does 1-19*,
  2010 WL 5071605 (N.D. Cal. Dec. 7, 2010)...............................................................................3

*Lindora LLC v. Isagenix Int'l LLC*,
  198 F. Supp. 3d 1127 (S.D. Cal. 2016)........................................................................................3

*Make-A-Friend, Inc. v. Bear Mill, Inc.*,
  2007 WL 9751835 (D. Idaho Oct. 26, 2007) ...............................................................................9

*Roadget Bus. Pte. Ltd. v. Individuals, Corps., LLC*,
  2024 WL 3338942 (N.D. Ill. July 9, 2024)..................................................................................5

*Rosewolf v. Merck & Co.*,
    2022 WL 3214439 (N.D. Cal. Aug. 9, 2022)...................................................................................9

*Sega Enter. Ltd. v. MAPHIA*,
    948 F. Supp. 923 (N.D. Cal. 1996) .......................................................................................8

*Smith v. Trexler*,
    2016 WL 925851 (N.D. Cal. Mar. 11, 2016) ....................................................................8, 9

*Snyder v. Nationstar Mortg. LLC*,
    2016 WL 3519181 (N.D. Cal. June 28, 2016) .......................................................................9

*In re: Spray Polyurethane Foam Insulation Prods. Liab. Litig.*,
    949 F. Supp. 2d 1364 (U.S. J.P.M.L. 2013)...........................................................................7

*Tomahawk Mfg., Inc. v. Spherical Indus., Inc.*,
    344 F.R.D. 468 (D. Nev. 2023)..............................................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...............................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 20 ............................................................................................................1, 2, 6

Fed. R. Civ. P. 20(a)(2)(A) .....................................................................................................2

Fed. R. Civ. P. 21 .................................................................................................................2, 6

Fed. R. Civ. P. 23(a)(2) ...........................................................................................................5

**INTRODUCTION**

The Court should sever Perplexity because plaintiffs have not alleged—and cannot allege—any basis for joining Perplexity with seven other AI companies in a single copyright infringement action. Plaintiffs' Amended Complaint does not allege that Perplexity coordinated with, contracted with, or even communicated with any other defendant about acquiring copyrighted material. It does not allege any relationship of any kind between Perplexity and any other defendant. Instead, it alleges that eight separate companies independently developed their own AI products, at different times, using different technologies—and that each one separately infringed plaintiffs' copyrights in the process. Under settled law in this District, that is not enough. Separate and independent acts of copyright infringement by unrelated defendants do not satisfy Rule 20's requirement that the claims arise from "the same transaction, occurrence, or series of transactions or occurrences." *Adobe Sys. Inc. v. Colorado Internet Servs., LLC*, 2014 WL 1007627, at *2-3 (N.D. Cal. Mar. 12, 2014).

Rather than cure these deficiencies, plaintiffs' Amended Complaint compounds them. Instead of narrowing the case in response to the severance motions, plaintiffs added two new defendants— Apple, Inc. and NVIDIA—bringing the total to eight and making an already unwieldy case even more sprawling. And plaintiffs now assert that their claims arise from a "shared factual core and fundamentally interrelated conduct" traceable to a "single act" by an OpenAI employee in 2018. Am. Compl. ¶¶ 10-11. But that supposed common origin only underscores the weakness of the joinder theory: OpenAI itself has already been severed from this case by stipulation, Am. Compl. ¶ 2 n.2, and no defendant is alleged to have known about, encouraged, or participated in that "single act." The defendants are competitors—plaintiffs themselves describe them as participants in a "Generative AI Arms Race," Am. Compl. ¶¶ 10, 46—not collaborators. Rule 20 does not permit plaintiffs to lump together every company in the AI industry and force them to defend a single lawsuit simply because they all use AI.

As a threshold matter, the Court should sever Perplexity because plaintiffs have not satisfied the mandatory requirements for joinder under Rule 20—the claims against Perplexity do not arise from the same transaction or occurrence as the claims against any other defendant, and plaintiffs' purported common questions of fact are nothing more than a shared label for what would be entirely separate

- 1 -

factual investigations.  In the alternative, the Court should exercise its discretion to sever Perplexity under Rule 21 because joinder would cause concrete prejudice: the risk that a jury would conflate the distinct allegations against Perplexity with the unrelated allegations against other defendants, confusion from a trial involving a thicket of unrelated technologies, burdensome and inefficient joint discovery over issues that have nothing to do with Perplexity's product, and confidentiality complications from forcing direct competitors to litigate side by side.

Severance is also warranted for two other practical reasons.  First, plaintiffs' counsel have demonstrated that they will continue filing nearly identical complaints that lump together unrelated defendants in violation of Rule 20.  *See Chicken Soup for the Soul, LLC v. Anthropic PBC, et al.*, No. 3:26-cv-02333-LJC, ECF No. 1 (N.D. Cal. Mar. 17, 2026).  Second, co-defendants Meta, Anthropic, and Google have each independently confirmed, in responding to plaintiffs' administrative motion to relate cases, that severance would promote judicial economy because each defendant's claims can proceed alongside existing actions before judges already familiar with their specific conduct.  Dkts. 128, 131, 133.  Granting severance would put a stop to serial misjoinder and allow each case to proceed before the judge best positioned to resolve it.

If the Court grants severance, the appropriate remedy is dismissal without prejudice—the established practice in this District.  And the Court should not consolidate a severed Perplexity action with the remaining cases, as plaintiffs request, because doing so would defeat the purpose of severance by reassembling the same sprawling multi-defendant proceeding under a different procedural label. The claims against Perplexity should be severed and dismissed.

## ARGUMENT

### I.    The Court Should Sever Perplexity Because Plaintiffs Cannot Meet The Requirements of Rule 20

The Court should sever Perplexity because plaintiffs cannot satisfy Rule 20's requirement that their claims arise out of "the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A).  As plaintiffs acknowledge (Opp. 8), "alleging infringement of the same copyrights alone is not enough" to satisfy the same-transaction requirement.  Instead, a plaintiff must show that the defendants "worked in concert" or had a "relationship" connecting their alleged acts.

- 2 -

*Adobe Sys. Inc. v. Colorado Internet Servs., LLC*, 2014 WL 1007627, at \*3 (N.D. Cal. Mar. 12, 2014) (collecting cases); *IO Grp., Inc. v. Does 1-19*, 2010 WL 5071605, at \*3-4 (N.D. Cal. Dec. 7, 2010) (concluding that a conclusory allegation that defendants "conspired" was insufficient without alleged facts showing they "worked in concert").

Plaintiffs argue (Opp. 8-9) that they need not allege that defendants acted in concert, but the cases they cite bely that assertion. The case they describe as "instructive"—*Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group, Inc.*, 99 F. Supp. 3d 1110 (C.D. Cal. 2015)—found joinder proper precisely because the defendants *did* have a relationship. *Almont* was an ERISA case in which surgery centers sued over reimbursement disputes for gastric band procedures. The defendants fell into two groups: (1) UnitedHealth Group and its subsidiaries, which served as the health insurance company and claims administrator; and (2) 422 employers and their ERISA plans, each of which had hired United to administer claims on its behalf. *Id.* at 1121-22, 1188. The court found joinder proper precisely because every employer and ERISA plan defendant were connected; each "used United in an administrative capacity" to process the reimbursement decisions at issue. *Id.* Far from supporting plaintiffs' position, *Almont* shows that whether "larger systematic behavior" supports joinder depends on the existence of a concrete relationship among the defendants.

Plaintiffs' other cited authorities confirm the point. In *Lindora LLC v. Isagenix Int'l LLC*, 198 F. Supp. 3d 1127 (S.D. Cal. 2016), the court declined to sever a company from its own sales representative because the company had allegedly provided infringing marketing materials to the representative as part of its promotional efforts. *Id.* at 1149. And in *Hubbard v. Hougland*, 2010 WL 1416691 (E.D. Cal. Apr. 5, 2010), every defendant was a corrections officer or nurse at the same prison whose liability was causally linked to a single assault on the plaintiff. *Id.* at \*3. In all of these cases, the defendants had a concrete relationship connecting their alleged conduct. That concrete relationship is entirely lacking here.

Plaintiffs also cite *In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012), for the proposition that "joinder does not require defendants to have acted in concert." Opp. 8. But even that out-of-circuit case confirms that Perplexity should be severed. In *EMC*, the Federal Circuit vacated the district court's order denying severance, holding that "[t]o be part of the 'same transaction' requires

- 3 -

shared, overlapping facts that give rise to each cause of action, and not just distinct, albeit coincidentally identical, facts." *EMC Corp.*, 677 F.3d at 1359.   The Court identified six "pertinent factual considerations" bearing on joinder: (1) whether the alleged acts occurred "during the same time period;" (2) "the existence of some relationship among the defendants;" (3) "the use of identically sourced components;" (4) "licensing or technology agreements between the defendants;" (5) "overlap of the products' or processes' development and manufacture"; and (6) "whether the case involves a claim for lost profits." *Id.* at 1359-60.

None of those factors supports joinder here.   Plaintiffs do not allege that Perplexity acted in concert with any other defendant, had any relationship with any other defendant, or participated in the same process of alleged infringement as any other defendant.   Even with the benefit of defendants' motions to sever, plaintiffs' Amended Complaint fails to cure the misjoinder defects identified.   The alleged acts did not occur during the same time period: the complaint alleges that each defendant's infringement took place at different times, through different processes, as part of each company's independent development of its own AI products.   Am. Compl. ¶¶ 11, 123, 158 n.106, 195, 199.   The defendants did not use identically sourced components; Perplexity is the *only* defendant accused of using "AI search . . . systems" and a "retrieval-augmented generation or 'RAG' process" that retrieves copyrighted works using web crawlers, Am. Compl. ¶ 39, while every other defendant is accused of building foundation large language models by downloading bulk datasets from shadow libraries, *id.* ¶¶ 34-41.   These are fundamentally different processes, and the Federal Circuit in *EMC* "agree[d] that joinder is not appropriate where different . . . processes are involved."   677 F.3d at 1359.   There are no allegations of any licensing or technology agreements among the defendants, or of any overlap in the development of their respective products.   To the contrary, plaintiffs allege that the defendants are competitors working *against* one another in what plaintiffs call "The Generative AI Arms Race."   Am. Compl. ¶ 46.   And plaintiffs seek to hold each defendant individually liable, not jointly.   *Id.* ¶¶ 240-48.   In short, plaintiffs' own allegations confirm that Perplexity's conduct is separate and independent from that of every other defendant.

Finally, plaintiffs do not even attempt to distinguish the case most directly on point—*Adobe Sys. Inc. v. Colorado Internet Servs., LLC*, 2014 WL 1007627 (N.D. Cal. Mar. 12, 2014)—in which

- 4 -

Judge Chen granted severance in a copyright infringement action involving multiple defendants who sold counterfeit software, holding that "similar misconduct, in separate instances" is "an insufficient basis for which to join all defendants into a single suit." *Id.* at *3. The case for severance here is even stronger than in *Adobe*, because the defendants there at least operated in the same market segment using the same basic business model (reselling counterfeit software), whereas Perplexity's alleged infringement involves a fundamentally different technology than the other defendants.

Plaintiffs' failure to satisfy the "same transaction or occurrence" requirement is reason alone to grant Perplexity's motion.

But plaintiffs also cannot establish common questions of fact. It is not enough to argue (Opp. 10) that common questions include "what practices the AI industry (and each Defendant) adopted for acquiring training data" and whether "those practices reflected awareness of copyright concerns." At a high enough level of generality, of course, any question can be made to seem "common." As the Supreme Court explained in interpreting nearly identical language in Rule 23(a)(2), the "common question" requirement "is easy to misread, since any competently crafted . . . complaint literally raises common 'questions.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (cleaned up). Instead, "what matters" is the capacity of a joint proceeding "to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (cleaned up). "Dissimilarities" among defendants "are what have the potential to impede the generation of common answers." *Id.*; *see Roadget Bus. Pte. Ltd. v. Individuals, Corps., LLC*, 2024 WL 3338942, at *10 n.11 (N.D. Ill. July 9, 2024) (citing *Dukes* and drawing the same analogy between Rule 23 and Rule 20).

Plaintiffs' purported common questions fail that test—particularly as to Perplexity, whose technology and alleged conduct are fundamentally unlike those of any other defendant. Perplexity is the only defendant in this litigation that employs RAG web-crawler technology, setting it apart from every other defendant's technical approach. A broadly worded question that yields entirely different factual inquiries for Perplexity and the other defendants is not a "common question" in any meaningful sense.

DEFENDANT PERPLEXITY AI, INC.'S REPLY ISO MOTION TO SEVER
CASE NO. 5:25-cv-10897-PCP

**II.      In The Alternative, The Court Should Exercise Its Discretion to Sever Perplexity.**

Even if plaintiffs could satisfy Rule 20's requirements—and they cannot—the Court should still exercise its broad discretion under Rule 21 to sever Perplexity's claims in the interest of "fundamental fairness." *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980). Joinder here would prejudice Perplexity in multiple concrete ways that plaintiffs fail to address.

Joinder would prejudice Perplexity through jury confusion. Plaintiffs' Opposition illustrates the problem. Plaintiffs discuss Meta's admissions about downloading pirated books from LibGen and Z-Library, *see* Opp. at 4, and Anthropic's admissions about using material "sourced from The Pile," *see* Opp. at 4-5—and present those admissions alongside unrelated, unproven allegations against Perplexity, *see* Opp. at 5 (citing Complaint, *N.Y. Times Co. v. Perplexity AI, Inc.*, No. 1:25-cv-10106 (S.D.N.Y. Dec. 5, 2025)), as though they are all evidence of a single, unified course of industry conduct. Opp. 12. A trial involving multiple defendants—each accused of using different technologies and different methods of infringement—would present a knot of complex and unrelated technical issues that jury instructions alone cannot disentangle. Plaintiffs respond only by calling this concern a "red herring" and pointing to the Court's general tools for managing complexity. Opp. at 15. But plaintiffs offer no explanation of *how* a jury would parse the differences between RAG-based web crawling and foundation model training, or keep each defendant's evidence and defenses separate. *Cf. Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 1994 WL 16780779, at *2 (N.D. Cal. Apr. 19, 1994) (denying consolidation because requiring the jury to understand different technologies would increase the likelihood of confusion, lengthen the trial, and invite juror boredom, and thus the "likelihood of jury confusion outweighs any efficiency that might be achieved through consolidation").

Relatedly, joint discovery would impose unnecessary burdens on Perplexity without producing meaningful efficiencies. Joint discovery would not streamline the proceedings; it would instead drag Perplexity into years of coordinated litigation about technologies and datasets that have nothing to do with its product. Plaintiffs compound the problem by arguing (Opp. 12) that the claims against each defendant will require common expert testimony on "the structure of AI training datasets, and the methods for training large language models." But that description does not even describe Perplexity's

- 6 -

technology, as Perplexity is accused of operating a search system that retrieves content through web crawling.

These burdens are compounded by the confidentiality concerns inherent in joint litigation among direct competitors. Plaintiffs dismiss this issue as "routinely addressed through protective orders and confidentiality designations." Opp. at 15. But this is hardly routine. A protective order ordinarily shields one side's confidential information from the other and/or from the public. Here, the defendants are nominally on the same side of the case, but they are also direct competitors who would need protection *from each other*. Joint litigation would require not merely a standard protective order between opposing parties, but an elaborate multi-party arrangement with attorney/party walls preventing each defendant from accessing every other defendant's proprietary information. Forcing these competitors to plan a joint defense, while simultaneously erecting walls to keep each one's proprietary information secret, would multiply the complexity and cost of every discovery dispute and would be far more burdensome and inefficient than plaintiffs' passing reference to "routine" protective orders suggests. *See Tomahawk Mfg., Inc. v. Spherical Indus., Inc*., 344 F.R.D. 468, 471-72 (D. Nev. 2023) ("Courts routinely recognize the danger inherent in sharing discovery containing trade secret information with persons affiliated with a litigation opponent or other competitor.") (citing *Biovail Labs., Inc. v. Anchen Pharms., Inc*., 463 F. Supp. 2d 1073, 1083 (C.D. Cal. 2006) (collecting cases)); *In re: Spray Polyurethane Foam Insulation Prods. Liab. Litig*., 949 F. Supp. 2d 1364, 1364-65 (U.S. J.P.M.L. 2013) (declining centralization in MDL context because "placing direct competitor manufacturer defendants into the same litigation would require protecting trade secret and confidential information from disclosure to all parties and complicate case management.").

Co-defendants' filings further confirm that severance would promote judicial economy. In responding to plaintiffs' administrative motion to relate cases, Meta, Anthropic, and Google each identified existing proceedings in this District involving substantially similar copyright claims against them—proceedings that already have received "extensive judicial management," including dispositive rulings and discovery, before judges familiar with each defendant's specific conduct. Dkt. 128 at 1; *see also* Dkts. 131, 133. Severance would allow each set of claims to be channeled to those existing proceedings—avoiding duplicative discovery and motion practice (and the attendant risk of

inconsistent rulings), and sparing this Court the burden of replicating judicial effort that has already been undertaken elsewhere in this District.

Finally, plaintiffs' assertion that each defendant is a "necessary witness" in the claims against the others is unsupported. Opp. 12. Plaintiffs argue that the fair use market-harm analysis requires a "unified examination of the emerging market for licensed AI training data" in which each defendant is "a principal participant." *Id.* But "[e]very application of fair use is different, and the inquiry must be made on the specific facts before the Court on a case-by-case basis." *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 884 (N.D. Cal. 2020) (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994)). Plaintiffs' argument (Opp. 11) that "[t]he willfulness analysis will involve common evidence" fails for the same reason, as "a determination as to willfulness requires an assessment of [each] party's state of mind." *Sega Enter. Ltd. v. MAPHIA*, 948 F. Supp. 923, 936 (N.D. Cal. 1996). Moreover, plaintiffs never explain what testimony any defendant would actually offer in the case against Perplexity (and vice versa). What plaintiffs' argument actually reveals is their intent to pit defendants against one another at trial, while simultaneously shielding each defendant's proprietary information behind protective order walls that would prevent other defendants from seeing the very documents and testimony plaintiffs seek to use against them. That is a reason to sever, not to maintain joinder.

### III.    The Court Should Dismiss Perplexity Without Prejudice

Perplexity explained in its opening brief that the appropriate remedy for severance is dismissal without prejudice. Perplexity Mot. at 4 n.3. That is the established practice in this District, including in copyright infringement cases involving improper joinder. *See Adobe*, 2014 WL 1007627, at *4 (severing and dismissing all but the first-named defendant without prejudice); *see also* Perplexity Mot. at 4 n.3 (collecting cases). As courts in this Circuit have recognized, "[w]hen defendants are improperly joined, 'the Court may dismiss all but the first named defendant without prejudice so that separate suits may be filed against the dropped defendants.'" *Fashion Ave. Sweater Knits, LLC v. A'Gaci, LLC*, 2020 WL 13248958, at *1-2 (C.D. Cal. Oct. 26, 2020) (citation omitted).

Plaintiffs cite *Arteris S.A.S. v. Sonics, Inc.* and *Smith v. Trexler* for the proposition that the Court should instead direct the Clerk to open a new docket and refile the operative pleading. Opp. 18.

But neither case supports that approach here. *Arteris* involved only one plaintiff and one defendant, and the court sua sponte severed *claims*, not *parties*. 2013 WL 3052903, at \*8 (N.D. Cal. June 17, 2013). And in *Smith v. Trexler*, the court directed the clerk to file a copy of the amended complaint in a new action, but that case involved a pro se prisoner who hand-wrote all of his submissions to the court—a circumstance that plainly counseled in favor of the court managing the logistics of the new filing on the plaintiff's behalf, in light of the more lenient standards applicable to pro se litigants. 2016 WL 925851, at \*7 (N.D. Cal. Mar. 11, 2016). Neither case supports deviating from the well-established approach of dismissal without prejudice and refiling by the plaintiffs.

Plaintiffs' requested consolidation should also be denied. Consolidation would defeat the very purpose of severance by reassembling the same sprawling, multi-defendant proceeding. *See Snyder v. Nationstar Mortg. LLC*, 2016 WL 3519181, at \*2 (N.D. Cal. June 28, 2016) (denying consolidation because it "will require the jury to weave back and forth between the two actions, each involving a different loan with different key players, different factual scenarios and supporting evidence, and different statutory violations."); *Rosewolf v. Merck & Co*., 2022 WL 3214439, at \*4 (N.D. Cal. Aug. 9, 2022) (granting severance and denying plaintiffs' motion to consolidate). The premise of plaintiffs' consolidation argument—that the severed cases would involve "common question[s] of law or fact," Opp. at 18—fails for the same reasons explained above.

Finally, severance is not "premature" and none of the plaintiffs' cases suggest otherwise; in each case, the need for severance only became obvious well into the litigation. *See Make-A-Friend, Inc. v. Bear Mill, Inc.*, 2007 WL 9751835, at \*3 (D. Idaho Oct. 26, 2007); *DIRECTV, Inc. v. Hosey*, 289 F. Supp. 2d 1259, 1262 (D. Kan. 2003). That is not the situation here. The basis for severance is not speculative or dependent on what discovery might reveal; it is apparent from the face of the complaint. Each defendant acted independently, at different times, using different technologies, in competition with one another. There is nothing premature about granting severance where, as here, the pleadings themselves demonstrate that joinder is improper.

## CONCLUSION

The Court should sever and dismiss Defendant Perplexity AI.

DEFENDANT PERPLEXITY AI, INC.'S REPLY ISO MOTION TO SEVER
CASE NO. 5:25-cv-10897-PCP

Dated:          March 26, 2026                    MAYER BROWN LLP

                                                  */s/ Matthew D. Ingber*
                                                  Matthew D. Ingber

                                                  *Attorney for Defendant Perplexity AI, Inc.*

DEFENDANT PERPLEXITY AI, INC.'S REPLY ISO MOTION TO SEVER
CASE NO. 5:25-cv-10897-PCP