DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
kdunn@dirllp.com
JESSICA E. PHILLIPS (*pro hac vice*)
jphillips@dirllp.com
KYLE N. SMITH (*pro hac vice*)
ksmith@dirllp.com
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-2900

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
ANGELA L. DUNNING (212047)
adunning@cgsh.com
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4131

COOLEY LLP
KATHLEEN R. HARTNETT (314267)
khartnett@cooley.com
MARK R. WEINSTEIN (193043)
mweinstein@cooley.com
ELIZABETH L. STAMESHKIN (260865)
lstameshkin@cooley.com
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone: (650) 843-5000

BOBBY A. GHAJAR (198719)
bghajar@cooley.com
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883-6400

PHILLIP MORTON (*pro hac vice*)
pmorton@cooley.com
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSÉ DIVISION

| | |
|---|---|
| CAMBRONNE INC., et al.,<br><br>              Plaintiffs,<br><br>     v.<br><br>ANTHROPIC PBC, et al.,<br><br>              Defendants. | Case No. 5:25-cv-10897-PCP<br><br>**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO SEVER**<br><br>Judge:  Hon. P. Casey Pitts |

**INTRODUCTION**

Plaintiffs' opposition and since-filed Amended Complaint attempt to recast this case as concerning a single industry-wide scheme in which competing AI companies acted as one in exploiting a common "piracy ecosystem." Plaintiffs' Opp. to Mots. to Sever ("Opp."), ECF No. 126 at 1. But that characterization is neither supported by Plaintiffs' new allegations nor sufficient to satisfy the "same transaction or occurrence" standard under Rule 20. In fact, to the contrary, the Amended Complaint describes Defendants as fierce competitors in a generative AI "arms race," *e.g.*, Plaintiffs' Amended Complaint ("AC"), ECF No. 119 ¶ 46, each independently making strategic decisions to gain advantage over the others—with no allegation that any Defendant coordinated with any other. Under well-settled law, parallel conduct by independent competitors responding independently to the same market pressures is not a single transaction or occurrence sufficient to justify joinder. *See In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012). That Plaintiffs have already stipulated to sever OpenAI—purportedly the common origin of the entire scheme—only confirms the baselessness of their joinder theory.

Plaintiffs also fail to refute Meta's showing that severance is compelled as to Meta specifically: Plaintiffs' allegations against Meta are substantively identical to claims already being litigated before Judge Chhabria in *Kadrey v. Meta Platforms, Inc.* and *Entrepreneur Media, LLC v. Meta Platforms, Inc.*—cases in which fact discovery is well advanced, and in which the court has already confronted and decided central legal questions. Severing the claim against Meta will allow it to be coordinated with those proceedings, avoiding duplicative discovery, unnecessary burden on this Court and the parties, and a meaningful risk of inconsistent rulings. Plaintiffs offer no substantive response to this argument.

When Plaintiffs' rhetoric is set aside and the practicalities of litigation are examined, the case for severance becomes even clearer. Proving or disproving the conduct of each Defendant will require entirely distinct witnesses, documents, and proof. Each Defendant's liability, including application of the fair use defense, will be resolved on its own facts, through its own discovery and witnesses—exactly the circumstance that Rule 20 and Rule 21 are designed to address.

## ARGUMENT

### I.    Plaintiffs' Claims Against Meta Are Misjoined.

Plaintiffs' opposition rests on a narrative that Defendants participated in a single, "industry-wide scheme with a common origin" in OpenAI's 2018 LibGen download, Opp. at 6, and that this shared factual backdrop somehow transforms what are plainly independent acts by competing companies into a single transaction or occurrence. But there are no facts to connect any alleged conduct by OpenAI with Meta's own conduct, and Plaintiffs agree that OpenAI—purportedly the common origin of the independent conduct at issue here—should be severed while inexplicably fighting severance as to the other Defendants. ECF No. 98 at 1–2. Moreover, Plaintiffs' allegation about an industry-wide scheme with a common origin is legally insufficient to support joinder even if it were true (it is not), and it collapses when measured against the actual requirements of Rule 20 and the practicalities of litigation.

### A.    Parallel But Independent Conduct by Competitors Is Not a Common Transaction or Occurrence.

Rule 20 requires that claims arise from the "same transaction, occurrence, or series of transactions or occurrences"—a standard the Ninth Circuit has interpreted to require "similarity in the factual background of a claim," not merely similar conduct by independent actors. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). It is well established that defendants who independently infringe the same copyright do not satisfy this requirement. *See, e.g.*, *Afifeh v. Ahmadabadi*, 2022 WL 1617115, at *1 (C.D. Cal. Apr. 15, 2022) (citing cases). And, critically, the fact that independent defendants obtained infringing material from the same or similar sources does not supply the missing link. *Adobe Sys. Inc. v. Colorado Internet Servs.*, 2014 WL 1007627, at *3 (N.D. Cal. Mar. 12, 2014) ("[T]he fact that all Defendants here allegedly could have obtained the counterfeit or unauthorized copies of the Adobe products from the same or similar sources, without concerted action, does not satisfy the same transaction or occurrence test . . . .").

Plaintiffs attempt to avoid this conclusion by invoking the "logical relationship" standard under Rule 20, but that standard does not help them. *In re EMC Corp.*, which Plaintiffs cite, Opp. at 8, makes clear that independent defendants satisfy the transaction-or-occurrence test only where "the facts

underlying the claim of infringement asserted against each defendant share an aggregate of operative facts"—meaning "shared, overlapping facts that give rise to each cause of action, and not just distinct, albeit coincidentally identical, facts." 677 F.3d at 1359. There, the court considered whether a patent holder could join multiple independent defendants accused of infringing the same patents through their separately developed products and processes. *Id.* at 1353. A logical relationship requires an "actual link between the facts underlying each claim"—and the court specifically held (in the patent context) that "independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical." *Id.* at 1359.

Plaintiffs' "common origin" narrative, Opp. at 6, supplies no such link. The Amended Complaint traces all Defendants' conduct to OpenAI's 2018 LibGen download and EleutherAI's subsequent creation of Books3 and The Pile. AC ¶¶ 11–13. But Meta is not alleged to have had any involvement in those events. Moreover, a common starting point is not a common transaction, and coincidentally similar sourcing is not an aggregate of operative facts. Each Defendant independently decided whether and how to use those datasets, at different times, through different internal processes, with different technical architectures, to build different models for competing commercial purposes. The fact that competitive pressure may have led multiple companies to make similar decisions—as happens in every industry— supplies no actual link between the underlying facts sufficient for joinder. *See* 7 *Wright & Miller's Federal Practice and Procedure* § 1653 (3d ed. 2025) ("[J]oinder will not be allowed based solely on the assertion that the defendants committed the same type of violations in the same way.").

Plaintiffs rely heavily on *Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group, Inc.*, 99 F. Supp. 3d 1110 (C.D. Cal. 2015), Opp. at 6, 7, 9, 14, 15, but that case is inapt. *Almont* concerned allegedly unlawful claim denials for Lap-Band surgeries by the UnitedHealth companies and plans, which the complaint alleged acted as agents for each other pursuant to a deliberate, unitary company-wide policy of denying claims. 99 F. Supp. 3d at 1121-23. As alleged, the lawsuit rose and fell on a common set of issues as to each plan: whether United's uniform denial policies violated ERISA. *Id.* at 1187–88. Here, Plaintiffs attempt to aggregate the independent conduct of eight competing companies into a single case without alleging any coordination or other connection between them. Rule 20 does not stretch that far.

Similar but independent and asynchronous conduct among competitors is not the same as the systematic application of a single enterprise's uniform policy that satisfied Rule 20 in *Almont*.

Plaintiffs' other cases, which likewise uniformly involve allegations of coordination or a unified wrongdoer, are also inapposite. *See Pablo Sequen v. Kaiser*, 2025 WL 3275602 at *3 (N.D. Cal., Nov. 24, 2025) (finding that individual and class claims satisfied the same transaction requirement where they challenged the same government policies or practices and sought relief against the same set of government defendants); *Russo v. Fed. Med. Servs., Inc.*, 756 F. Supp. 3d 748, 753–54 (N.D. Cal. 2024) (same finding where plaintiffs worked for the same employer, under the same supervisor, performed similar job duties, and alleged the same violations of labor laws); *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1149 (S.D. Cal. 2016) (denying severance where plaintiff "not only" alleges that both defendants "engaged in trademark infringement," but had pled coordination between the defendants in that one defendant "intentionally provided infringing marketing materials" to the other); *Hubbard v. Hougland*, 2010 WL 1416691, at *3 (E.D. Cal. Apr. 5, 2010) (finding same transaction requirement satisfied where plaintiff alleged that joined defendant prison employees "ratified or covered up the alleged excessive force used by" the original defendants); *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333–34 (8th Cir. 1974) (same finding with respect to claims brought by multiple employees of GM because all claims were premised on a "company-wide policy" of discrimination); *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1324 (11th Cir. 2000) (same where "Plaintiffs all seek relief based on the same series of discriminatory transactions by the same decision-maker in the same department during the same short time frame"); *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977) (same where joined party was necessary to afford complete relief against alleged wrongdoing of primary defendant); *see also In re EMC Corp.*, 677 F.3d at 1359 (holding in patent context that "[w]e agree that joinder is not appropriate where different products or processes are involved").

Notably, the Amended Complaint does not allege that Defendants coordinated their data acquisition, shared training pipelines, consulted one another, or acted pursuant to any common plan—a fact Plaintiffs effectively concede by arguing that concerted action is not required for joinder. *See* Opp. at 8; AC ¶ 10 (describing conduct as arising from a "shared factual core" without alleging coordination);

AC ¶¶ 119–230 (alleging each Defendant's conduct in separate, independent sections). If Plaintiffs believed the facts supported a conspiracy or concert-of-action theory, they could have pleaded it. But the facts do not support such a theory—the Defendants here independently made their own strategic choices and implemented them at different times in different ways in furtherance of their own, independent development efforts.

**B.    The Claimed Common Questions Do Not Withstand Scrutiny.**

Plaintiffs identify a set of purportedly common factual questions about the structure of the shadow library ecosystem, the provenance of the pirated datasets, and what the so-called "AI industry" knew and when. Opp. at 9–10. These questions have no bearing on any Defendant's copyright liability. As to the shadow library ecosystem and dataset provenance, the relevant inquiry for each Defendant is simply whether it copied Plaintiffs' works without authorization. The full history of how those libraries came to exist is irrelevant to Meta's alleged liability, particularly where Meta is not alleged to have been involved in the creation of any at-issue datasets. The questions about what the "AI industry" knew and what practices it purportedly adopted are irrelevant to the question of whether Meta violated the Copyright Act or engaged in fair use. Meta's liability rests solely on what Meta knew and what Meta did and whether its actions are consistent with the purposes of copyright law; it does not rest at all on the alleged knowledge or conduct of any other alleged member of the "AI industry." Indeed, what Meta knew and did is precisely the kind of individualized, Defendant-specific fact development that makes joinder unworkable here. As pleaded, there is no fact witness from one Defendant whose testimony will bear on the liability of any other.

Plaintiffs identify fair use and willfulness as common legal questions sufficient to sustain joinder. Opp. at 10–11. But the presence of shared legal questions has never been sufficient to justify joinder where the inquiry will turn substantially on individualized facts specific to each defendant's conduct. *See, e.g.*, *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 232–33 (M.D. Tenn. 2001) (finding misjoinder despite plaintiffs' identification of copyright ownership, copying, licensing, and fair use as common questions, and despite plaintiffs' anticipation of common expert testimony); *Coughlin*, 130 F.3d

at 1351; *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1081 (C.D. Cal. 2002). Fair use and willfulness are not common inquiries here.

Willfulness depends on what a specific Defendant's employees knew, when they knew it, what (if any) internal warnings were raised, and what decisions were made in response. *See Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011). The Amended Complaint's own allegations bear this out—each Defendant's willfulness section recounts different company communications, different actors, and different decision points. *See* AC ¶¶ 123–129 (Anthropic), ¶¶ 135–140 (OpenAI), ¶¶ 146–149 (Google), ¶¶ 157–160 (Meta), ¶¶ 171–175 (xAI), ¶¶ 183–189 (Perplexity), ¶¶ 209–212 (NVIDIA), ¶¶ 223–230 (Apple). A Google engineer's knowledge of that company's data-sourcing decisions is irrelevant to any alleged willfulness of Meta's conduct. Meta's internal deliberations about its Llama training pipeline are irrelevant to Anthropic's deliberations. These are individualized inquiries that will require entirely distinct witnesses and documents for each Defendant.

Fair use will also be an individualized inquiry for each Defendant. The first factor—purpose and character of the use—turns on each Defendant's specific technical processes and commercial objectives for its at-issue products. The third—amount and substantiality—turns on each Defendant's particular datasets and the scope of its copying. And the fourth—market harm—also cannot be resolved on a common record. *See Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1175, 1178–79 (9th Cir. 2013). One key market harm inquiry concerns the effect of each Defendant's LLM outputs on the consumer market for Plaintiffs' books—that is, whether those outputs substitute for the protected expression in the original works in the hands of actual or potential readers. That inquiry is necessarily Defendant-specific. Each Defendant's models have different capabilities, different use cases, different outputs, different user bases, and different positions in the market. The degree to which one Defendant's LLM usurps consumer demand for a Plaintiff's book, if at all, is a distinct factual question from the degree to which another Defendant's does, and resolving it will require Defendant-specific evidence about each model's outputs and market reach.

Plaintiffs argue that because the fair use inquiry asks "whether unrestricted and widespread conduct of the sort engaged in by the defendant" would harm the market, each Defendant's conduct is

necessarily relevant to every other's analysis. Opp. at 11 (citation omitted). They further suggest that each Defendant will be a "necessary witness" in the claims against the others. *Id.* at 12. But that is wrong. The courts adjudicating *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1050–59 (N.D. Cal. 2025), and *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1031–33 (N.D. Cal. 2025), have each assessed fair use, including market harm, on a defendant-by-defendant basis without requiring all AI defendants to be joined in a single proceeding.[1] Each Defendant's market impact can be addressed through expert testimony in any individual proceeding—there is no need for, say, Perplexity's engineers to testify in a case against Meta about the effect of Meta's models on the market for Plaintiffs' books. Judge Chhabria's market harm analysis in *Kadrey* illustrates why. In assessing whether the *Kadrey* plaintiffs presented competent evidence that Meta's use of their books harmed their market, the court asked granular, Llama-specific questions: whether Llama is capable of generating book-length outputs, what markets Llama's outputs compete in, and what impact Llama actually has on sales of the specific plaintiffs' books. *Kadrey*, 788 F. Supp. 3d at 1056. None of those questions could be answered by reference to Google's or Anthropic's models—and none of Plaintiffs' proposed "necessary witnesses" from other Defendant companies would have anything useful to say about them.

## II. Severance Will Facilitate Coordination With *Kadrey* and *Entrepreneur*, Promoting Judicial Economy and Avoiding Inconsistent Rulings.

The judicial economy case for severing Meta is compelling. Plaintiffs' allegations against Meta are substantively identical to claims already being litigated before Judge Chhabria. Plaintiffs conspicuously fail even to engage with, much less refute, this strong rationale for severance.[2]

---

[1] Most major AI companies face separate, active copyright litigation in which these issues will be—or already have been—confronted on a Defendant-by-Defendant basis. *See, e.g.*, *Bartz v. Anthropic PBC*, No. 3:24-cv-05417-AMO (N.D. Cal.) (class action settled for $1.5 billion following class certification and partial summary judgment); *Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC (N.D. Cal.) (putative class action post-summary judgment on reproduction claim, pre-summary judgment on distribution claim, pre-class discovery); *In re Google Generative AI Copyright Litig.*, No. 5:23-cv-03440-EKL (N.D. Cal.) (class certification fully briefed, summary judgment to follow); *In re OpenAI, Inc. Copyright Infringement Litig.*, No. 1:25-md-03143-SHS-OTW (S.D.N.Y.) (multidistrict litigation nearing close of discovery); *Nazemian v. NVIDIA Corp.*, No. 4:24-cv-01454-JST (N.D. Cal.) (putative class action in discovery); *Hendrix v. Apple Inc.*, No. 3:25-cv-07558-YGR (N.D. Cal.) (putative class action in early stages).

[2] Meta has been transparent about its intentions from the outset. At a hearing before Judge Chhabria on February 5, 2026, Meta's counsel informed the court that this action had been filed and that Meta was

Plaintiffs do not dispute that they are members of the *Kadrey* putative class, that their allegations against Meta mirror those in *Kadrey* and *Entrepreneur*, or that the factual record in those cases is already substantially developed. Nor do they dispute that Judges Alsup (with respect to claims against Anthropic) and Chhabria (with respect to claims against Meta) have already reached conflicting conclusions on fair use in generative AI cases—a divergence that may only deepen if this Court adjudicates identical claims against Meta on a parallel track. Instead, Plaintiffs note only that their agreement to sever OpenAI reflected the "unique procedural posture" of that multidistrict litigation. Opp. at 16 n.8. But in doing so, Plaintiffs conceded the governing principle: severance "is reasonable and serves the interests of judicial economy and efficiency" where claims against a Defendant substantially overlap with related litigation elsewhere. ECF No. 98 at 1. That concession applies with equal force to Meta. *See L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *3 (N.D. Cal. Oct. 10, 2025) (granting severance where claims were "duplicative of—or at least substantially overlap[ped] with," claims pending in related litigation, reasoning that parallel proceedings would risk inconsistent rulings and create unnecessary burden); *Netlist, Inc. v. Smart Modular, Inc.*, 2013 WL 12128691, at *5, *7 (C.D. Cal. Nov. 26, 2013) (severing claims to facilitate consolidation with related pending actions).

The practical consequences of denying severance are concrete. Meta would face duplicative discovery on conduct already being litigated in *Kadrey* and *Entrepreneur*, before a different court unfamiliar with that record, with attendant risk of inconsistent rulings on identical legal questions. *See Colors of India v. Nielsen*, 2018 WL 6430118, at *5 (C.D. Cal. Oct. 19, 2018) ("[S]evering the claims would likely avoid lengthy delays associated with duplicative, unnecessary discovery requests."); *Trazo v. Nestle USA, Inc.*, 2013 WL 12214042, at *3 (N.D. Cal. Dec. 4, 2013) ("Severing Plaintiff's case . . . will help streamline discovery and allow the parties to focus on the distinct evidence required to support each separate claim."). And Plaintiffs themselves would gain nothing—litigating their claim against Meta alongside seven other Defendants in a complex multi-defendant action presents significant logistical challenges that would not exist if that claim were severed and related to *Kadrey* and

---

"expecting to have a motion to sever because we think it was improper joinder" and then "file a motion for relatedness to you." *Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC (N.D. Cal.), ECF No. 680 (Feb. 12, 2026) at 37:4–13. Judge Chhabria is thus already aware of and anticipating this case. *Id.* at 58:25–59:4.

*Entrepreneur*, where *Kadrey*'s substantially developed factual record is already available. Severance is the most efficient path to adjudicating their claim against Meta on the most developed record available.

### III. Severance Would Not Prejudice Plaintiffs.

Plaintiffs argue that severance would impose undue burden on six individual authors forced to litigate separate proceedings "against some of the largest technology companies in the world." Opp. at 16. That concern does not withstand scrutiny.

Plaintiffs' core prejudice argument is that severance would require "duplicative discovery, duplicative expert testimony, duplicative motion practice, and potentially numerous separate trials." Opp. at 16. But this argument misunderstands what joinder actually accomplishes here. Because Defendants' conduct was entirely independent, Plaintiffs must in any event conduct separate discovery against each Defendant—separate document requests, separate depositions of each Defendant's employees, separate interrogatories about each Defendant's specific training processes and data-sourcing decisions, among other matters. *See, e.g.*, *EIT Holdings LLC v. Yelp!, Inc.*, 2011 WL 2192820, at *1, *3 (N.D. Cal. May 12, 2011) (severing claims where defendants were "unrelated companies" accused of infringing the same patent claims, and the plaintiff's allegations would "require proof of facts specific to each individual defendant"). Joinder does not eliminate that burden. It merely forces Defendants to sit through each other's discovery, with all the attendant complexity of protecting competitively sensitive information among active rivals in the same market. *See Lam Rsch. Corp. v. Flamm*, 2016 WL 1237831, at *2 (N.D. Cal. Mar. 30, 2016); *Sw. Fair Hous. Council v. WG Chandler Villas SH LLC*, 2019 WL 1382500, at *3 n.4 (D. Ariz. Mar. 27, 2019). And the logistical burden has only grown since Meta filed its motion—Plaintiffs' Amended Complaint added Apple and NVIDIA as Defendants, AC ¶¶ 40–41, bringing the total to eight competing companies whose competitively sensitive information would all be at risk in a single joint proceeding. As for separate trials, they are not a cost of severance—they are a necessity. Trying independent claims against competing Defendants in a single proceeding would only serve to confuse the jury, risk guilt by association, and prolong the trial. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296–97 (9th Cir. 2000) (affirming severance in part due to risks of jury confusion and prejudice arising from joinder of unrelated claims). As to Meta specifically, any risk of burden from

severance is further reduced by the fact that the claim would presumptively proceed before the same judge presiding over *Kadrey* and *Entrepreneur*, and would be set on a schedule that takes account of the record that is already substantially developed in those actions.

Finally, Plaintiffs suggest that severance is premature and that this Court can manage any inefficiencies through case management tools.[3]  Opp. at 17.  But the inefficiencies here arise from two incompatibilities that no protective order or scheduling arrangement can cure: the impracticality of litigating independent claims against competing Defendants in a single proceeding, and the impracticality of litigating nearly identical claims against Meta before two different judges simultaneously.  The time to address misjoinder is now, before the parties invest further resources in a proceeding that will ultimately have to be disaggregated anyway.[4]

**CONCLUSION**

For the foregoing reasons, and those set forth in Meta's opening brief, the Court should sever and dismiss Plaintiffs' claim against Meta.

---

[3] Plaintiffs' invocation of the out-of-circuit *DIRECTV, Inc. v. Hosey*, 289 F. Supp. 2d 1259, 1262 (D. Kan. 2003), case is unavailing.  There, the court declined to sever at the pleading stage because it determined it would likely consolidate the cases for discovery purposes.  *Id.*  As discussed above, no such efficiencies exist here—joinder would not streamline discovery but would instead require Defendants to sit through each other's wholly distinct proceedings while requiring special measures to protect competitively sensitive information among active rivals.  *See supra* p. 9.

[4] Recent developments confirm that the time to sever is now.  Plaintiffs' counsel have filed a new action, *Chicken Soup for the Soul, LLC v. Anthropic PBC*, No. 5:26-cv-02333-LJC (N.D. Cal.), asserting materially identical claims against the same Defendants on behalf of a new plaintiff, adding 381 additional works, and seeking to relate that case to this one.  At the status conference held on March 24, 2026, Plaintiffs' counsel represented that additional lawsuits would be forthcoming.  Each of those cases—like this one—would be far more efficiently adjudicated alongside the existing litigation against each respective Defendant than in an ever-expanding omnibus proceeding.

Dated: March 26, 2026

Respectfully submitted,

DUNN ISAACSON RHEE LLP

By: /s/ *Karen L. Dunn*

Karen L. Dunn
Jessica E. Phillips
Kyle N. Smith

COOLEY LLP
Kathleen R. Hartnett
Mark R. Weinstein
Elizabeth Lee Stameshkin
Bobby A. Ghajar
Phillip Morton

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Angela L. Dunning

*Counsel for Defendant Meta Platforms, Inc.*