DAVID H. KRAMER, SBN 168452
Email: dkramer@wsgr.com
MAURA L. REES, SBN 191698
Email: mrees@wsgr.com
QIFAN HUANG, SBN 339672
Email: qhuang@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300

ERIC P. TUTTLE, SBN 248440
Email: eric.tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500

*Counsel for Defendant Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CAMBRONNE INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC, et al.,<br><br>Defendants. | Case No.: 5:25-cv-10897-PCP<br><br>**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO SEVER BASED ON IMPROPER JOINDER OF DEFENDANTS**<br><br>Date:         TBD<br>Time:         TBD<br>Courtroom:  8, 4th Floor<br>Judge:        Hon. P. Casey Pitts |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION...................................................................................................................1

ARGUMENT .......................................................................................................................2

I.    Plaintiffs' Claims Against Google Have Been Improperly Joined with Those Against Other Defendants. .........................................................................................2

      A.    Plaintiffs' Claims Against Google and Those Against Other Defendants Are Not Transactionally Related. ...............................................................................2

      B.    Plaintiffs' Claims Against Google and Those Against Other Defendants Lack a Common Question. ..................................................................................7

II.    Plaintiffs' Opposition Confirms that Discretionary Severance Is Independently Warranted. .................................................................................................................8

III.    The Appropriate Remedy for Google's Misjoinder Is Dismissal. ...................................11

CONCLUSION ...................................................................................................................12

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Adobe Sys. Inc. v. Colo. Internet Servs., LLC*,
  2014 WL 1007627 (N.D. Cal. Mar. 12, 2014) ........................................................... 1, 2, 3, 7, 8

*Afifeh v. Ahmadabadi*,
  2022 WL 1617115 (C.D. Cal. Apr. 15, 2022).............................................................................. 2

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
  99 F. Supp. 3d 1110 (C.D. Cal. 2015)......................................................................................... 5

*Am. Small Bus. League v. U.S. Off. of Mgmt. & Budget*,
  2021 WL 4459667 (N.D. Cal. Apr. 21, 2021) ........................................................................... 11

*Alvarado v. City of Los Angeles*,
  720 F. App'x 889 (9th Cir. 2018)............................................................................................... 11

*Arteris S.A.S. v. Sonics, Inc.*,
  2013 WL 3052903 (N.D. Cal. June 17, 2013).   ....................................................................... 11

*Blackman v. Teespring, Inc.*,
  2019 WL 7832600 (N.D. Cal. July 12, 2019) ............................................................................. 7

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ..................................................................................................................... 8

*Coleman v. Quaker Oats Co.*,
  232 F.3d 1271 (9th Cir. 2000)................................................................................................. 9, 10

*Coughlin v. Rogers*,
  130 F.3d 1348 (9th Cir. 1997)............................................................................................. 4, 5, 8

*EIT Holdings LLC v. Yelp!, Inc.*,
  2011 WL 2192820 (N.D. Cal. May 12, 2011) ............................................................................. 9

*In re EMC Corp.*,
  677 F.3d 1351 (Fed. Cir. 2012)................................................................................................... 3

*Estée Lauder Cosmetics Ltd. v. The P'ships & Unincorporated Ass'ns Identified on
  Schedule "A"*,
  No. 1:20-cv-00845 (N.D. Ill. June 22, 2020) ............................................................................. 5

*Gibson v. City of Portland*,
  165 F.4th 1265 (9th Cir. 2026)................................................................................................... 11

*In re Google Generative AI Copyright Litig.*,
  No. 5:23-cv-03440-EKL (N.D. Cal.) .................................................................................. 7, 9, 12

*Hard Drive Prods., Inc. v. Does 1-188*,
809 F. Supp. 2d 1150 (N.D. Cal. 2011) ...................................................................................... 3

*Hubbard v. Houghland*,
2010 WL 1416691 (E.D. Cal. Apr. 5, 2010) .............................................................................. 6

*Joanne Fabric, Inc. v. Brad & Zoe, Inc.*,
2018 WL 6137158 (C.D. Cal. Apr. 4, 2018) .............................................................................. 3

*Kadrey v. Meta Platforms, Inc.*,
No. 23-cv-03417-VC (N.D. Cal. Mar. 25, 2026) ...................................................................... 8

*Lam Rsch. Corp. v. Flamm*,
2016 WL 1237831 (N.D. Cal. Mar. 30, 2016) .......................................................................... 9

*McGucken v. Pub Ocean Ltd.*,
42 F.4th 1149  (9th Cir. 2022) ................................................................................................... 8

*Mosley v. Gen. Motors Corp.*,
497 F.2d 1330 (8th Cir. 1974) ................................................................................................... 6

*In re Musical Instruments & Equip. Antitr. Litig.*,
798 F.3d 1186 (9th Cir. 2015) ................................................................................................... 5

*Pablo Sequen v. Kaiser*,
2025 WL 3275602 (N.D. Cal. Nov. 24, 2025) .......................................................................... 5

*Rearden LLC v. TWDC Enters. 18 Corp.*,
722 F. Supp. 3d 1011 (N.D. Cal. 2024) .................................................................................... 4

*S.F. Tech., Inc. v. Adobe Sys. Inc.*,
2010 WL 1463571 (N.D. Cal. Apr. 13, 2010). ........................................................................ 11

*Smith v. Trexler*,
2016 WL 925851 (N.D. Cal. Mar. 11, 2016), .......................................................................... 11

*Sw. Fair Hous. Council v. WG Chandler Villas SH LLC*,
2019 WL 1382500 (D. Ariz. Mar. 27, 2019) ........................................................................... 9

*Visendi v. Bank of America, N.A.*,
733 F.3d 863 (9th Cir. 2013) ......................................................................................... 5, 7, 11

*WiAV Networks, LLC v. 3Com Corp.*,
2010 WL 3895047 (N.D. Cal. Oct. 1, 2010) .................................................................. 1, 6, 7

**STATUTES**

17 U.S.C. § 107 ............................................................................................................................. 8

17 U.S.C. § 504 ............................................................................................................................ 10

17 U.S.C. § 505 ............................................................................................................ 10

**RULES**

Fed. R. Civ. P. 20 .............................................................................. 1, 2, 3, 5, 7

Fed. R. Civ. P. 42 .............................................................................................. 12

**INTRODUCTION**

Plaintiffs' opposition does not answer the question that matters most:  What common *transaction or occurrence* links Google's alleged conduct to that of any other Defendant?  Rule 20 requires one, but Plaintiffs identify none.  Instead, Plaintiffs offer an unprecedented theory of industry-wide joinder:  Because competitive pressure allegedly drove competing AI companies independently to use books sourced from different "shadow libraries" to train different models at different times through different methods, they may all be sued together.  But Rule 20 does not permit joinder in that circumstance, mandating severance here.

Plaintiffs rest their novel argument on their characterization of Defendants as having supposedly engaged in a "systematic pattern of behavior" (ECF No. 126 ("Opp.") at 1):  After OpenAI allegedly downloaded one set of pirated copies of books from one source and used them to train its model, other Defendants allegedly "followed the same path" in order to keep up in a "generative AI arms race."  Opp. 3.

But Plaintiffs' characterization is neither supported by the facts alleged in their Complaint nor legally sufficient.  Plaintiffs' allegations show that Defendants independently chose to use books from different sources in different ways, following no standard playbook.  But even if Defendants *were* alleged to have downloaded the same books from the same sources pursuant to some imagined industry standard—and they are not—that would still not justify joinder. Numerous cases, including in the copyright context, hold that such allegedly parallel conduct by competitors is not the same transaction or occurrence necessary for joinder.  *See, e.g.*, *Adobe Sys. Inc. v. Colo. Internet Servs., LLC*, 2014 WL 1007627, at \*3 (N.D. Cal. Mar. 12, 2014) (copying "from the same or similar sources, without concerted action, does not satisfy the same transaction or occurrence test for purposes of Rule 20"); *WiAV Networks, LLC v. 3Com Corp.*, 2010 WL 3895047, at \*2-3 (N.D. Cal. Oct. 1, 2010) (severing patent claims against defendants alleged to have infringed by conforming to an "industry standard").  Plaintiffs identify no case to the contrary—none involving claimed intellectual property infringement, none involving competitors following the same path due to competitive pressure, none with analogous facts.

Because Plaintiffs' claims against eight competing AI companies do not arise out of any common transaction or occurrence, severance is mandatory. But there are additional reasons the Court should sever Google's case. Plaintiffs also have not shown that their claims against these eight independent companies raise a question of fact or law common to all the parties, which is an independent requirement for joinder. And regardless, the Court should order the claims severed because attempting to litigate and try lawsuits against eight different competitors in one proceeding would impose enormous prejudice.

## ARGUMENT

### I. Plaintiffs' Claims Against Google Have Been Improperly Joined with Those Against Other Defendants.

Plaintiffs' opposition confirms they cannot show that the claims against Defendants arise from "the same transaction, occurrence, or series of transactions or occurrences" or that "any question of law or fact common to all defendants will arise in the action," Fed. R. Civ. P. 20(a)(2)(A)-(B), both of which are "mandatory" prerequisites to joinder, *Colo. Internet Servs.*, 2014 WL 1007627, at *2. Because Plaintiffs have not established these prerequisites, Rule 20 requires that the claims against Google be severed. *Id.*

### A. Plaintiffs' Claims Against Google and Those Against Other Defendants Are Not Transactionally Related.

Plaintiffs' opposition stumbles at the threshold. Plaintiffs concede the "well established" point "that defendants 'who merely infringe the same [copyright] do not satisfy the same occurrence and transaction requirement' of Rule 20." *Afifeh v. Ahmadabadi*, 2022 WL 1617115, at *1 (C.D. Cal. Apr. 15, 2022); *see also* Opp. 8 ("alleging infringement of the same copyrights alone is not enough"). And even with the benefit of over five weeks to oppose Google's motion to sever, during which they filed an amended complaint, Plaintiffs do not dispute the two key bases for misjoinder of Google: (1) Plaintiffs allege that Google used different datasets at different times to train different models than the other Defendants, and (2) Plaintiffs do not allege that Google acted in concert, coordinated, or conspired with the other Defendants. *See* ECF No. 94 ("Mot.") at 2-3, 7-9. To the contrary, Plaintiffs have doubled down on their theory that competitive pressure

drove each of the Defendants' independent actions in an "arms race" (Opp. 3; ECF No. 119 ("Am. Compl.") ¶¶ 14–15)—refuting any notion of a conspiracy among Defendants. There is thus no basis for concluding that the claims arise from the same transaction or series of transactions, and Rule 20 requires severance.

Plaintiffs cannot muster even a single copyright infringement case (or indeed any intellectual property case) in support of their joinder theory. Instead, Plaintiffs stake their opposition on the generic principle that Rule 20's "same transaction" requirement is satisfied when claims against different parties share a "logical relationship" or arise from a "systematic pattern of events." Opp. 7-8. But that framing does not help them. As Plaintiffs acknowledge, these tests ask whether the "*operative facts* underlying [each] claim[]" overlap. Opp. 8 (emphasis added); *see In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012) ("To be part of the 'same transaction' requires shared, overlapping facts that give rise to each cause of action, and not just distinct, albeit coincidentally identical, facts."). Here, they do not. Indeed, it is undisputed that the facts of each Defendants' alleged infringement—that is, the operative facts—are distinct. Plaintiffs themselves allege as much. *See, e.g.*, Am. Compl. ¶ 58 (alleging that "Defendants' acquisition of each [dataset] involved independent acts of unauthorized reproduction").

Plaintiffs' attempt to manufacture transactional relatedness by claiming that Defendants all sourced training data from the "same piracy ecosystem," Opp. 1, fares no better. Copying "from the same or similar sources, without concerted action, does not satisfy the same transaction or occurrence test for purposes of Rule 20." *Colo. Internet Servs.*, 2014 WL 1007627, at *3; *see also Joanne Fabric, Inc. v. Brad & Zoe, Inc.*, 2018 WL 6137158, at *1-2 (C.D. Cal. Apr. 4, 2018) (allegation of a "reasonable belief" of a "single source" for infringing works insufficient to support joinder). Plaintiffs admit that courts have concluded that "using the same technology (BitTorrent) to download the same file was insufficient to establish a series of transactions or occurrences." Opp. 13 (citing *Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1157-64 (N.D. Cal. 2011)). Plaintiffs thus concede the controlling principle—that independently accessing the same source to copy the same material does not establish transactional relatedness—while insisting the principle does not apply to them. They offer no basis for that distinction.

But Plaintiffs' arguments are worse than that: They have not even alleged that all Defendants used the same sources or methods to acquire their books. Rather, they allege that Defendants accessed a hodgepodge of different websites and datasets that Plaintiffs characterize as "interlocking" Opp. 9, using different methods, *e.g.*, Am. Compl. ¶¶ 154 (alleging Meta downloaded works via "BitTorrent"), 146 (alleging Google used "data scraped from [web]sites"). This difference is especially clear for Google. While some other Defendants are alleged to have intentionally downloaded books directly and specifically from an assortment of various alleged "shadow libraries" and used them to train their models (*e.g.*, Am. Compl. ¶¶ 102, 152, 154; Opp. 4), Plaintiffs contend that Google trained its models on the "C4" dataset, a "large web-scale corp[us]," and that the C4 dataset somewhere includes (among its multitude of data crawled from all over the internet) some unidentified books "from Z-Library," an alleged "piracy site." Am. Compl. ¶¶ 142-43, 147.[1] That attenuated allegation—that a publicly available dataset containing a broad crawl of the internet may incidentally contain unspecified material originating from a so-called piracy site—has nothing in common with the alleged use of intentional, direct, and wholesale downloads of alleged shadow libraries by Anthropic, Meta, and others (Opp. 4; Am. Compl. ¶¶ 34, 119-121, 123, 152, 154). Plaintiffs' Opposition underscores this factual disconnect, detailing alleged training on books directly sourced from alleged shadow libraries by other Defendants, but not Google. *See* Opp. 4-5.

Plaintiffs' authorities serve to confirm that joinder requires what is absent here: coordinated conduct linking the defendants' actions. In *Coughlin v. Rogers*, the Ninth Circuit affirmed severance where forty-nine immigration applicants alleged a "systematic" pattern of

---

[1] In their Amended Complaint, filed after Google's motion to sever, Plaintiffs added a new allegation on "information and belief" that Google downloaded Z-Library. *E.g.*, Am. Compl. ¶ 143 ("On information and belief, Google downloaded the contents of Z-Library, including Plaintiffs' copyrighted books."). This conclusory allegation lacks any facts supporting the alleged "information" or supposed "belief" and should be "disregard[ed] as legally insufficient." *Rearden LLC v. TWDC Enters. 18 Corp.*, 722 F. Supp. 3d 1011, 1018 (N.D. Cal. 2024). More importantly, it lacks the relevant allegation that any such purportedly "downloaded" materials were ever used to train any model, and thus does not even match Plaintiffs' own characterization of this case as involving a "single, industry-wide course of conduct" based on the use of such materials to train generative AI models. Opp. 1.

unreasonable processing delays by *one defendant*—the INS—holding that the plaintiffs had not established a "systematic pattern of events" because they failed to allege "a pattern or policy of delay in dealing with all applications and/or petitions."  130 F.3d 1348, 1350 (9th Cir. 1997).  In *Visendi v. Bank of America, N.A.*, the Ninth Circuit reached the same conclusion in a case involving deceptive lending practices by various banks toward various plaintiffs, finding no "systematic" pattern where the allegations concerned "distinct" acts by "different" actors turning on different facts.  733 F.3d 863, 870 (9th Cir. 2013).  *Coughlin* and *Visendi* are consistent with the general principle governing all of these cases:  Absent coordination or other concerted action linking the defendants' conduct, parallel acts of alleged misconduct—even of the same general type—do not constitute a "systematic pattern" for Rule 20 purposes.  *See Estée Lauder Cosmetics Ltd. v. The P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 1:20-cv-00845 (N.D. Ill. June 22, 2020), ECF No. 40 (Order Finding Joinder Improper) at 8 (attached hereto as Ex. A) (recognizing "the longstanding procedural tenet that joinder under Rule 20(a) cannot be premised solely on independent, parallel conduct" and that "plaintiff must show some additional cooperation, coordination, or relationship between each joined defendant."); *In re Musical Instruments & Equip. Antitr. Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015) (explaining in the antitrust context that "competitors adopting similar policies around the same time in response to similar market conditions" is an example of "parallel conduct" consistent with "independent conduct in an interdependent market").  Plaintiffs thus cannot meet their own standard.

The remaining authorities Plaintiffs cite likewise offer no support for their position and are easily distinguished. *Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group, Inc.*, which Plaintiffs claim is "instructive" (Opp. 9), found "systematic behavior" only because the claims involved ERISA plans all commonly administered by UnitedHealth Group and its subsidiaries; the defendants were entities operating under common corporate control and allegedly engaged in a "concerted effort ... to indefinitely avoid paying" for weight-loss surgeries, together with plan sponsors who all engaged UnitedHealth and "knew or should have known about [the plan administrators'] unlawful practices."  99 F. Supp. 3d 1110, 1121-23, 1186-88 (C.D. Cal. 2015); *see also Pablo Sequen v. Kaiser*, 2025 WL 3275602, at \*3 (N.D. Cal. Nov. 24, 2025) (joinder of

multiple *plaintiffs'* habeas claims shared logical relationship because all arose from same government agency policy or conditions of confinement at the same "San Francisco field office"); *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333-34 (8th Cir. 1974) (joinder of multiple *plaintiffs'* race discrimination claims against same employer and union shared logical relationship because all arose from the same "company-wide policy" of race discrimination). *Hubbard v. Houghland* found transactional relatedness only because the prison medical staff were alleged to have "ratified or covered up" the other defendants' act of excessive force, providing a direct factual nexus between the defendants' conduct. 2010 WL 1416691, at *3 (E.D. Cal. Apr. 5, 2010). Plaintiffs allege nothing comparable here: no common control, no coordination or concerted effort, and no conspiracy. To the contrary, Plaintiffs allege that Defendants are "competitors" acting independently in an "arms race" to "keep pace" (Opp. 1, 3; Am. Compl. ¶¶ 58, 148), and acknowledge that they cannot allege Defendants "acted in concert" (Opp. 8).

Plaintiffs' characterization that the alleged arms race between Defendants supposedly led to an "industry-wide course of conduct" or "systematic pattern" of copying from piracy sites (Opp. 1, 8) is not enough either. Even where defendants are trying to conform to an "industry standard"—a premise nowhere to be found in Plaintiffs' original or amended allegations—they are engaged in "independent acts," and the material facts will "obviously vary from company to company," requiring severance. *See WiAV Networks*, 2010 WL 3895047, at *3 (severing patent infringement claims against defendants alleged to have infringed by conforming to an industry standard).

While Plaintiffs attempt to distinguish the "BitTorrent" cases cited by Defendants, they provide no explanation or authority for why transactional relatedness should turn on whether the parties are "anonymous individuals" rather than "sophisticated commercial enterprises," whether there is a risk of "extract[ive] settlement" pressure, or the number of defendants. Opp. 13. And while Plaintiffs correctly note that in *Hard Drive Productions* "the defendants acted independently, at different times, without knowledge of each other, and without any coordinated scheme" (Opp. 13), the same is true of Defendants here. Meanwhile, Plaintiffs ignore virtually every other case cited by Google and other Defendants. They simply have no answer to the cases rejecting joinder

of alleged infringers notwithstanding a common source of allegedly infringing material or a common approach to alleged infringement. *See, e.g.*, *Colo. Internet Servs.*, 2014 WL 1007627, at *3; *WiAV Networks*, 2010 WL 3895047, at *3.

In short, Plaintiffs' misjoinder rests, at most, on allegations of "similar misconduct, in separate instances." *Colo. Internet Servs.*, 2014 WL 1007627, at *3. Plaintiffs cite not a single intellectual property case supporting joinder, while Defendants cite many finding joinder improper and ordering severance in analogous circumstances. Because the claims against Google and the other Defendants do not arise from the same transaction or series of transactions, Rule 20 requires that Google be severed. *See id.* at *2.

### B.    Plaintiffs' Claims Against Google and Those Against Other Defendants Lack a Common Question.

Plaintiffs' failure to identify a common transaction or occurrence is alone fatal. But Plaintiffs also fail to identify a second requirement for joinder—a common question or law or fact—which independently requires severance. As Google's motion explained, "each claim of infringement will have to be resolved upon facts which are particular to that single claim," and separate from the claims against other Defendants. Mot. 10 (citing *Blackman v. Teespring, Inc.*, 2019 WL 7832600, at *2 (N.D. Cal. July 12, 2019)). What is more, Google will also have unique defenses by virtue of its expansive catalog of licenses to copyrighted books. *See In re Google Generative AI Copyright Litig.*, No. 5:23-cv-03440-EKL (N.D. Cal. Nov. 20, 2025), ECF No. 282 (Google's Opp. to Class Cert.) at 17 ("Google has tens of thousands of licenses from content providers, book publishers, and authors, plus millions more from every party who uploads content to Google's services"). Where the claims require such "particularized factual analysis," joinder is improper. *See Visendi*, 733 F.3d at 870.

In response, Plaintiffs try to identify several "common questions," none of which is actually common. *See* Opp. 9-10. Some questions Plaintiffs admit are Defendant-specific. *Id.* at 10 (what "each Defendant" knew about the datasets it used; what practices "each Defendant" adopted for acquiring training data). Another question concerns datasets Google is not even alleged to have used. *Compare id.* ("provenance" of "Books3, *The Pile*, and related datasets"), *with* Am. Compl.

¶ 142 (alleging Google used the "C4" dataset). And the rest are vague questions irrelevant to the actual elements of a copyright infringement claim. Opp. 9-10 ("the nature and structure of the piracy ecosystem" and "how shadow libraries share and propagate pirated content").

Plaintiffs also point to supposedly common questions of law around fair use and willfulness, *id.* at 10-11, but these inquiries are not common either. They are inherently fact-intensive and Defendant-specific. Each of the four fair use factors must be evaluated in light of Google's specific use, its particular purpose, its amount, and its market impact. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (fair use calls for "case-by-case analysis"). By definition, the statutory fair use factors all require a work- and use-specific analysis. 17 U.S.C. § 107 (purpose and character of "the" use; nature of "the" work; amount and substantiality of "the" portion used; effect of "the" use on market for "the" work). Indeed, even "market harm," which Plaintiffs highlight as an "important" common question, focuses on "'*the particular actions of the alleged infringer*'" and on whether "'widespread conduct *of the sort engaged in by the defendant*'" would adversely impact the market. Opp. 10-11 (quoting *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1163 (9th Cir. 2022)) (emphasis added); *see also Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417-VC (N.D. Cal. Mar. 25, 2026), ECF No. 700 (Order Granting Leave to File Fourth Am. Compl.) at 5 n.1 ("market harm[] will often be highly fact-dependent, such that training claims would likely be individualized"). Similarly, willfulness asks what Google knew and when it knew it—questions that require evidence specific to Google. The mere fact that fair use and willfulness may be in dispute as to each Defendant does not provide any common question. *See Coughlin*, 130 F.3d at 1351 (affirming order of severance where claims merely arose under "the same general law").

Plaintiffs' failure to show a common question independently requires severance. *See Colo. Internet Servs.*, 2014 WL 1007627, at *2.

## II.    Plaintiffs' Opposition Confirms that Discretionary Severance Is Independently Warranted.

Where, as here, the case does not meet the threshold requirements for joinder, severance is mandatory and not subject to discretion. *See id.* at *2. But even if this case met the threshold

requirements for joinder, the Court still "must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000). As Google has already explained, permitting Plaintiffs to force together a hodgepodge of unrelated Defendants into a single action would be inefficient, unfair, and prejudicial. Mot. 10-12. Google should not be "thrown into a mass pit with others to suit [Plaintiffs'] convenience," *EIT Holdings LLC v. Yelp!, Inc.*, 2011 WL 2192820, at *1 (N.D. Cal. May 12, 2011) (severing defendants alleged to have infringed the same patent)—especially when Plaintiffs have voluntarily agreed to sever their claims against OpenAI, ECF No. 99, which supposedly "set the template for every Defendant in this case," Am. Compl. ¶ 11.

Plaintiffs do not dispute that joining Defendants will require Google to coordinate pleadings, case management, discovery, and trial preparation, which already has yielded needless expense and delay and will generate far more should this many-defendant case progress. *See* Mot. 11. Those coordination costs and delays will be "exponential[]," given the number of Defendants, the complexity and importance of the issues, and the factual and legal differences in the claims. *Sw. Fair Hous. Council v. WG Chandler Villas SH LLC*, 2019 WL 1382500, at *3 (D. Ariz. Mar. 27, 2019). Nor do Plaintiffs dispute that their claims against Google substantially overlap with *In re Google Generative AI Copyright Litigation*, No. 5:23-cv-03440-EKL (N.D. Cal.), nor that severance would allow the claims against Google to be related to that existing litigation, avoiding duplication of years of discovery and motion practice.

Plaintiffs' claim that the competitive-sensitivity concerns raised by Google and other Defendants can be addressed through "routine[]" protective orders and confidentiality designations (Opp. 15) oversimplifies and trivializes the real-world complexities of managing proprietary information among direct competitors in a single proceeding. *See Sw. Fair Hous. Council*, 2019 WL 1382500, at *3 n.4 ("[A]bsent severance, discovery would be needlessly complicated by the fact that … Defendants appear to be competitors who would understandably be reluctant to disclose sensitive, proprietary information to one another."). Far from being routine, this would present an unprecedented and expensive case-management challenge that the Court and

Defendants should not be forced to undertake when severance would avoid it entirely. *See Lam Rsch. Corp. v. Flamm*, 2016 WL 1237831, at \*2 (N.D. Cal. Mar. 30, 2016) (ordering severance of claims against competitors because while protective orders and bifurcation might "reduce the risk that trade secrets would be disclosed to competitors[,] … severance would eliminate the risk of disclosing trade secrets while allowing this matter to go forward in an orderly fashion").

Plaintiffs also mistakenly argue that jury-confusion concerns are "premature at this stage." Opp. 17. Courts routinely consider trial manageability when deciding severance motions at the pleading stage. *See Coleman*, 232 F.3d at 1296 (affirming early severance order resting in part on "the danger of jury confusion"). And while Plaintiffs breezily contend nothing in their case would risk "jury confusion or unfair prejudice," Opp. 15-16, the danger is self-evident: A single jury would be required to understand and separately evaluate the conduct of eight defendants, each with different AI products, different data sources, different timelines, and different defenses—effectively conducting eight separate trials under one caption. Waiting until trial to address structural problems that are apparent now would waste years of litigation effort.

Against this very real prejudice, Plaintiffs mount a half-hearted case based on judicial economy. *See id.* at 11-13. Because Google trained on different datasets than other Defendants and developed different models, there will not be "substantial overlapping discovery." *Id.* at 12. Plaintiffs suggest they would for every Defendant rely on the same expert testimony on certain high-level issues like "AI training," *id.*, but joinder is unnecessary for that. Plaintiffs can achieve efficiencies by using the same experts in multiple separate proceedings without inflicting the substantial costs of misjoinder on Google. Plaintiffs also argue that every Defendant will be a key witness as to the market harm aspect of fair use in every other Defendant's case (*id.* at 2, 12), but tellingly cite no examples of that actually happening in the other AI cases proceeding separately against these Defendants. More generally, Plaintiffs contend they would be prejudiced by the cost of litigating separate lawsuits. *Id.* at 16-17. But that is true in every dispute about misjoinder, and it rings especially hollow here given that Plaintiffs have already opted out of one class proceeding and the Copyright Act provides for both statutory damages and attorneys' fees to a prevailing party. 17 U.S.C. §§ 504-05.

### III.    The Appropriate Remedy for Google's Misjoinder Is Dismissal.

Plaintiffs offer no good reason to depart from the established practice in this District: severance and dismissal without prejudice, permitting plaintiffs to refile separate complaints. *See* Mot. 5; *see also Visendi*, 733 F.3d at 870 (ordering severance and dismissal of "all Plaintiffs but the first named Plaintiff"); *Alvarado v. City of Los Angeles*, 720 F. App'x 889, 904 (9th Cir. 2018) (affirming order that severed and dismissed all but the first named plaintiff).  The logic of this settled approach is straightforward.  Severance and dismissal fully protects plaintiffs' rights because they may refile independent actions as they please.  At the same time, dismissal ensures a clean procedural break, avoiding the complications that arise when the Clerk is directed to clone outdated pleadings.  And it makes especially good sense here because Plaintiffs' Amended Complaint is an impermissible shotgun pleading that lumps together the claims and allegations against a multitude of Defendants (*see Gibson v. City of Portland*, 165 F.4th 1265, 1289 (9th Cir. 2026) (affirming dismissal of shotgun complaint)) and the allegations against other Defendants would be irrelevant and inappropriate in a complaint asserted against Google alone.

In this context, Plaintiffs' request that the Clerk open new dockets and refile the operative pleading would be a wasteful and unwarranted departure from this District's established practice. Opp. 17-18.  The scattered cases Plaintiffs cite for their unusual proposal bear no resemblance at all to the situation here.[2]  Dismissal, and refiling with a complaint tailored to the allegations against Google, is the only fair path forward.

---

[2] In *American Small Business League v. United States Office of Management and Budget*, the court ordered the plaintiff to file "a complaint in the new matter containing its claims against [the severed defendant] only"—a far more reasonable approach than the one Plaintiffs advocate.  2021 WL 4459667, at *4 (N.D. Cal. Apr. 21, 2021).  In *Arteris S.A.S. v. Sonics, Inc.*, the court ordered the severance and re-filing of patent "declaratory judgment counterclaims," not the severance of claims against multiple parties.  2013 WL 3052903, at *8 (N.D. Cal. June 17, 2013).  In *Smith v. Trexler*, the court ordered severance and re-filing of a *pro se* prisoner's § 1983 claims out of concern that the claims against the misjoined defendants would not be "timely in the event Plaintiff were to refile a separate action against them," 2016 WL 925851, at *4 (N.D. Cal. Mar. 11, 2016), but Plaintiffs have not expressed any concern about timeliness here.  *See* Opp. 17-18.  Finally, in *San Francisco Technology, Inc. v. Adobe Sys. Inc.*, the court ordered that the complaint be refiled in new actions, but also ordered that those cases "be stayed, pending a Federal Circuit decision" on a controlling Article III standing issue.  2010 WL 1463571, at *4 (N.D. Cal. Apr. 13, 2010).

Plaintiffs also ask that if the Court orders severance, it also order conditional consolidation of the severed cases under Rule 42(a). *Id.* That request is premature and unsupported. As Plaintiffs acknowledge, other courts in this District are presiding over much earlier, pending cases against Google and other Defendants, and if severance is ordered, those courts should be permitted to "consider whether to deem any of the then-severed cases related to another pending matter." Opp. 17. Only after those courts are given the opportunity to consider relating the severed cases, and only if they are not related, should Plaintiffs' issue of relation and consolidation be taken up— and even then only after a proper motion and full briefing. A request for an advisory opinion of what this Court might do in the future based on hypothetical outcomes, without even a motion or an opposition on the issue, is neither ripe nor appropriate.

## CONCLUSION

For these reasons, the Court should sever and dismiss Plaintiffs' claim against Google without prejudice. If Plaintiffs wish to pursue their claims against Google, they may refile, at which point Judge Lee may decide to relate that case to the matters pending in *In re Google Generative AI Copyright Litigation*, No. 5:23-cv-03440-EKL (N.D. Cal.).

Respectfully submitted,

Dated: March 26, 2026

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  /s/ *Eric P. Tuttle*
Eric P. Tuttle
eric.tuttle@wsgr.com

*Counsel for Defendant Google LLC*