**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Shon Morgan (SBN 187736)
shonmorgan@quinnemanuel.com
Valerie Roddy (SBN 235163)
valerieroddy@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Andrew M. Holmes (SBN 260475)
drewholmes@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant NVIDIA Corporation*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| CAMBRONNE INC., *et al.*, | Case No. 5:25-cv-10897-PCP |
| Plaintiffs, | **NVIDIA'S REPLY IN SUPPORT OF ITS MOTION TO SEVER** |
| v. | Hon. P. Casey Pitts |
| ANTHROPIC PBC, *et al.*, | Courtroom: 8 |
| Defendants. | Date: May 12, 2026 |
| | Time: 10:00 a.m. |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.    SO-CALLED "INDUSTRY-WIDE MISCONDUCT" DOES NOT SATISFY THE "SAME TRANSACTION OR OCCURRENCE" REQUIREMENT................................... 2

II.   THE PREJUDICE TO NVIDIA WARRANTS SEVERANCE AND DISMISSAL ............ 4

III.  PLAINTIFFS' REQUEST FOR NEW CASES WILL UNDULY BURDEN THE COURTS.................................................................................................................. 6

IV.   PLAINTIFFS' REQUEST FOR CONSOLIDATION IS PREMATURE............................ 6

CONCLUSION............................................................................................................. 7

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Chicken Soup for the Soul, LLC v. Anthropic PBC et al.*,
   No. 26-cv-02333-VC, Order Severing Cases, ECF No. 32 (N.D. Cal. Apr. 10,
   2026)...................................................................................................................................1, 2

*Corley v. Google*,
   316 F.R.D. 277 (N.D. Cal. 2016). .................................................................................3

*Doe I v. Boy Scouts of America*,
   No. 1:13-CV-00275-BLW, 2014 WL 345641 (D. Idaho Jan. 30, 2014)...................................5

*In re EMC Corp.*,
   677 F.3d 1351 (Fed. Cir. 2012) .................................................................................3

*Lam Rsch. Corp. v. Flamm*,
   No. 15-CV-01277-BLF, 2016 WL 1237831 (N.D. Cal. Mar. 30, 2016)...................................5

*Mycone Dental Supply Co. v. Creative Nail Design, Inc.*,
   No. C 12-00747 RS, 2012 WL 12899100 (N.D. Cal. May 30, 2012) .......................................3

*Nassau County Association of Insurance Agents, Inc. v. Aetna Life & Casualty Co.*,
   497 F.2d 1151 (2d Cir. 1974) .................................................................................3

*Russo v. Federal Medical Services, Inc.*,
   756 F. Supp. 3d 748 (N.D. Cal. 2024) .................................................................................5

*In re Social Media Adolescent Addiction/Personal Injury Products Liability
   Litigation*,
   637 F. Supp. 3d 1377 (J.P.M.L. 2022)...................................................................................3

**Rules**

FED. R. CIV. P. 20....................................................................................................................3, 4

FED. R. CIV. P. 42.......................................................................................................................6

**Statutes**

28 U.S.C. § 1407.......................................................................................................................3

**PRELIMINARY STATEMENT**

Plaintiffs' opposition (ECF No. 172) does not distinguish Judge Chhabria's recent order severing identical legal claims brought by the same counsel against the same Defendants. It does not identify any common transaction or occurrence linking NVIDIA to the other Defendants. And it does not rebut the substantial prejudice NVIDIA will face if forced to litigate in a multi-defendant case built on an "industry-wide" narrative untethered to NVIDIA's conduct.

Plaintiffs fail to address Judge Chhabria's blunt rebuke in his *sua sponte* order severing claims against the **same Defendants** by a plaintiff represented by the **same counsel** making the **same allegations** of a "piracy ecosystem":

> **It's obvious that the defendants in this case are improperly joined and that each defendant should be part of a separate lawsuit.** Accordingly, it is ordered that the defendants in this case are severed. . . . All [] defendants [other than Meta] are dismissed without prejudice and the plaintiff, if it wishes to pursue claims against those defendants, must file new, separate lawsuits against each of them.

*Chicken Soup for the Soul, LLC v. Anthropic PBC et al.*, No. 26-cv-02333-VC, Order Severing Cases, ECF No. 32 at 1 (N.D. Cal. Apr. 10, 2026) (emphasis added). Plaintiffs make no attempt to distinguish Judge Chhabria's order in *Chicken Soup*, nor can they: Plaintiffs concede the allegations in *Chicken Soup* "involve the same Defendants, nearly identical factual allegations, and an identical legal claim" as this case. *Id.*, ECF No. 1 at 1, n.1.

Indeed, on the same day they opposed NVIDIA's motion to sever, Plaintiffs stipulated to sever their claims against Meta in this case (as they did with OpenAI) so Judge Chhabria may relate their claim against Meta to other pending AI copyright lawsuits against Meta pending before him. ECF No. 171. The same result should follow here: the Court should sever and dismiss Plaintiffs' claim against NVIDIA so that, if re-filed, Judge Tigar can determine whether it should be related to *Nazemian*.

Plaintiffs also ignore that joinder is improper because NVIDIA develops training frameworks and foundational models that serve an entirely different end-use than the consumer-

facing products of the other Defendants, like Claude (Anthropic), Gemini (Google), or Grok (xAI). Plaintiffs do not allege that NVIDIA operates consumer-facing AI products, interacts with end users, or deploys models in the manner attributed to other defendants. That lack of overlap underscores the absence of any common transaction or occurrence.

Further, Plaintiffs confirm that NVIDIA will suffer prejudice absent severance. For example, to defend their "industry-wide misconduct" theory, Plaintiffs rely on alleged off-record remarks made by a *former* Google executive, even though the quoted remarks do not mention NVIDIA or Apple. Plaintiffs' reliance on these inflammatory quotes as somehow relevant to NVIDIA is a telling preview of the unfair cross-contamination the Court can expect in discovery and at trial absent severance.

Finally, Plaintiffs ask that, if the Court severs their claims, it open new cases rather than dismiss them, and rule on consolidation before the relevant facts are known. Both requests are improper: the first would burden the new cases with outdated, overbroad, and confusing complaints, and the second is premature. Therefore, the Court should sever and dismiss Plaintiffs' claim against NVIDIA without prejudice.[1]

**ARGUMENT**

**I.     SO-CALLED "INDUSTRY-WIDE MISCONDUCT" DOES NOT SATISFY THE "SAME TRANSACTION OR OCCURRENCE" REQUIREMENT**

Before Plaintiffs filed their opposition, Judge Chhabria severed and dismissed identical claims brought by the same counsel against identical defendants, concluding it was "obvious" the defendants were improperly joined. *Chicken Soup*, ECF No. 32 at 1. Plaintiffs merely cite the Order in a footnote; they do not discuss it, let alone attempt to distinguish it from this case (nor could they). Opp'n at 5, n.1. Indeed, Plaintiffs do not even contend the Order in *Chicken Soup* was wrong.

---

[1] Plaintiffs repeat many of the same arguments and cite many of the same authorities from their opposition to the original Defendants' motions to sever. Accordingly, NVIDIA focuses on Plaintiffs' new arguments and authorities and incorporates by reference the original Defendants' reply briefs in support of their motions to sever. *See* ECF Nos. 143-146.

Plaintiffs' silence on this point concedes this Court is well within its discretion to order severance and dismissal, just as Judge Chhabria did in *Chicken Soup.*

Judge Chhabria's Order also exposes as untrue Plaintiffs' statement—made after the Order issued—that no "case [is] perfectly on point with this situation[.]" Opp'n at 10-11. *Chicken Soup* is precisely that "case perfectly on point" because the same plaintiffs' counsel asserted identical claims against identical Defendants based on the same alleged "brazen acts of copyright infringement drawing from an ecosystem of piracy repositories as part of an industry-wide course of conduct," *id.*—and the court severed and dismissed the claims. This Court should do the same.

Instead of addressing *Chicken Soup*, Plaintiffs pivot to an MDL decision—*In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, 637 F. Supp. 3d 1377 (J.P.M.L. 2022)—to support their "industry-wide misconduct" theory. Opp'n at 5–6, 11. That reliance is misplaced. Of course, the procedural posture is not comparable: MDL centralization under 28 U.S.C. § 1407 is a distinct inquiry from joinder under Rule 20.

Plaintiffs also fail to distinguish NVIDIA's authorities. For example, Plaintiffs deny that evidentiary overlap is required under *Mycone Dental Supply Co. v. Creative Nail Design, Inc.*, No. C 12-00747 RS, 2012 WL 12899100, at *2 (N.D. Cal. May 30, 2012). Opp'n at 8-9. But *Mycone* confirmed that proper joinder requires that infringement allegations "***must share an aggregate of operative facts***.'" 2012 WL 12899100, at *2 (quoting *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012)) (some emphasis added). No such overlap can plausibly be alleged here.

Plaintiffs likewise fail to distinguish *Corley v. Google*, which held that individualized inquiries preclude Rule 20 joinder even when claims arise from a single suite of products. 316 F.R.D. 277, 283 (N.D. Cal. 2016). In other words, *Corley* underscores that Plaintiffs' reliance on an abstract "market" for training data is insufficient; generalized market participation does not establish a common transaction or occurrence. If joinder was improper in *Corley*—where claims arose from a single suite of products—it is even less appropriate here, where Plaintiffs challenge distinct technologies, datasets, and alleged conduct across multiple defendants. To be sure, courts routinely reject similar attempts to aggregate independent conduct from several defendants that allegedly participate in the same abstract "market." In *Nassau County Association of Insurance*

*Agents, Inc. v. Aetna Life & Casualty Co.*, for example, the court dismissed a complaint against 164 insurers, holding that it was a "gross abuse of procedure" to aggregate independent conduct based on allegations of common industry practices or generalized market participation.  497 F.2d 1151, 1154 (2d Cir. 1974).  Just as the claims in *Nassau* turned on insurer-specific practices, the claims here turn on defendant-specific inquiries: what materials each used, how they were used, and which unique defenses apply.

Finally, Plaintiffs make no effort to distinguish the numerous BitTorrent copyright cases rejecting an "industry-wide misconduct" theory, even where defendants participated in the same BitTorrent "swarm" involving the same copyrighted work.  *See* Mot. at 4-5.  Joinder is even less appropriate here, where there is no allegation that NVIDIA was involved in any concerted action.  In a footnote, Plaintiffs argue only that concerted action is not required under Rule 20.  Opp'n at 11, n.3.  NVIDIA's point is not that concerted action is required under Rule 20, but that viable allegations of concerted action make it at least more likely that there will be common factual issues linking the defendants.  Here, there are none.

## II.    THE PREJUDICE TO NVIDIA WARRANTS SEVERANCE AND DISMISSAL

Even if Plaintiffs could satisfy the requirements of Rule 20, the practical burdens and prejudice on Defendants resulting from joinder warrant severance as a matter of fairness.  Plaintiffs' own arguments illustrate the prejudice.

*First*, Plaintiffs' reliance on post-employment remarks of a *former* Google executive to support their "industry-wide misconduct" theory, Opp'n at 7, underscores the prejudice NVIDIA will suffer as a result of improper joinder.  The quoted remarks say *nothing* about a "common industry practice," let alone about NVIDIA.  Plaintiffs' use of these inflammatory quotes confirms Plaintiffs intend to paint all Defendants with a single indiscriminate brush to obfuscate the individualized nature of their claims and the separate burdens of proof against each Defendant.

*Second*, Plaintiffs do not dispute that industry-wide joinder will require NVIDIA to coordinate pleadings, case management, discovery, and trial preparation with other Defendants, even if their interests are not aligned, given their different industry positioning.  Nor do Plaintiffs deny that ongoing cases in this District have demonstrated the complexity of single-defendant AI

copyright actions, as allegations and proof must be tailored to specific families, models, and datasets. *See* Mot. at 12 (collecting cases). Plaintiffs do not explain why they should be able to multiply that complexity many times over in a single case before this Court.

*Third*, Plaintiffs misconstrue NVIDIA's confidentiality concerns, arguing NVIDIA will have to provide discovery to Plaintiffs either in this case or another if severance is granted. Opp'n at 12. But this argument misses the point: in a multi-defendant case, NVIDIA would be required to produce sensitive materials not just to Plaintiffs, but to other industry participants. By contrast, a single-defendant suit alleviates concerns that protective order breaches (even if inadvertent) will give the other Defendants' internal decisionmakers or product developers access to NVIDIA's highly confidential information. Thus, although *Lam Research* recognized a protective order "could reduce the risk that trade secrets would be disclosed," it also correctly found that "severance would eliminate the risk." *Lam Rsch. Corp. v. Flamm*, No. 15-CV-01277-BLF, 2016 WL 1237831, at *2 (N.D. Cal. Mar. 30, 2016). Here too, as a matter of "fundamental fairness," *id.*, NVIDIA should not be required to rely on a protective order to safeguard its proprietary information from other industry participants simply because Plaintiffs prefer to pursue unrelated claims in a single case.

Finally, Plaintiffs contend that prejudice to NVIDIA from jury confusion at trial can be mitigated by severance after pretrial proceedings. But prejudice is not limited to trial. It permeates discovery, motion practice, and case management, where NVIDIA would be forced to coordinate with, and provide information to, multiple Defendants with differing interests and defenses. None of Plaintiffs' cited authorities require courts to take a wait-and-see approach regarding severance. *See, e.g.*, *Russo v. Federal Medical Services, Inc.*, 756 F. Supp. 3d 748, 754 (N.D. Cal. 2024) (noting court's discretion to sever before trial); *Doe I v. Boy Scouts of America*, No. 1:13-CV-00275-BLW, 2014 WL 345641, at *1 (D. Idaho Jan. 30, 2014) (same).

Because NVIDIA is likely to suffer considerable prejudice from joinder and little or no prejudice will befall Plaintiffs from severance (and, indeed, Plaintiffs have already stipulated to severance as to two other Defendants), the Court should sever and dismiss the claim against NVIDIA.

## III.   PLAINTIFFS' REQUEST FOR NEW CASES WILL UNDULY BURDEN THE COURTS

Plaintiffs urge the Court to order the opening of new cases rather than dismiss their claims against any severed Defendants. Opp'n at 14. The Court should decline this request as to NVIDIA. By ordering the opening of new cases, the Court would effectively burden those cases—whether they stay with this Court or are related to earlier cases before other judges—with unwieldy complaints bloated with allegations about *other* Defendants' conduct. Initial pleading motions will be complicated as Defendants struggle to determine which allegations Plaintiffs contend are still relevant and operative. Dismissal ensures that any new action is properly framed from the outset as a single-defendant case, rather than requiring Defendants and the presiding Court(s) to untangle a complaint drafted around multi-defendant theories.[2]

Further, nothing has happened in this case with respect to NVIDIA—other than the filing of the Amended Complaint and its motion to sever—and no efficiency will be gained by carrying over the Amended Complaint as pleaded to a new case.

## IV.   PLAINTIFFS' REQUEST FOR CONSOLIDATION IS PREMATURE

Plaintiffs also ask the Court to consolidate all severed cases that are not deemed related to a separate matter pending before another court in this District. Plaintiffs' request puts the cart before the horse in several respects. *First*, if the Court dismisses their claims, Plaintiffs would need to relate the newly filed cases to each other in front of the same judge before they could seek consolidation under Rule 42. And, depending on how the new cases are assigned, this Court might not be in charge of deciding consolidation.

*Second*, regardless of whether Plaintiffs' claims against NVIDIA are dismissed and refiled or severed into separate actions, there is at least a possibility that Judge Tigar would relate Plaintiffs'

---

[2]  In stipulating to the severance of OpenAI and Meta, Plaintiffs agreed that "if necessary and directed by the Court," they would file a new complaint restating the severed claim. *See* ECF Nos. 98 at 3, 171 at 3. Although NVIDIA maintains the simpler solution is dismissal (as Judge Chhabria ordered in *Chicken Soup*), to the extent the Court is inclined to sever Plaintiffs' claim against NVIDIA into a new case, NVIDIA respectfully requests that the Court also impose the requirement of a new complaint limited only to Plaintiffs' purported claim against NVIDIA.

new case against NVIDIA to *Nazemian*, an AI copyright litigation pending before him. That is exactly what Judge Chhabria did with *Chicken Soup* and *Kadrey*. Plaintiffs contend this outcome is unlikely, citing a remark by Judge Martinez-Olguin in *Bartz*. Opp'n at 14. But *Bartz* (where final settlement approval is pending) is in a considerably different procedural posture than *Nazemian* (where plaintiffs recently amended their complaint and discovery is ongoing). Judge Martinez-Olguin's remark is at most indicative of what Judge Martinez-Olguin will do as to Plaintiffs' new case against Anthropic; it is not predictive of what Judge Tigar will do on different facts as to a new case against NVIDIA.

Finally, even if Plaintiffs' new case against NVIDIA is not deemed related to *Nazemian*, it is premature for the Court to decide consolidation, when it is unknown which cases would even be at issue. Consolidation should be decided only when it becomes ripe, and after the parties are given a full opportunity to brief that issue on a noticed motion.

## **CONCLUSION**

For all the foregoing reasons, the Court should sever and dismiss Plaintiffs' improperly joined claim against NVIDIA.

Respectfully Submitted,

Dated:  April 28, 2026          **QUINN EMANUEL URQUHART &
SULLIVAN, LLP**


By: */s/ Valerie Roddy*
Valerie Roddy

Shon Morgan (SBN 187736)
shonmorgan@quinnemanuel.com
Valerie Roddy (SBN 235163)
valerieroddy@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Andrew M. Holmes (SBN 260475)
drewholmes@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

*Attorneys for Defendant NVIDIA Corporation*