**WHITE & CASE LLP**
YAR R. CHAIKOVSKY (CA 175421)
yar.chaikovsky@whitecase.com
ANDY LEGOLVAN (CA 292520)
andy.legolvan@whitecase.com
AMIR JABBARI (CA 339097)
amir.jabbari@whitecase.com
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

ANNA B. NAYDONOV (*pro hac vice*)
anna.naydonov@whitecase.com
MARK DAVIES (*pro hac vice*)
mark.davies@whitecase.com
701 13th St NW # 600
Washington, DC 2005-3807
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

Attorneys for
Defendant Anthropic PBC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMBRONNE INC., LISA BARRETTA, MATTHEW SACKS, and MICHAEL KOCHIN,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC<br><br>Defendant. | Case No. 5:25-cv-10897-PCP<br><br>**DEFENDANT ANTHROPIC PBC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Judge: Hon. P. Casey Pitts |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on Thursday, December 10, 2026 at 10:00 a.m., or as soon thereafter as counsel may be heard before District Judge P. Casey Pitts at the San Jose Courthouse, 280 South First Street, San Jose, CA 95113, Defendant Anthropic PBC will, and hereby does, move the Court to dismiss the Second Amended Complaint in part.

This Motion is brought under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the following grounds:

1. Count II (contributory infringement) fails to state a claim.

2. Count III (removal of copyright management information) fails for lack of Article III standing and fails to state a claim under 17 U.S.C. § 1202(b)(1).

3. All counts are barred by the Copyright Act's three-year statute of limitations.

4. Plaintiffs Kochin and Barretta lack standing to sue on *Five Chapters on Rhetoric and Conscious Ink*, or alternatively, Pennsylvania State University, Career Press, Inc., and Michael Taylor are necessary parties and Plaintiffs must comply with Rule 19(c).

5. Statutory damages and attorneys' fees are unavailable for *An Independent Empire* under 17 U.S.C. § 412.

6. Plaintiffs' assertion of non-exhaustive, unidentified copyrights is improper.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Andy LeGolvan and its exhibits filed herewith, the records, files, and pleadings in this case, and all other matters and evidence the Court deems proper.

Dated: July 30, 2026

WHITE & CASE LLP

By:  */s/ Yar R. Chaikovsky*

Yar R. Chaikovsky
Anna B. Naydonov
Mark Davies
Andy LeGolvan
Amir Jabbari
*Attorneys for Defendant Anthropic PBC*

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.    INTRODUCTION ..................................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................................... 2

III.  LEGAL STANDARD ................................................................................................ 3

IV.   ARGUMENT ............................................................................................................. 4

    A.   Contributory Infringement Claim Fails Under *Cox* .................................... 4

        1.   Plaintiffs plead no act of third-party infringement ........................ 4

        2.   Plaintiffs plead no intent to facilitate infringement ....................... 5

    B.   Count III Fails for Lack of Standing and Fails to State a Claim Under
Section 1202(b)(1) ..................................................................................... 7

        1.   Plaintiffs allege no concrete injury ............................................... 7

        2.   Plaintiffs failed to plausibly allege that Anthropic removed CMI
from their works ............................................................................ 9

        3.   Plaintiffs do not plead the second scienter element ..................... 10

    C.   The Claims Are Time-Barred under the Copyright Act's Three-Year
Limitations Period ..................................................................................... 11

    D.   Barretta and Kochin Improperly Assert Third-Party Rights ....................... 14

        1.   Barretta and Kochin lack standing ............................................... 14

        2.   Alternatively, Penn State, Career Press, and Taylor are necessary
parties, and Plaintiffs must comply with Rule 19(c) .................... 16

    E.   Section 412 Bars Statutory Damages and Fees for *An Independent Empire* ......... 17

    F.   Plaintiffs' Claims Should Be Limited to Works Identified in Exhibit A ............... 18

V.    CONCLUSION ........................................................................................................ 18

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Andersen v. Stability AI Ltd.*,
　700 F. Supp. 3d 853 (N.D. Cal. 2023) ...................................................................................9

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ...................................................................................................... passim

*Bartz v. Anthropic PBC*,
　787 F. Supp. 3d 1007 (N.D. Cal. 2025) ...........................................................................3, 12

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ......................................................................................................3, 4, 5

*Bibbs v. Amazon.com, Inc.*,
　No. 24-cv-739, 2024 WL 4744035 (C.D. Cal. Aug. 22, 2024) ........................................18

*Bickoff v. Wells Fargo Bank, N.A.*,
　No. 11-cv-2452, 2012 WL 3637381 (S.D. Cal. Aug. 20, 2012) .......................................17

*Ciero v. Walt Disney Co.*,
　No. 17-cv-8544, 2018 WL 11352373 (C.D. Cal. May 21, 2018) ...................................12, 14

*Cobbler Nev., LLC v. Gonzales*,
　901 F.3d 1142 (9th Cir. 2018) .............................................................................................5

*Columbia Pictures Indus., Inc. v. Fung*,
　710 F.3d 1020 (9th Cir. 2013) .............................................................................................6

*Concord Music Grp., Inc. v. Anthropic PBC*,
　No. 24-cv-03811-EKL, 2025 WL 1487988 (N.D. Cal. Mar. 26, 2025) ..........................4, 10

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
　146 S. Ct. 959 (2026) ..................................................................................................1, 4, 6

*CP Nat'l Corp. v. Bonneville Power Admin.*,
　928 F.2d 905 (9th Cir. 1991) .............................................................................................16

*David v. George Chiala Farms, Inc.*,
　809 F. Supp. 3d 954 (N.D. Cal. 2025) ..............................................................................18

*Entrepreneur Media, LLC v. Meta Platforms, Inc.*,
　No. 25-cv-9579-VC, 2026 WL 898253 (N.D. Cal. Mar. 30, 2026) ...................................5

*Goatpix, LLC v. Upper Deck Co.*,
　No. 21-cv-1815, 2022 WL 2820738 (S.D. Cal. July 19, 2022) .........................................18

*Hall v. YouTube, LLC*,
No. 24-cv-4071-WHO, 2025 WL 1482007 (N.D. Cal. May 5, 2025) ...................................4, 15

*Hinton v. Pac. Enters.*,
5 F.3d 391 (9th Cir. 1993) ........................................................................................................13

*ImprimisRx, LLC v. OSRX, Inc.*,
No. 21-cv-1305, 2023 WL 2919318 (S.D. Cal. Apr. 12, 2023) .................................................15

*In re Napster, Inc. Copy. Litig.*,
No. 04-cv-3004-MHP, 2005 WL 289977 (N.D. Cal. Feb. 3, 2005) ...........................................14

*Johnson Controls, Inc. v. Phx. Control Sys.*,
886 F.2d 1173 (9th Cir. 1989) ..................................................................................................15

*Jordan-Benel v. Universal City Studios, Inc.*,
No. 14-cv-5577, 2015 WL 3888149 (C.D. Cal. June 24, 2015) ...............................................18

*Kadrey v. Meta Platforms, Inc.*,
No. 23-cv-3417-VC, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025) ........................................8, 11

*Lackey v. Sheppard*,
No. 22-cv-5653, 2022 WL 19241141 (C.D. Cal. Dec. 16, 2022) .............................................15

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ...................................................................................................................8

*Lynwood Invs. Cy Ltd. v. Konovalov*,
No. 20-cv-3778-LHK, 2021 WL 1164838 (N.D. Cal. Mar. 25, 2021) ......................................13

*Media Rights Techs., Inc. v. Microsoft Corp.*,
922 F.3d 1014 (9th Cir. 2019) ..................................................................................................11

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) ...................................................................................................................5

*Michael Grecco Prods., Inc. v. BDG Media Inc.*,
No. 19-cv-4716, 2019 WL 13128605 (C.D. Cal. Nov. 21, 2019) .............................................14

*Mosher v. Veyda*,
No. 22-cv-9632, 2024 WL 4932621 (S.D.N.Y. Dec. 2, 2024) .................................................15

*Nazemian v. NVIDIA Corp.*,
No. 24-cv-1454-JST, 2026 WL 1229583, at *6 (N.D. Cal. May 5, 2026) .................................7

*New York Times Co. v. Microsoft Corp.*,
777 F. Supp. 3d 283, 313 (S.D.N.Y. 2025) ................................................................................9

*Petrella v. MGM*,
572 U.S. 663 (2014) ............................................................................................................11, 13

- iv -

*Pirtle v. FCA US, LLC,*
  No. 25-cv-3257, 2025 WL 4058236 (C.D. Cal. Dec. 8, 2025)...................................................13

*Premier Tracks, LLC v. Fox Broad. Co.,*
  No. 12-cv-1615, 2012 WL 13012714 (C.D. Cal. Dec. 18, 2012)............................................18

*Raw Story Media, Inc. v. OpenAI, Inc.,*
  756 F. Supp. 3d 1, 5–6 (S.D.N.Y. 2024).................................................................................8

*Rutledge v. Bos. Woven Hose & Rubber Co.,*
  576 F.2d 248 (9th Cir. 1978).................................................................................................13

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC,*
  733 F.3d 1251 (9th Cir. 2013)...............................................................................................12

*Shropshire v. Canning,*
  No. 10-cv-1941-LHK, 2011 WL 90136 (N.D. Cal. Jan. 11, 2011) .........................................16

*Starz Ent., LLC v. MGM Domestic TV Distribution, LLC,*
  39 F.4th 1236 (9th Cir. 2022) ...............................................................................................13

*Stevens v. Corelogic, Inc.,*
  899 F.3d 666 (9th Cir. 2018)..................................................................................................10

*Strike 3 Holdings, LLC v. Meta Planforms, Inc.,*
  No. 25-cv-6213-EKL, 2026 WL 1697633 (N.D. Cal. June 11, 2026)..................................5, 7

*Taylor v. Universal Music Corp., Inc.,*
  No. 13-cv-6412, 2014 WL 12607685 (C.D. Cal. Mar. 10, 2014)...........................................16

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
  551 U.S. 308 (2007)................................................................................................................4

*The Intercept Media, Inc. v. OpenAI, Inc.,*
  767 F. Supp. 3d 18 (S.D.N.Y. 2025)......................................................................................11

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021)............................................................................................................7, 8

*Tremblay v. OpenAI, Inc.,*
  716 F. Supp. 3d 772 (N.D. Cal. 2024) ..............................................................................10, 11

*Trinh v. Wells Fargo & Co.,*
  No. 16-cv-2985, 2017 WL 5548777 (S.D. Cal. Nov. 16, 2017)..............................................17

*U.S. v. Ritchie,*
  342 F.3d 903 (9th Cir. 2003)...................................................................................................4

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003)................................................................................................13

*Warner Chappell Music, Inc. v. Nealy*,
   601 U.S. 366 (2024) ..................................................................................................13

*White v. Marshall*,
   No. 07-cv-892, 2009 WL 230096 (E.D. Wis. Jan. 30, 2009) ....................................16

*Wilkins-Jones v. Cnty. of Alameda*,
   No. 08-cv-1485-EMC, 2012 WL 3116025 (N.D. Cal. July 31, 2012)........................12

*Williams v. Aserraderos Arauco, SA*,
   No. 12-cv-4912-WHO, 2015 WL 2228794 (N.D. Cal. May 12, 2015) ......................12

*Willis v. Elec. Arts, Inc.*,
   No. 08-cv-1311, 2009 WL 10710038 (D. Nev. Sept. 23, 2009)................................17

**FEDERAL STATUTES**

17 U.S.C. § 410(c) ............................................................................................................15

17 U.S.C. § 411(a) ............................................................................................................15

17 U.S.C. § 412(2) ........................................................................................................2, 18

17 U.S.C. § 501(b) .................................................................................................14, 16, 17

17 U.S.C. § 507(b) ............................................................................................................11

17 U.S.C. § 1202(b) ........................................................................................................9, 10

17 U.S.C. § 1202(b)(1)............................................................................................... passim

17 U.S.C. § 1202(c) .............................................................................................................9

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6)....................................................................................................18

Fed. R. Civ. P. 19 ............................................................................................................14

Fed. R. Civ. P. 19(a).......................................................................................................16

Fed. R. Civ. P. 19(a)(1)...................................................................................................16

Fed. R. Civ. P. 19(a)(2), (b) ..........................................................................................17

Fed. R. Civ. P. 19(c)................................................................................................ passim

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      INTRODUCTION**

Plaintiffs[1] are authors who claim Anthropic infringed their copyrights by using their books to train large language models ("LLMs"). They have not alleged, nor can they, that any Claude model's output reproduces their books. Rather, they claim that Anthropic's LLM training process itself infringed their copyrights.

Plaintiffs allege they opted out of the *Bartz v. Anthropic* class settlement, which, now finally approved, will compensate rightsholders roughly $3,000 per book Anthropic downloaded—several thousand dollars more than the cost of buying a copy. That was not enough, Plaintiffs say. They instead want the maximum statutory award of $150,000 per work, plus recovery of attorneys' fees and costs.

Plaintiffs' original Complaint brought only a claim for direct infringement. The Second Amended Complaint ("SAC") adds two new theories: contributory infringement and removal of copyright management information ("CMI"). SAC ¶¶ 59, 62, 66, 68, 72. All three counts fail.

***First***, the contributory infringement claim fails because Plaintiffs do not adequately plead any of its elements. Their theory is that Anthropic, while torrenting books to train its models, uploaded pieces of their works to other users who then infringed. But they identify no direct infringer who ever received any piece of any of their works from Anthropic. They claim only that torrenting protocols are "often configured by default" to reupload data. SAC ¶ 59. Nor does the SAC suggest that Anthropic "intended that the provided service be used for infringement," as the law requires. *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 967 (2026).

***Second***, the CMI removal claim fails for three reasons. First, the only removal alleged would have taken place within Anthropic's internal training pipeline, and Plaintiffs allege no CMI-stripped copy of their works reached anyone. Second, they do not plausibly allege that Anthropic removed any CMI at all; they allege CMI was already stripped from works in the datasets Anthropic acquired. SAC ¶ 71. Third, they plead neither scienter element: their intent allegation is aimed at

---

[1] Plaintiff Philip Shishkin has resolved his claims against Anthropic, and his claims were dismissed with prejudice on July 28, 2026. ECF No. 210. This Motion accordingly addresses the claims of the four remaining Plaintiffs.

training-data quality, not infringement, and they identify no model output containing their works from which any intent to conceal could be inferred. Plaintiffs not only fail to state a claim under the statute, they allege no dissemination of any CMI-stripped copy, and so fail to allege even a cognizable Article III injury. SAC ¶¶ 70–72.

*Third*, the Copyright Act's three-year limitations period bars all three counts. Every act the SAC challenges is dated 2021 or 2022, and Plaintiffs did not file until December 22, 2025. SAC ¶¶ 59, 62, 66, 68, 72. They plead no facts supporting tolling or delayed accrual sufficient to avoid dismissal on statute-of-limitations grounds, as was their pleading burden.

*Fourth*, Kochin and Barretta each sue on copyrights that public records show belong to other parties. But only the legal or beneficial owner of an exclusive right may sue for its infringement. The registration for *Five Chapters on Rhetoric* lists Pennsylvania State University as the claimant, and Penn State has confirmed its ownership and declined to join this case. Declaration of Andy LeGolvan ("LeGolvan Decl."), Exs. A, H. The registration for Barretta's *Conscious Ink* likewise lists Career Press, Inc. as the claimant, with an explicit transfer to Career Press "by written agreement." *Id.*, Ex. E. Kochin and Barretta must therefore establish their standing, join the registered owners, or comply with Rule 19(c) requiring justifiable explanation for the absence of necessary parties. Neither has even attempted to do so in the SAC.

*Fifth*, Kochin's *An Independent Empire* was not registered until July 2023, years after the alleged copying. Therefore, his claim for statutory damages and fees is barred under 17 U.S.C. § 412(2), which permits statutory damages and fees only for works registered before commencement of allegations of infringement.

*Sixth*, Plaintiffs again assert a "non-exhaustive" list of unidentified copyrights, the kind of placeholder claim courts routinely dismiss. SAC ¶ 18.

## II.    FACTUAL BACKGROUND

This is Plaintiffs' third complaint. The original complaint, filed on December 22, 2025 by six individuals against Anthropic and five other AI companies, asserted a single count of direct copyright infringement. ECF No. 1. Anthropic moved to dismiss, identifying, among other defects, copyright registrations that name parties other than the plaintiffs who sued. ECF No. 96. Plaintiffs

responded in the First Amended Complaint by substituting Cambronne, Inc., the registered claimant for *Bad Blood*, as plaintiff in place of its author John Carreyrou, and by adding a second Kochin work, *An Independent Empire*. ECF No. 119. The Court then severed the claims against the other defendants. ECF No. 195. Plaintiffs filed the SAC on June 30, 2026. ECF No. 201. The SAC added a second Barretta work, *Conscious Ink*, and two additional counts by all Plaintiffs: contributory infringement (Count II) and removal of CMI under 17 U.S.C. § 1202(b)(1) (Count III).

As in the prior complaints, several asserted works implicate rights by third parties who are not named plaintiffs. The registration for *Five Chapters on Rhetoric* lists Penn State as the copyright claimant "[b]y written agreement." LeGolvan Decl., Ex. A. Penn State has confirmed in writing that it "is the owner of the copyright" and "declines to participate" in this action. LeGolvan Decl., Ex. J. The registration for *Conscious Ink: The Hidden Meaning of Tattoos* lists Career Press, Inc. as the copyright claimant, with an explicit transfer to Career Press "by written agreement." *Id.*, Ex. E. The registration for *An Independent Empire* lists Kochin and Michael Taylor as co-claimants. *Id.*, Ex. B.

As to the relevant timeline, the SAC pleads specific dates for every act it challenges, and every one of them occurred in 2021 or 2022. Anthropic allegedly downloaded Books3 "in 2021." SAC ¶ 62. An Anthropic co-founder allegedly "torrented approximately five million pirated books from LibGen" in June 2021. *Id.* ¶ 66. "Anthropic repeated the same conduct in 2022 with PiLiMi." *Id.* ¶ 68. The *Bartz* record the SAC quotes throughout places the PiLiMi download "in July 2022." *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1015 (N.D. Cal. 2025). The alleged CMI conduct also dates back at least five years: "In 2021, Mann, Kaplan, and other Anthropic employees compared extraction tools for filtering training data and then used these extraction methods to clean its training data." SAC ¶ 72.

## III.    LEGAL STANDARD

A complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

- 3 -

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Although the Court must accept factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Courts may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Documents that may be so considered include copyright registrations, *Hall v. YouTube, LLC*, No. 24-cv-4071-WHO, 2025 WL 1482007, at \*2 (N.D. Cal. May 5, 2025) ("judicial notice of copyright registrations as public records"), as well as documents referred to in the complaint or forming the basis of a claim. *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). As relevant here, the Court may consider the asserted copyright registrations, as well as the research papers cited in Plaintiffs' SAC. *See* LeGolvan Decl., Exs. A-M.

## IV.    ARGUMENT

### A.    Contributory Infringement Claim Fails Under *Cox*

The SAC speculates that by torrenting books for its own training, Anthropic must have uploaded pieces of Plaintiffs' works to unidentified peers who then *might* have infringed. SAC ¶¶ 59, 96. The claim fails because Plaintiffs plead no act of third-party infringement and no intent by Anthropic to facilitate infringement. *See Cox*, 146 S. Ct. at 967 (a defendant is contributorily liable "only if it intended that the provided service be used for infringement").

#### 1.    Plaintiffs plead no act of third-party infringement

To start, the SAC identifies no direct infringer who received any piece of any allegedly infringed work from Anthropic. This causes Plaintiffs' claim to fail because "the existence of direct infringement is a necessary element of a claim for contributory infringement." *Concord Music Grp., Inc. v. Anthropic PBC*, No. 24-cv-03811-EKL, 2025 WL 1487988, at \*3 (N.D. Cal. Mar. 26, 2025) (dismissing contributory infringement claim).

Nor is a general reference to how torrenting protocols "are often configured" (SAC ¶ 59) sufficient to state the claim. Courts in this district have sustained seeding claims where the complaint alleged that torrenting "necessarily required" the defendant to upload the works, or where

- 4 -

the plaintiffs documented the defendant's actual distribution of their own specific works. *See Entrepreneur Media, LLC v. Meta Platforms, Inc.*, No. 25-cv-9579-VC, 2026 WL 898253, at *1 (N.D. Cal. Mar. 30, 2026); *Strike 3 Holdings, LLC v. Meta Planforms, Inc.*, No. 25-cv-6213-EKL, 2026 WL 1697633, at *1–2 (N.D. Cal. June 11, 2026). For example, in *Entrepreneur Media*, the complaint alleged that the "inherent architecture" of torrenting protocols "require[s] users to simultaneously upload ('seed') content to other users while downloading," and that Meta chose "the default BitTorrent configuration to maximize bandwidth, necessarily seeding substantial portions of the Infringed Works to third parties without authorization." Compl. ¶¶ 62, 64, No. 25-cv-9579-VC (N.D. Cal. Nov. 6, 2025), ECF No. 1. The court denied dismissal because the complaint alleged that torrenting "necessarily required Meta to upload those works onto the torrenting network." *Entrepreneur Media*, 2026 WL 898253, at *1. Or take *Strike 3 Holdings*, where the complaint documented the continuous distribution of the plaintiffs' own films from the defendant's IP addresses. 2026 WL 1697633, at *1–2. Plaintiffs' SAC alleges neither.

Plaintiffs assert that Anthropic "uploaded and distributed, either through 'seeding' and/or 'leeching,'" copyrighted materials, SAC ¶ 96, but the only fact they plead in support is that torrenting protocols generally "are *often* configured *by default* to reupload pieces of the copyrighted files." SAC ¶ 59 (emphasis added). Plaintiffs' own allegations concede that the protocols are not always configured to enable "seeding." The SAC pleads no IP address, no transaction, no log, and no recipient for any allegedly infringed work. Whether Anthropic's client was configured to enable "seeding," if so, whether pieces of these specific seven works were among any uploaded, and whether any third party downloaded them are all left to speculation.

These general allegations fail to "nudge[] [the] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *cf. Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142, 1147–48 (9th Cir. 2018) (a defendant's connection to a peer-to-peer network does not, without more, suffice). The contributory infringement count thus fails on the first element alone.

### 2.   Plaintiffs plead no intent to facilitate infringement

Contributory liability also requires intent to bring about another party's infringement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 936–37 (2005) (liability

- 5 -

lies against those who act with the object of promoting infringement by others). The Supreme Court recently explained that the required intent exists "only if the party induced the infringement or the provided service is tailored to that infringement." *Cox*, 146 S. Ct. at 967. Mere knowledge "that a service will be used to infringe is insufficient." *Id.* at 968. Plaintiffs do not allege Anthropic provided any service that others used to infringe. Their theory is that Anthropic itself, when downloading, made pieces of files available to others on the network. On that theory, Anthropic provided no service to tailor, so the only path to contributory liability is inducement, which requires facts showing Anthropic actively encouraged someone else's infringement. Plaintiffs plead none.

Inducement requires that the defendant "actively encourage[] infringement through specific acts." *Cox*, 146 S. Ct. at 967. The SAC alleges the opposite: that Anthropic downloaded books for its own training. SAC ¶¶ 62, 66, 68. The uploading, as alleged, would be dependent on how third-party software ships by default, not on any intentional act by Anthropic to encourage a third party to infringe. *Id.* ¶ 59. Plaintiffs identify no promotion, marketing, instruction, or communication of any kind between Anthropic and any alleged direct infringer. And if Plaintiffs fault Anthropic for allegedly not disabling default settings, *Cox* foreclosed that theory too: "a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement." 146 S. Ct. at 968 (quoting *Grokster*, 545 U.S. at 939 n.12).

The alternative route to contributory infringement for services "tailored to" infringement—*i.e.*, those "not capable of 'substantial' or 'commercially significant' noninfringing uses"—is also foreclosed. *See Cox*, 146 S. Ct. at 967 (quoting *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)). First and foremost, Anthropic does not provide the service at issue here—the SAC alleges only that Anthropic used BitTorrent (*i.e.*, the service), which is a general-purpose protocol built and distributed by others. The Ninth Circuit has recognized "a great number of non-infringing uses for peer-to-peer networks"; "copyright infringement is in no sense intrinsic to the technology." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1025 (9th Cir. 2013). Thus, on the facts alleged, Plaintiffs cannot plead contributory liability under *Cox*.

Plaintiffs' remaining conclusory assertions do not save them. They assert that "[t]here was no substantial or commercially significant non-infringing use of the copyrighted materials that

- 6 -

Anthropic uploaded and distributed." SAC ¶ 97. As an initial matter, this is a naked legal conclusion the Court should disregard. *Iqbal*, 556 U.S. at 678. And in any event, it misstates the test, which focuses on the service (*i.e.*, BitTorrent), not end uses of the works (*i.e.*, LLM training).

The decisions on contributory claims after *Cox* have turned on whether defendants that built their own tools **dedicated** to infringement: For example, an allegation that the defendant "provid[ed] access to its servers, data centers, IP addresses, computers, networks, [and] accounts" is "insufficient under *Cox Communications*." *Strike 3 Holdings*, 2026 WL 1697633, at *9. The inducement claim in *Strike 3 Holdings* survived only because the plaintiffs plausibly alleged that the defendant "took active steps to encourage torrenting by implementing an algorithm and establishing VPCs" dedicated to that task. *Id.* The contributory claim in *Nazemian v. NVIDIA Corp.* likewise survived only because the defendant built and distributed scripts designed solely to download a pirated dataset. No. 24-cv-1454-JST, 2026 WL 1229583, at *6 (N.D. Cal. May 5, 2026). The SAC alleges no Anthropic-built torrenting tool and no act of any kind directed at another network participant. The Court should dismiss Count II.

### B.      Count III Fails for Lack of Standing and Fails to State a Claim Under Section 1202(b)(1)

Count III fails for three independent reasons. First, Plaintiffs allege no Article III injury. Second, they do not plausibly allege Anthropic removed CMI from any of their works. Third, they plead neither of Section 1202(b)'s two scienter elements. Each defect alone requires dismissal.

#### 1.      Plaintiffs allege no concrete injury

Plaintiffs lack standing because any alleged act of CMI removal by Anthropic happened inside Anthropic's internal training pipeline; they do not allege any model outputs that contained their works and lacked CMI. Removing identifying information from copies a defendant keeps to itself causes no concrete harm and does not confer Article III standing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424–25 (2021) (a concrete injury requires a close relationship to a harm traditionally recognized as a basis for suit). *TransUnion* itself shows why: the Court held that misleading information sitting in an internal credit file, never disseminated to any third party, causes no concrete harm. 594 U.S. at 433–34. Likewise, CMI stripped from copies inside a

- 7 -

nonpublic training corpus stands on the same footing as the file that never leaves the credit bureau: neither reaches any audience, so neither results in any harm the law has traditionally recognized.

*Raw Story Media, Inc. v. OpenAI, Inc.* applied these principles to materially identical allegations. 756 F. Supp. 3d 1, 5–6 (S.D.N.Y. 2024). There, publishers alleged that OpenAI stripped CMI from their articles and trained ChatGPT on the CMI-stripped copies. The court dismissed for lack of standing because there were no adverse effects from the removal itself, no output of their works lacking attribution, and no substantial risk of any. *Id.* The injury those plaintiffs pressed— the uncompensated use of their works to build the model—is a harm Section 1202(b)(1) does not address. *Id.* The same is true here. When CMI is removed from copies that never leave the defendant's servers, no reader encounters the work without its attribution, and every copy available to the public still bears the author's name. Like the *Raw Story* plaintiffs, Plaintiffs identify no market, no credit before any audience, and no control over any disseminated copy that the alleged removal cost them.

Anthropic acknowledges that some courts have treated the removal of CMI as itself a concrete injury. *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-3417-VC, 2025 WL 744032, at *1 (N.D. Cal. Mar. 7, 2025). But even on that view, Count III fails traceability. The injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560– 61 (1992). Plaintiffs do not allege that Anthropic removed the CMI. Instead, they allege the training datasets "contained copyrighted works whose copyright notices, ownership information, and other identifying material had been removed through extraction tools," and that Anthropic "trained Claude on these same stripped datasets." SAC ¶ 71. The only actors the SAC identifies are "future Anthropic personnel" who "used or developed datasets at OpenAI"—before Anthropic even existed. SAC ¶ 71. In the cases finding standing, the defendant did the removing: the *Kadrey* plaintiffs alleged that Meta itself stripped CMI from the copies of their books it downloaded. *See* 2025 WL 744032, at *1. The SAC's remaining vague allegations that Anthropic also "compared extraction tools" for "filtering" and "clean[ing]" training data—not allegations of CMI removal (SAC ¶¶ 70–72)—fail to plead that any CMI-removal injury is fairly traceable to Anthropic's

- 8 -

conduct.

Plaintiffs do not allege model outputs that could supply the necessary traceability. Where a court has found a CMI-removal injury traceable to an AI developer, model outputs did the work: in *New York Times Co. v. Microsoft Corp.*, CMI removal was actionable because it "allows defendants to provide plaintiffs' works directly to end users through regurgitating outputs, while concealing that defendants infringed plaintiffs' copyrights to generate those outputs." 777 F. Supp. 3d 283, 313 (S.D.N.Y. 2025). The SAC identifies no instance in which Claude output any Plaintiff's work—with or without CMI.

### 2. Plaintiffs failed to plausibly allege that Anthropic removed CMI from their works

As a threshold matter, each plaintiff must "identify the exact type of CMI included in" their works. *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 872 (N.D. Cal. 2023). The *Andersen* court dismissed Section 1202(b) claims for that very failure, requiring the artists to identify the particular types of CMI on their own works before proceeding. *Id.* The SAC identifies no CMI contained in any Plaintiff's work and does not allege that any CMI was "conveyed in connection with" the downloaded copies, as the statute requires. 17 U.S.C. § 1202(c).

Nor is the removal element pleaded. Section 1202(b)(1) reaches only one who "intentionally remove[s] or alter[s]" CMI, *see* 17 U.S.C. § 1202(b)(1), and Plaintiffs' own allegations place the removal before Anthropic ever acquired the datasets. SAC ¶ 71. What remains are legal conclusions: that Anthropic "deliberately stripped" the works and "affirmatively chose tools that removed CMI more effectively, including from Plaintiffs' copyrighted materials." SAC ¶¶ 70, 72. Those are "[t]hreadbare recitals" the Court should disregard, *Iqbal*, 556 U.S. at 678, and the "more effectively" phrasing concedes the point: it presupposes that CMI was already removed before any Anthropic tool touched the data.

The only factual sentence—that Mann, Kaplan, and others "compared extraction tools for filtering training data and then used these extraction methods to clean its training data, including the Infringed Works," SAC ¶ 72—names no tool and describes no act that removed CMI from any Plaintiff's work. *Concord Music* dismissed a materially identical claim against Anthropic for that

- 9 -

reason. 2025 WL 1487988, at *6 (allegations that "simply repeat the statutory language without stating any facts" showing intentional removal). The claim proceeded only on amendment, and only on facts the SAC lacks: a tool comparison performed on a scraped webpage bearing a copyright notice, and model output reproducing the plaintiffs' lyrics.

Here, there is no such pleading. The SAC alleges no output of any Plaintiff's work, and it concedes that the CMI was already removed by others before Anthropic used those datasets. SAC ¶ 71. Anthropic could not have intended to remove what Plaintiffs allege was already gone; on the SAC's own terms, the intent element fails.

### 3.    Plaintiffs do not plead the second scienter element

Plaintiffs have not alleged any facts, as they must, to show that Anthropic knew, or had reason to know, that removal "will induce, enable, facilitate, or conceal" infringement. 17 U.S.C. § 1202(b). This mental-state requirement "must have a more specific application than the universal possibility of encouraging infringement; specific allegations as to how identifiable infringements 'will' be affected are necessary." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018). The SAC alleges CMI removal was intentional "to . . . create high-quality LLM training data," not to bring about infringement. SAC ¶ 104. The next paragraph then repeats the statutory elements of the claim—that Anthropic acted "knowing or having reasonable grounds to believe" removal was "enabling, facilitating, and concealing" infringement—without a single supporting fact. SAC ¶ 105. That is the "threadbare recital" *Iqbal* forecloses. 556 U.S. at 678.

Plaintiffs identify no act of infringement that any alleged CMI removal enabled, facilitated, or concealed. Nor do they identify a single instance in which Claude has output any portion of any Plaintiff's work—with or without CMI.

**The enabling theory fails.** Plaintiffs' own allegations explain the need to remove CMI, and it has nothing to do with infringement. The tools were allegedly used "to create high-quality LLM training data" and "to optimize its models' performance." SAC ¶¶ 8, 104. CMI filtered out along with footers, boilerplate, and other noisy data in the course of preparing training data is not removal undertaken with knowledge that it will aid infringement. *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 779 (N.D. Cal. 2024) (dismissing a Section 1202(b)(1) claim premised on removing CMI

- 10 -

from LLM training data). *Kadrey* rejected the same theory: "[T]he fact that removing CMI might make the plaintiffs' books work better as training data does not mean that removing CMI made it easier for Meta to commit copyright infringement." *Kadrey*, 2025 WL 744032, at *1.

**The concealment theory fails.** Plaintiffs allege that removal made it "harder for others to discover the true sources" of Anthropic's training data. SAC ¶ 105. They never explain how omitting CMI from copies in a nonpublic training corpus conceals anything from anyone. *Tremblay*, 716 F. Supp. 3d at 779; *accord The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 30 (S.D.N.Y. 2025) ("difficult to understand how the removal of CMI from articles collected in a non-public database 'conceals' infringement"). The SAC's own allegations confirm the point: it pleads that Anthropic wanted to keep "the composition of its training datasets" private, SAC ¶ 90; removing CMI from a corpus a defendant keeps to itself conceals nothing from anyone. To hold otherwise would erase the second statutory scienter requirement by allowing a plaintiff to satisfy it merely by alleging intentional CMI removal.

The concealment claim that survived in *Kadrey* did so only because the plaintiffs there alleged facts with no counterpart here: that the defendant "knew that Llama was especially 'prone' to memorizing and generating outputs of ***CMI unless CMI was removed from***" its training data. *Kadrey*, 2025 WL 744032, at *2 (emphasis added). The SAC alleges nothing of the kind about Claude. The SAC does not allege that Claude is prone to reproducing CMI or any Plaintiff's work, and the removal it does allege was for training-data quality, not to enable or conceal any output. It pleads no facts that Anthropic removed CMI and none that Claude would output CMI or any Plaintiff's work, much less a work lacking CMI.

### C. The Claims Are Time-Barred under the Copyright Act's Three-Year Limitations Period

The SAC alleges the download, torrenting, and CMI removal took place more than three years before Plaintiffs filed suit, rendering those claims time-barred. 17 U.S.C. § 507(b) (three-year statute of limitations); *Petrella v. MGM*, 572 U.S. 663, 670 (2014) (a claim "'accrue[s]' when an infringing act occurs"); *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1025 (9th Cir. 2019) (a DMCA claim "is subject to the same statute of limitations" as copyright infringement

claims); *see also* ECF No. 195 (Severance Order) at 3 n.3 (observing that some defendants' actions "may fall outside the applicable three-year statute of limitations").

Here, Anthropic allegedly downloaded Books3 in 2021, torrented LibGen in June 2021, and torrented PiLiMi in July 2022. SAC ¶¶ 62, 66, 68; *Bartz*, 787 F. Supp. 3d at 1015. And it allegedly selected and used the CMI-removing extraction tools "[i]n 2021." SAC ¶ 72. Any torrenting-based distribution occurred with the downloads in 2021 and 2022. Yet Plaintiffs did not file this case until December 22, 2025, more than three years after the most recent of these acts, even assuming the newly added contributory infringement and CMI counts relate back to that original filing.[2]

Where, like here, a claim is time-barred "from the face of the complaint" and the plaintiff has not alleged facts supporting tolling or delayed accrual, the Court need not go further and the claim should be dismissed. *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254–58 (9th Cir. 2013); *Ciero v. Walt Disney Co.*, No. 17-cv-8544, 2018 WL 11352373, at *4 (C.D. Cal. May 21, 2018) (dismissing complaint alleging infringement occurred over three years earlier). Because here the limitations expiration is "apparent on the face of the complaint," Plaintiffs had "the burden of alleging facts which would give rise to tolling." *Williams v. Aserraderos Arauco, SA*, No. 12-cv-4912-WHO, 2015 WL 2228794, at *2 (N.D. Cal. May 12, 2015) (quoting *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993)).

But even if Plaintiffs attempt to rely on tolling or delayed accrual arguments, they are unavailing.

**Concealment fails.** Although the SAC vaguely suggests Anthropic "attempted to conceal the composition of its training datasets," these conclusory allegations do not support tolling. SAC ¶ 90. First, Plaintiffs fail to allege the substantive elements for concealment tolling, much less with the required particularity: (1) "affirmative acts of concealment," (2) lack of "actual or constructive knowledge of facts giving rise to [the] claim," and (3) "diligence" in pursuing "the facts giving rise

---

[2] To be clear, Anthropic does not concede relation back. Anthropic assumes it here because the new counts are untimely regardless. In any event, relation back is Plaintiffs' burden. *See Wilkins-Jones v. Cnty. of Alameda*, No. 08-cv-1485-EMC, 2012 WL 3116025, at *12 (N.D. Cal. July 31, 2012) ("Plaintiff has the burden of demonstrating the elements of relation back."). Plaintiffs have not attempted to meet that burden.

- 12 -

to the cause of action." *Lynwood Invs. Cy Ltd. v. Konovalov*, No. 20-cv-3778-LHK, 2021 WL 1164838, at *10–11 (N.D. Cal. Mar. 25, 2021). Plaintiffs allege no affirmative conduct, only a vague allegation that Anthropic "attempted" concealment, without explaining what the attempt was or whether it succeeded. *Rutledge v. Bos. Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) (plaintiffs "cannot rely upon conclusory [concealment allegations] to avoid the bar of limitations," nor can they rely on defendant's "[s]ilence or passive conduct"). Nor do Plaintiffs allege any facts to show they were diligent despite Anthropic's supposed attempted concealment.

Second, concealment-based tolling "must be pled with particularity." *Lynwood*, 2021 WL 1164838, at *10 (citing Fed. R. Civ. P. 9(b)); *Hinton*, 5 F.3d at 395 ("must plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence in trying to uncover the facts"). This requires, at minimum, "the who, what, when, where, and how." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Vague and conclusory allegations of attempted concealment, without elaboration, fall far short. *See Pirtle v. FCA US, LLC*, No. 25-cv-3257, 2025 WL 4058236, at *9 (C.D. Cal. Dec. 8, 2025) (conclusory allegation that car maker "concealed" defects fails).

Third, any notion of concealment is inconsistent with Plaintiffs' own allegations that Anthropic described its training sources to the world in a December 2021 research paper, the same paper to which Plaintiffs' original Complaint traced their entire theory against Anthropic. LeGolvan Decl., Ex. L (the December 2021 paper); ECF No. 1 ¶¶ 50–51. A defendant that publicly discloses the very facts said to be hidden has committed no affirmative act of concealment.

**Discovery rule fails.** Finally, Plaintiffs may invoke the discovery rule. While the Ninth Circuit applies it to copyright claims, *Starz Ent., LLC v. MGM Domestic TV Distribution, LLC*, 39 F.4th 1236, 1246 (9th Cir. 2022), the Supreme Court has twice declined to endorse that approach. *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 368 (2024) (majority only "assume[d] without deciding" discovery rule applies to Copyright Act); *Petrella*, 572 U.S. at 670 n.4. And three Justices recently questioned whether the Copyright Act "has any room for such a rule," noting the Act contemplates accrual "when an infringing act occurs." *Nealy*, 601 U.S. at 375–76 (Gorsuch, J., dissenting). While Anthropic appreciates the Court is bound by Ninth Circuit precedent, Anthropic

- 13 -

respectfully submits that the discovery rule should not apply to claims under the Copyright Act and preserves this issue for appellate review.

But even under the discovery rule, plaintiffs asserting untimely claims must plead delayed discovery affirmatively and explain why their delay was reasonable. *See Michael Grecco Prods., Inc. v. BDG Media Inc.*, No. 19-cv-4716, 2019 WL 13128605, at *4 (C.D. Cal. Nov. 21, 2019) (burden on plaintiff to allege entitlement to discovery rule); *In re Napster, Inc. Copy. Litig.*, No. 04-cv-3004-MHP, 2005 WL 289977, at *3 (N.D. Cal. Feb. 3, 2005) (same); *Ciero*, 2018 WL 11352373, at *4 (same).

Here, Plaintiffs do not even allege when they discovered the infringement, much less why their delay was reasonable. Instead, as to Books3—the first-listed source of each of their books (SAC ¶¶ 19–23)—their own original Complaint confirms that the information underlying their claims was publicly available for over four years via Anthropic's 2021 published whitepaper. *See* ECF No. 1 ¶¶ 50–51 ("Anthropic's own public statements and technical papers confirm that books are central to Claude's capabilities. Anthropic has described a training corpus 'most of which we sourced from The Pile,' an 800-gigabyte dataset assembled for large-language-model training that includes a books subset known as 'Books3.'"); LeGolvan Decl., Ex. L (the 2021 whitepaper); LeGolvan Decl., Ex. M (The Pile's documentation identifying Books3).

### D. Barretta and Kochin Improperly Assert Third-Party Rights

Barretta's and Kochin's ownership allegations are contradicted by their own copyright registrations. That discrepancy has two consequences. First, they lack standing to assert claims for copyright infringement to works they do not own. Their claims should be dismissed on these grounds alone. Second, even if they could plead a non-futile basis for standing in an amended complaint, the legal owners identified in the copyright registrations are necessary parties under Rule 19. Barretta and Kochin must either join them as parties or plead affirmatively why their joinder is not feasible. Because they did neither, all of their claims should be dismissed.

#### 1. Barretta and Kochin lack standing

Standing requires more than a bare assertion of ownership. A plaintiff must allege facts establishing that they are the "legal or beneficial owner" of the works in suit. 17 U.S.C. § 501(b);

- 14 -

*Lackey v. Sheppard*, No. 22-cv-5653, 2022 WL 19241141, at *3 (C.D. Cal. Dec. 16, 2022) (dismissing infringement claim absent facts establishing ownership). Registration is required before a plaintiff may file suit, 17 U.S.C. § 411(a), and "courts may take judicial notice of copyright registrations as public records." *Hall*, 2025 WL 1482007, at *2. Registration certificates constitute "prima facie evidence" of the facts stated therein, including ownership. 17 U.S.C. § 410(c); *Johnson Controls, Inc. v. Phx. Control Sys.*, 886 F.2d 1173, 1175 (9th Cir. 1989) (same). Courts routinely look to registrations to test whether a complaint's ownership allegations hold up. *Lackey*, 2022 WL 19241141, at *3 (consulting registration regarding pleaded ownership claim).

Here, the registration for *Five Chapters on Rhetoric* lists Penn State as the copyright claimant "[b]y written agreement." LeGolvan Decl., Ex. A. After Anthropic raised this defect, Penn State confirmed in writing that it "is the owner of the copyright" for the work and that it "declines to participate" in this action. LeGolvan Decl., Exs. H, J.

The registration for *Conscious Ink* presents the same defect: it lists Career Press, Inc. as the copyright claimant, with a transfer "by written agreement," and lists Barretta as an author only. LeGolvan Decl., Ex. E. The SAC alleges Plaintiffs are "legal or beneficial owners" and appends a blanket disclaimer that Plaintiffs own the copyrights "[e]ven where other individuals or entities are listed as copyright claimants." SAC ¶ 15, ¶ 18 n.5.

A conclusory assertion of ownership—without facts establishing a royalty interest or equitable stake in an exclusive right and without any explanation of the discrepancy with the registrations—does not suffice. *Lackey*, 2022 WL 19241141, at *3 (dismissing complaint where plaintiff alleged conclusory ownership claim but copyright registration listed third party as "claimant"); *Mosher v. Veyda*, No. 22-cv-9632, 2024 WL 4932621, at *7 (S.D.N.Y. Dec. 2, 2024) ("As the attached certificate of registration states that [third party] is the claimant, it must have obtained all rights under the copyright"); *ImprimisRx, LLC v. OSRX, Inc.*, No. 21-cv-1305, 2023 WL 2919318, at *6 (S.D. Cal. Apr. 12, 2023) ("The copyright registration reveals that Harrow IP, LLC, and not Plaintiff, is the owner of the copyright at issue.").

- 15 -

### 2. Alternatively, Penn State, Career Press, and Taylor are necessary parties, and Plaintiffs must comply with Rule 19(c)

Even if Barretta and Kochin could allege non-futile bases for standing, Penn State, Career Press, and Michael Taylor, the registered co-claimant of *An Independent Empire*, are necessary parties under Rule 19(a). Therefore, if these claims proceed, Plaintiffs must either join those parties or explain "the reasons for not joining them." *See* Fed. R. Civ. P. 19(c).

Here, Penn State, Career Press, and Taylor are necessary parties. A party is necessary if disposing of the action in the party's absence would "as a practical matter impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1). The Copyright Act itself provides for notice to and joinder of "any person having or claiming an interest in the copyright." 17 U.S.C. § 501(b). These absent parties meet this test for several reasons.

First, proceeding without them leaves Anthropic exposed to "substantial risk of incurring double, multiple, or otherwise inconsistent obligations" if they sue later in a separate action. *See Shropshire v. Canning*, No. 10-cv-1941-LHK, 2011 WL 90136, at *7 (N.D. Cal. Jan. 11, 2011) ("there is no bar to [absent co-owner] bringing its own copyright infringement claims against Defendant for the same conduct"); *White v. Marshall*, No. 07-cv-892, 2009 WL 230096, at *3 (E.D. Wis. Jan. 30, 2009) (requiring joinder of copyright co-claimant because defendants "may be subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of her claimed interest"). This protects not only Anthropic's interest as the would-be defendant in a duplicative suit "but also that of the public in avoiding repeated lawsuits on the same essential subject matter." *CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991) (quoting Rule 19 advisory committee's note).

Second, because Penn State and Career Press are legal owners "[b]y written agreement[]," proceeding without them potentially prejudices their ownership and commercial rights. *See Shropshire*, 2011 WL 90136, at *7 (copyright co-owner and publisher is "necessary" party because of contractual licensing and revenue rights); *Taylor v. Universal Music Corp., Inc.*, No. 13-cv-6412, 2014 WL 12607685, at *4 (C.D. Cal. Mar. 10, 2014) (joinder of copyright co-owner where "[r]esolution of th[e] [infringement] lawsuit could adversely affect [his] ownership rights"). Indeed,

Plaintiffs' claim of ownership conflicts with the absent parties' prima facie ownership claims, and they are required parties to resolve that conflict. *See Willis v. Elec. Arts, Inc.*, No. 08-cv-1311, 2009 WL 10710038, at *5 (D. Nev. Sept. 23, 2009) ("UNLV's ability to protect its copyright in the fight song will be impaired if [plaintiff's] infringement claim is adjudicated in UNLV's absence").

Moreover, Plaintiffs were required to plead the identity of these parties and "the reasons for not joining" them. Fed. R. Civ. P. 19(c); *see Bickoff v. Wells Fargo Bank, N.A.*, No. 11-cv-2452, 2012 WL 3637381, at *3 (S.D. Cal. Aug. 20, 2012) ("Plaintiff neither named [third party] as a required party nor demonstrated why joinder would not be feasible, as required by Rule 19(c)."). Plaintiffs have made no attempt at Rule 19(c) compliance, in this or any prior complaint. The Court should therefore order compliance with Rule 19(c). *Trinh v. Wells Fargo & Co.*, No. 16-cv-2985, 2017 WL 5548777, at *5 (S.D. Cal. Nov. 16, 2017) (ordering plaintiff to "amend the complaint to include the allegations required by Rule 19(c)"). This threshold step is necessary to determine whether joinder must be ordered, and failing that, whether these claims should proceed at all. *See* Fed. R. Civ. P. 19(a)(2), (b); 17 U.S.C. § 501(b) ("The court may require the joinder . . . of any person having or claiming an interest in the copyright.").

Finally, other interested third parties appear to exist with rights to the asserted works, including publishers listed on the face of the copyright registrations. *See* LeGolvan Decl., Ex. C (*Bad Blood* registration listing William Morris Endeavor Entertainment and Penguin Random House LLC); *Id.*, Ex. D (*Street-Smart Psychic* registration listing Llewellyn Worldwide, Ltd.); *Id.*, Exs. F, G (*Pro Website Development and Operations* registration listing the address of its publisher, Apress). A registration is only a snapshot at the time of registration, and these publishers may be owners by transfer agreements executed afterward or they may be beneficial owners. These interests raise the same questions of standing and joinder, and only Plaintiffs know the full facts. The Court should order Plaintiffs to address them as part of any Rule 19(c) compliance.

### E. Section 412 Bars Statutory Damages and Fees for *An Independent Empire*

No statutory damages or attorneys' fees are available for *An Independent Empire*, which was first published on January 24, 2020 but was not registered until July 25, 2023. LeGolvan Decl., Ex. B. The SAC alleges the copying commenced in 2021 and 2022. SAC ¶¶ 62, 66, 68. No award

- 17 -

of statutory damages or attorneys' fees is available for "any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412(2).

This defect is properly resolved at this stage. Courts treat a Section 412 challenge to a statutory-damages demand as a motion to dismiss under Rule 12(b)(6) and grant it at the pleading stage. *Jordan-Benel v. Universal City Studios, Inc.*, No. 14-cv-5577, 2015 WL 3888149, at *13–15 (C.D. Cal. June 24, 2015) (treating a motion to strike under Section 412 as a Rule 12(b)(6) motion and granting it); *Goatpix, LLC v. Upper Deck Co.*, No. 21-cv-1815, 2022 WL 2820738, at *4–6 (S.D. Cal. July 19, 2022) (dismissing demand for statutory damages and fees where the complaint did not distinguish post-registration from pre-registration conduct). The SAC leaves nothing to defer, because it affirmatively dates all of the copying to 2021 and 2022, before the July 2023 registration and outside the three-month grace period following the January 2020 publication. *Cf. David v. George Chiala Farms, Inc.*, 809 F. Supp. 3d 954, 978–79 (N.D. Cal. 2025) (denying dismissal where the timing of the infringement was disputed). The Court should dismiss the SAC's demand for statutory damages and attorneys' fees as to this work.

**F.    Plaintiffs' Claims Should Be Limited to Works Identified in Exhibit A**

Plaintiffs allege infringement of a "non-exhaustive list" of registered copyrights, and assert "on information and belief" that Anthropic infringed "more works than Plaintiffs have currently identified." SAC ¶ 18. This allegation fails basic pleading requirements. *See Premier Tracks, LLC v. Fox Broad. Co.*, No. 12-cv-1615, 2012 WL 13012714, at *8–9 (C.D. Cal. Dec. 18, 2012) (dismissing claim for copyrights "yet to be identified"); *Bibbs v. Amazon.com, Inc.*, No. 24-cv-739, 2024 WL 4744035, at *4 (C.D. Cal. Aug. 22, 2024) (dismissing claim "to the extent Plaintiff seeks to base the copyright claim on copyrights or works beyond those identified in Exhibit 1").

**V.    CONCLUSION**

The Court should dismiss the CMI and contributory infringement counts in their entirety. The Court should dismiss all counts as untimely; as to *Five Chapters on Rhetoric* and *Conscious Ink*, for lack of standing; and as to all works not identified in Exhibit A. In the alternative to dismissal for lack of standing, the Court should order Plaintiffs to join Pennsylvania State

- 18 -

University, Career Press, Inc., and Michael Taylor, or to state their reasons for nonjoinder as Rule 19(c) requires. Finally, the Court should strike the request for statutory damages and attorneys' fees for *An Independent Empire* under Section 412.

Date: July 30, 2026                    WHITE & CASE LLP

                                       By:  */s/ Yar R. Chaikovsky*

                                       Yar R. Chaikovsky
                                       Anna B. Naydonov
                                       Mark Davies
                                       Andy LeGolvan
                                       Amir Jabbari
                                       *Attorneys for Defendant Anthropic PBC*

- 19 -