**WHITE & CASE LLP**
YAR R. CHAIKOVSKY (CA 175421)
yar.chaikovsky@whitecase.com
ANDY LEGOLVAN (CA 292520)
andy.legolvan@whitecase.com
AMIR JABBARI (CA 339097)
amir.jabbari@whitecase.com
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

MARK DAVIES (*pro hac vice*)
mark.davies@whitecase.com
701 13th St NW # 600
Washington, DC 2005-3807
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

Attorneys for
Defendant Anthropic PBC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

CAMBRONNE INC., ET AL.,

Plaintiffs,

v.

ANTHROPIC PBC,

Defendants,

AND RELATED CASES AGAINST ANTHROPIC.

Case No. 5:25-cv-10897-PCP

Related Cases:

- *Cognella Inc.*, No. 3:26-cv-4056-PCP
- *Chicken Soup for the Soul, LLC*, No. 4:26-cv-4218-PCP
- *Cruz et al.*, No. 3:26-cv-4482-PCP
- *Kwon et al.*, No. 5:26-cv-04649-PCP

**DEFENDANT ANTHROPIC PBC'S CONSOLIDATED MOTION TO DISMISS PLAINTIFFS' COMPLAINTS**

Judge: Hon. P. Casey Pitts

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on Thursday, December 17, 2026 at 10:00 a.m., or as soon thereafter as counsel may be heard before District Judge P. Casey Pitts at the San Jose Courthouse, 280 South First Street, San Jose, CA 95113, Defendant Anthropic PBC will, and hereby does, move the Court to dismiss the operative complaints in the above-captioned related actions.

This Motion is brought under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the following grounds:

1. **All counts** are barred by the Copyright Act's three-year limitations period. Plaintiffs allege Anthropic torrented the works and removed CMI no later than July 2022, more than three years before Plaintiffs filed. They plead no facts supporting tolling or delayed accrual.
2. **Count I** fails to the extent Plaintiffs' claim is based on a "distribution" theory. Plaintiffs fail to allege "actual dissemination" of their works. They also allege no volitional conduct by Anthropic in any upload, and at most the transfer of *de minimis* fragments.
3. **Count I** fails to the extent Plaintiffs' claim is based on Claude "outputs." No complaint identifies a Claude output that reproduces any portion of Plaintiffs' work. Plaintiffs' "indirect substitute" theory alleges competition among works of the same kind, not copying.
4. **Count II** fails to state a claim for contributory infringement. The complaints identify no direct infringer, and Plaintiffs rely only on a generic allegation that torrenting software is "often configured" by default to reupload files. They plead no facts showing Anthropic intended to facilitate a third-party's infringement.
5. **Count III** fails for lack of Article III standing and fails to state a claim. Plaintiffs allege no concrete injury. Plaintiffs identify no Claude output that conveyed a CMI-stripped copy of their works to anyone, and they trace any removal to third parties before Anthropic acquired the datasets. Plaintiffs fail to identify the CMI at issue and do not plausibly allege Anthropic removed CMI. They also plead no facts satisfying the second scienter element.
6. **All counts** for the works identified in Exhibit 7 to the Declaration of Andy LeGolvan ("LeGolvan Decl.") are barred by the final judgment and release in *Bartz v. Anthropic* because they appear on the *Bartz* settlement Works List (LeGolvan Decl., Ex. 6) and their

owners did not opt out of that settlement.

7. **All counts** are barred for the works identified in LeGolvan Decl., Ex. 1 for lack of standing because the copyright registrations identify other parties as claimants. Alternatively, the registered owners, co-owners, and other rightsholders identified in LeGolvan Decl., Exs. 1–3 are necessary parties under Fed. R. Civ. P. 19(a), requiring compliance with Rule 19(c).
8. **All counts** for the works identified in LeGolvan Decl., Ex. 4 are barred because the asserted works were published after July 2022—after Anthropic's alleged 2021 and 2022 downloads. Thus, there is no plausible allegation of copying or CMI removal.
9. The **Counts I and II** requests for statutory damages and attorneys' fees are barred for the works identified in LeGolvan Decl., Ex. 5. These works were registered after the alleged infringement began and outside the three-month grace period following first publication.
10. Each action should be limited to the works identified in its exhibit. Plaintiffs' allegation that Anthropic infringed additional, unidentified works fails to state a claim.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Andy LeGolvan and its exhibits filed herewith, the records, files, and pleadings in these actions, and all other matters and evidence the Court deems proper.

Dated: September 24, 2026

WHITE & CASE LLP

By: /s/ Yar R. Chaikovsky

Yar R. Chaikovsky
Mark Davies
Andy LeGolvan
Amir Jabbari
*Attorneys for Defendant Anthropic PBC*

# TABLE OF CONTENTS


**Page(s)**

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 1

III. ARGUMENT ........ 3

A. Plaintiffs' Claims Are Time-Barred under the Copyright Act's Three-Year Limitations Period ........ 3

B. Count I (Direct Infringement) Fails to Allege a Claim for Distribution or Any Infringement Theory Based on Claude's Outputs ........ 7

1. Plaintiffs' BitTorrent Distribution Theory Fails ........ 7

2. Any Theory Based on Claude Outputs Fails ........ 11

C. Count II (Contributory Infringement) Fails under *Cox v. Sony* and for Failure to Allege Direct Infringement ........ 13

D. Count III (CMI Removal) Fails for Lack of Article III Standing and Fails to Allege CMI Removal and Double Scienter under Section 1202(b)(1) ........ 15

1. Plaintiffs Allege No Concrete Injury ........ 15

2. Plaintiffs Do Not Allege Anthropic Removed CMI from Their Works ........ 17

3. Plaintiffs Do Not Plead the Second Scienter Element ........ 19

E. The *Bartz* Final Judgment and Release Bar Certain Claims ........ 20

F. Certain Plaintiffs Improperly Assert Third-Party Rights ........ 21

1. Certain Plaintiffs Lack Statutory Standing ........ 22

2. Alternatively, the Registered Owners Are Necessary Parties, and Plaintiffs Must Comply with Rule 19(c) ........ 23

G. Certain Works Could Not Have Been Downloaded by Anthropic Because They Were Created After the Alleged Downloads ........ 24

H. Certain Plaintiffs Cannot Recover Statutory Damages or Attorneys' Fees for Direct or Contributory Copyright Infringement ........ 24

I. Plaintiffs' Claims Should Be Limited to Works Identified in Their Exhibits ........ 25

IV. CONCLUSION ........ 25

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Adams v. Wells Fargo Bank, N.A.*,
No. 13-cv-5164-YGR, 2015 WL 1434599 (N.D. Cal. Mar. 30, 2015)....23

*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974)....7

*Andersen v. Stability AI Ltd.*,
700 F. Supp. 3d 853 (N.D. Cal. 2023)....13, 19

*Annabooks, LLC v. Issuu, Inc.*,
No. 20-cv-04271-CRB, 2020 WL 6873646 (N.D. Cal. Sept. 24, 2020)....10, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....17, 20, 21

*Atl. Recording Corp. v. Howell*,
554 F. Supp. 2d 976 (D. Ariz. 2008)....10, 11

*Authors Guild, Inc. v. Google, Inc.*,
804 F.3d 202 (2d Cir. 2015)....13

*Bartz v. Anthropic*,
No. 4:24-cv-05417-AMO (N.D. Cal. July 20, 2026)....5, 23

*Bartz v. Anthropic*
PBC, 791 F. Supp. 3d 1038 (N.D. Cal. 2025)....25

*Beaulier v. Meta Platforms, Inc.*,
No. 26-cv-2632-CRB, 2026 WL 2521848 (N.D. Cal. Aug. 26, 2026)....22

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
No. 18-cv-933-MMC, 2020 WL 1877707 (N.D. Cal. Apr. 15, 2020)....13, 27

*Beijing Meishe Network Tech. Co. v. TikTok Inc.*,
No. 23-cv-6012-SI, 2024 WL 1772833 (N.D. Cal. Apr. 23, 2024)....26

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....10, 11, 16

*Bibbs v. Amazon.com, Inc.*,
No. 24-cv-739, 2024 WL 4744035 (C.D. Cal. Aug. 22, 2024)....27

*Bickoff v. Wells Fargo Bank, N.A.*,
No. 11-cv-2452, 2012 WL 3637381 (S.D. Cal. Aug. 20, 2012)....26

*BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*,
716 F. Supp. 3d 835 (C.D. Cal. 2024)....................12

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013)....................16

*Concord Music Group, Inc. v. Anthropic PBC*,
No. 24-cv-03811-EKL, 2025 WL 4808984 (N.D. Cal. Oct. 6, 2025) ....................20

*Concord Music Grp., Inc. v. Anthropic PBC*,
No. 24-cv-03811-EKL, 2025 WL 1487988 (N.D. Cal. Mar. 26, 2025) ....................15, 20

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
607 U.S. 583 (2026)....................15, 16

*CP Nat'l Corp. v. Bonneville Power Admin.*,
928 F.2d 905 (9th Cir. 1991)....................25

*Crown, Cork & Seal Co. v. Parker*,
462 U.S. 345 (1983) (Powell, J., concurring) ....................7, 8

*DeFries v. Union Pac. R.R. Co.*,
104 F.4th 1091 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1426 (2025)....................8

*Doe 1 v. GitHub, Inc.*,
No. 24-7700, 2026 WL 2728464 (9th Cir. Sept. 16, 2026) ....................18, 20, 21, 22

*Donahue v. Union Pac. R.R. Co.*,
No. 21-cv-448-MMC, 2021 WL 2458351 (N.D. Cal. June 16, 2021)....................8

*Entrepreneur Media, LLC v. Meta Platforms, Inc.*,
No. 25-cv-9579-VC, 2026 WL 898253 (N.D. Cal. Mar. 30, 2026)....................12, 15

*Forlenza v. AT&T*,
No. 03-cv-8232, 2004 U.S. Dist. LEXIS 29549 (C.D. Cal. Apr. 12, 2004) ....................12

*Google, Inc. v. Affinity Engines, Inc.*,
No. 05-cv-0598-JW, 2005 U.S. Dist. LEXIS 37369 (N.D. Cal. Aug. 12, 2005)....................27

*Hall v. YouTube, LLC*,
No. 24-cv-04071-WHO, 2025 WL 1482007 (N.D. Cal. May 5, 2025)....................24

*In re Napster, Inc.*,
No. 04-cv-3004-MHP, 2005 WL 289977 (N.D. Cal. Feb. 3, 2005) ....................9, 11

*In re ZF-TRW*,
No. 2:19-ml-02905, 2025 WL 2684021 (C.D. Cal. Aug. 15, 2025)....................7

*Johnson Controls, Inc. v. Phx. Control Sys., Inc.*,
886 F.2d 1173 (9th Cir. 1989)....................24

*Johnson v. Ry. Express Agency, Inc.*,
421 U.S. 454 (1975) ....................................................................................................7

*Justice v. Uncharted Labs*,
No. 25-cv-5026, 2026 WL 1430232 (S.D.N.Y. May 21, 2026) ..................................13, 14, 19

*Kadrey v. Meta Platforms, Inc.*,
No. 23-cv-3417-VC, 2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) .......................................13

*Kadrey v. Meta Platforms, Inc.*,
No. 23-cv-3417-VC, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025)...............................18, 19, 22

*Lackey v. Sheppard*,
No. 22-cv-5653-PA, 2022 WL 19241141 (C.D. Cal. Dec. 16, 2022)......................................24

*Lake v. Fontes*,
83 F.4th 1199 (9th Cir. 2023)...................................................................................................18

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..................................................................................................................19

*Lynwood Invs. Cy Ltd. v. Konovalov*,
No. 20-cv-3778-LHK, 2021 WL 1164838 (N.D. Cal. Mar. 25, 2021).......................................6

*Malibu Media LLC v. Doe*,
No. 13-cv-6312, 2016 U.S. Dist. LEXIS 14798 (N.D. Ill. Feb. 8, 2016) ................................12

*Mattel, Inc. v. MGA Entm't, Inc.*,
616 F.3d 904 (9th Cir. 2010)...............................................................................................14, 15

*McKenna v. WhisperText*,
No. 5:14-cv-424-PSG, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) .......................................7

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) ..................................................................................................................16

*Michael Grecco Prods., Inc. v. BDG Media Inc.*,
No. 19-cv-4716, 2019 WL 13128605 (C.D. Cal. Nov. 21, 2019)..........................................8, 9

*Mosher v. Veyda*,
No. 22-cv-9632, 2024 WL 4932621 (S.D.N.Y. Dec. 2, 2024) ................................................24

*Nazemian v. NVIDIA Corp.*,
No. 24-cv-1454-JST, 2026 WL 1229583 (N.D. Cal. May 5, 2026) ........................................17

*New York Times Co. v. Microsoft Corp.*,
777 F. Supp. 3d 283 (S.D.N.Y. 2025)......................................................................................18

*Newton v. Diamond*,
388 F.3d 1189 (9th Cir. 2004)...................................................................................................12

*Oskar Sys., LLC v. Club Speed, Inc.*,
745 F. Supp. 2d 1155 (C.D. Cal. 2010)..........26

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007)..........10

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017)..........11, 12

*Peters v. West*,
692 F.3d 629 (7th Cir. 2012)..........14

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014)..........5, 9

*Premier Tracks, LLC v. Fox Broad. Co.*,
No. 12-cv-1615, 2012 WL 13012714 (C.D. Cal. Dec. 18, 2012)..........27

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006)..........23

*Rutledge v. Bos. Woven Hose & Rubber Co.*,
576 F.2d 248 (9th Cir. 1978)..........7

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*,
733 F.3d 1251 (9th Cir. 2013)..........6

*Shropshire v. Canning*,
No. 10-cv-1941-LHK, 2011 WL 90136 (N.D. Cal. Jan. 11, 2011)..........25, 26

*Spatola v. Desrouleaux*,
No. 23-cv-6191, 2026 WL 712576 (C.D. Cal. Mar. 5, 2026)..........26

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..........17

*Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*,
39 F.4th 1236 (9th Cir. 2022)..........9

*Stevens v. Corelogic, Inc.*,
899 F.3d 666 (9th Cir. 2018)..........21

*Strike 3 Holdings, LLC v. Meta Platforms, Inc.*,
835 F. Supp. 3d 1026 (N.D. Cal. 2026)..........15, 17

*Taylor v. Universal Music Corp.*,
No. 13-cv-6412, 2014 WL 12607685 (C.D. Cal. Mar. 10, 2014)..........25

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)..........23

*The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18 (S.D.N.Y. 2025) ........ 22

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........ 17, 18

*Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772 (N.D. Cal. 2024) ........ 13, 22

*Trinh v. Wells Fargo & Co.*, No. 3:16-cv-2985-L-BGS, 2017 WL 5548777 (S.D. Cal. Nov. 16, 2017) ........ 26

*UAB Planner5D v. Facebook*, No. 19-cv-3132-WHO, 2020 WL 4260733 (N.D. Cal. July 24, 2020) ........ 26

*Viral DRM LLC v. Navez*, No. 3:23-cv-6598-JSC, 2025 WL 834498 (N.D. Cal. Mar. 17, 2025) ........ 24

*Viral DRM LLC v. Seven W. Media Ltd.*, 768 F. Supp. 3d 1025 (N.D. Cal. 2025) ........ 24

*Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366 (2024) ........ 9

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) ........ 24, 25

*White v. Marshall*, No. 07-cv-892, 2009 WL 230096 (E.D. Wis. Jan. 30, 2009) ........ 25

*Wilkins-Jones v. Cnty. of Alameda*, No. 08-cv-1485-EMC, 2012 WL 3116025 (N.D. Cal. July 31, 2012) ........ 6

*Williams v. Aserraderos Arauco, SA*, No. 12-cv-4912-WHO, 2015 WL 2228794 (N.D. Cal. May 12, 2015) ........ 6

*Williams v. Boeing Co.*, 517 F.3d 1120 (9th Cir. 2008) ........ 7, 8

*Willis v. Elec. Arts, Inc.*, No. 08-cv-1311, 2009 WL 10710038 (D. Nev. Sept. 23, 2009) ........ 25

*Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022 (N.D. Cal. 2003) ........ 27

**FEDERAL STATUTES**

17 U.S.C. § 106(3) ........ 10

17 U.S.C. § 410(c) ........ 24

17 U.S.C. § 412(2) ....27

17 U.S.C. § 501(b) ....24, 25

17 U.S.C. § 507(b) ....5

17 U.S.C. § 1202(b) ....21

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) ....6

Fed. R. Civ. P. 12 ....1, 21, 23

Fed. R. Civ. P. 19 ....2, 24, 25, 26, 27

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The complaints and the public records they invoke resolve much of this case.

Every act Plaintiffs challenge occurred in 2021 or 2022—the alleged downloads and removal of copyright management information. Plaintiffs did not sue until December 2025 at the earliest. Plaintiffs offer one excuse for the delay: a conclusory allegation that Anthropic concealed its training data. Their own pleading defeats it, describing the public disclosures—including Anthropic's own research paper—that made those facts available years before suit. Plaintiffs plead no facts supporting any other basis for delayed accrual. The Copyright Act's three-year limitations period bars all counts in all actions.

Beyond timeliness, Plaintiffs' counts fail. Count I's distribution theory rests on a generic description of how BitTorrent works—no recipient, no transfer, and nothing beyond allegations that fragmentary "pieces" may have left Anthropic's machines. Its output theories identify no Claude output that reproduces any asserted work. They rely instead on two studies of other authors' books (one never tested Claude at all), and on the premise that a competing work "of the same kind" infringes, which copyright does not recognize. The Count II contributory infringement theory identifies no direct infringer and no intent to induce one. And Count III alleges no concrete injury, no CMI, no removal by Anthropic, and neither scienter element the statute requires.

The same public records defeat the claims on specific works. Eight works were part of the *Bartz* settlement, they were not opted out, and the final judgment released the conduct pleaded here. The copyright registrations for 282 works name claimants who are not before this Court—leaving the asserting Plaintiffs without standing and the true owners unjoined. And 23 works could not have been copied because they were not published until August 2022 or later, after Anthropic's last alleged download. Moreover, works registered after the alleged copying took place cannot support statutory damages or fees, and each action should be confined to the works its exhibit identifies.

## II. FACTUAL BACKGROUND

*The five actions.* This motion addresses five similar complaints filed by authors and publishers. Because the pleadings track one another closely but use different paragraph numbers,

Anthropic cites them collectively as *Cognella* (Cog ¶ _), *Chicken Soup* (CS ¶ _), *Cruz* (Cr ¶ _), *Kwon* (Kw ¶ _), and *Cambronne* (Cam ¶ _). Each pleads three counts: direct infringement (Count I), contributory infringement (Count II), and removal of copyright management information (CMI) (Count III). The Court related all cases to *Cambronne* and ordered the motions to dismiss be briefed together. Cam, ECF Nos. 200, 214. The allegations material to this motion concern the timing of the challenged conduct, the nature of the challenged conduct, and who owns the works-in-suit.

*The timing allegations.* Every act challenged falls in 2021 or 2022: Anthropic allegedly downloaded Books3 in early 2021, five million books from LibGen in June 2021, and two million from PiLiMi in July 2022. Cog ¶¶ 62, 66, 68; CS ¶¶ 60, 64, 66; Cr ¶¶ 86, 90, 92; Kw ¶¶ 92, 96, 98; Cam ¶¶ 62, 66, 68. The alleged CMI conduct—using tools to "clean" data—is likewise alleged to have occurred in 2021. Cog ¶ 72; CS ¶ 70; Cr ¶ 96; Kw ¶ 102; Cam ¶ 72. No complaint alleges any basis for tolling or delayed accrual.

*The torrenting "upload" allegations.* Counts I and II rest on the same account of how BitTorrent works. Count I claims Anthropic distributed Plaintiffs' works through uploads incident to downloads; Count II builds a contributory claim on the same alleged uploading, adding that unidentified third parties then downloaded them. Both draw entirely on a generic description of the protocol: torrenting "works by breaking a file into many small pieces and distributing those pieces across a network," and such protocols "are often configured by default to reupload pieces of the copyrighted files to others on the network." Cog ¶¶ 5, 59; CS ¶¶ 5, 57; Cr ¶¶ 5, 83; Kw ¶¶ 5, 89; Cam ¶¶ 5, 59. From that premise, the complaints allege Anthropic "uploaded and distributed, either through 'seeding' and/or 'leeching,'" Plaintiffs' works, "thereby making those works available to third parties for downloading." Cog ¶ 96; CS ¶ 94; Cr ¶ 120; Kw ¶ 126; Cam ¶ 96. Plaintiffs allege no recipient, no transfer, and no completed download of any asserted work by any BitTorrent user.

*The output allegations.* Count I also purports to reach what Claude produces. Plaintiffs allege that Anthropic embedded "near-verbatim copies" of their works in Claude's model weights, Cog ¶¶ 7, 76; CS ¶¶ 7, 74; Cr ¶¶ 7, 100; Kw ¶¶ 7, 106; Cam ¶¶ 7, 76, and that Claude's outputs serve as "direct" and "indirect" "substitutes" for those works, Cog ¶ 81; CS ¶ 79; Cr ¶ 105; Kw ¶ 111; Cam ¶ 81. But the only output alleged anywhere in the complaints comes from two third-party

studies unrelated to the works-in-suit, neither of which supports acts of infringing output. Cog ¶¶ 76–80; CS ¶¶ 74–78; Cr ¶¶ 100–104; Kw ¶¶ 106–110; Cam ¶¶ 76–80; LeGolvan Decl., Exs. 8, 9.

*The Bartz settlement and ownership records.* Public records bear on which works these Plaintiffs may assert at all. The court in *Bartz v. Anthropic*, No. 4:24-cv-5417-AMO, entered final judgment approving a class settlement and dismissing the released claims with prejudice. ECF No. 680. The class comprises owners of works on the settlement Works List found in LibGen and PiLiMi, and the release covers torrenting, retention, and training use of those works. Eight works asserted here appear on the Works List, and their owners did not opt out. LeGolvan Decl., Ex. 6–7. And the registrations for other works in LeGolvan Decl., Exs. 1–3 tell a different ownership story than the complaints. Some name claimants who are not plaintiffs here. Others name co-owners the asserting Plaintiffs did not join. And still others list publishers and additional parties with potential rights in the works. No complaint reconciles these records with its ownership allegations.

## III. ARGUMENT

Anthropic's arguments run from the broadest ground to the narrowest.

**Part A** shows the Copyright Act's limitations period bars every claim in all five actions. **Parts B through D** show that each count independently fails: Count I (direct) alleges no distribution and identifies no infringing Claude output, Count II (contributory) identifies no direct infringer and no intent to induce one, and Count III (CMI) alleges no Article III injury, no CMI, no removal, and no scienter. **Parts E through G** show that three categories of works drop out whatever becomes of the counts: some works released by the *Bartz* final judgment (Part E), many others are registered to owners not before this Court (Part F), and others were created after the last alleged download, and thus could not have been copied (Part G). **Part H** shows that works registered after the alleged infringement took place cannot support statutory damages or fees under Counts I and II. And **Part I** asks the Court to limit each action to the works its exhibit identifies.

### A. Plaintiffs' Claims Are Time-Barred under the Copyright Act's Three-Year Limitations Period

The complaints allege the downloads and torrenting took place more than three years before Plaintiffs filed suit. That bars the claims. 17 U.S.C. § 507(b); *Petrella v. Metro-Goldwyn-Mayer,*

*Inc.*, 572 U.S. 663, 670 (2014) (claim "accrue[s] when an infringing act occurs").

Anthropic allegedly downloaded Books3 in 2021, torrented LibGen in June 2021, and torrented PiLiMi in July 2022. Cog ¶¶ 62, 66, 68; CS ¶¶ 60, 64, 66; Cr ¶¶ 86, 90, 92; Kw ¶¶ 92, 96, 98; Cam ¶¶ 62, 66, 68. Plaintiffs did not file until May 2026 (all cases except *Cambronne*), or December 22, 2025 at the earliest (*Cambronne*)—in every instance more than three years after the last of these acts, even crediting relation-back for Counts II and III.[1]

Where untimeliness is apparent on the face of the complaint and the plaintiff has not adequately pleaded tolling or delayed accrual, the Court should dismiss without reaching the merits. *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254–1258 (9th Cir. 2013). The burden to plead facts supporting tolling falls on Plaintiffs. *Williams v. Aserraderos Arauco, SA*, No. 12-cv-4912-WHO, 2015 WL 2228794, at *2 (N.D. Cal. May 12, 2015).

Plaintiffs put forth one theory to excuse the delay: concealment. *Cruz*, *Kwon*, and *Cambronne* separately allege their works were part of the *Bartz* settlement class and that they opted out, but no complaint invokes *American Pipe* tolling, and none invokes the discovery rule at all. Because untimeliness is apparent on the face of each complaint, that omission is independently fatal to both theories. Anthropic addresses all three below only in case Plaintiffs raise *American Pipe* or the discovery rule for the first time in opposition. Each fails regardless.

**Plaintiffs' concealment allegations fail**. Each complaint alleges Anthropic "attempted to conceal the composition of its training datasets." Cog ¶ 90; CS ¶ 88; Cr ¶ 114; Kw ¶ 120; Cam ¶ 90. That does not support tolling. Fraudulent concealment tolling requires (1) an affirmative act of concealment, (2) the plaintiff's lack of actual or constructive knowledge, and (3) the plaintiff's diligence—each pleaded with Rule 9(b) particularity. *Lynwood Invs. Cy Ltd. v. Konovalov*, No. 20-cv-3778-LHK, 2021 WL 1164838, at *10–11 (N.D. Cal. Mar. 25, 2021); Fed. R. Civ. P. 9(b).

The complaints plead none of it. They allege only that Anthropic "attempted" concealment, without saying what the attempt consisted of or whether it worked—conclusory allegations that

[1] Anthropic does not concede relation back. Anthropic assumes it because the new counts are untimely regardless. In any event, "Plaintiff has the burden . . . [on] . . . relation back." *Wilkins-Jones v. Cnty. of Alameda*, No. 08-cv-1485-EMC, 2012 WL 3116025, at *12 (N.D. Cal. July 31, 2012). Plaintiffs have not attempted to meet that burden.

cannot avoid the limitations bar. *Rutledge v. Bos. Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978). And the premise is inconsistent with Plaintiffs' own pleadings. The Pile's public datasheet stated that "Books3 is almost entirely comprised of copyrighted works," Cog ¶ 47; CS ¶ 45; Cr ¶ 71; Kw ¶ 77; Cam ¶ 47, and its compiler publicly described its pirated origins beginning in October 2020. Cog ¶ 45; CS ¶ 43; Cr ¶ 69; Kw ¶ 75; Cam ¶ 45. Further, in the initial complaint, Cambronne plaintiffs alleged Anthropic published its training sources in a December 2021 research paper. Cam, ECF No. 1 ¶ 50 & n.8 (referring to "Anthropic's own public statements and technical papers" disclosing use of Books3); Cam, ECF Nos. 96-12, 96-13 (excerpted papers referenced in *Cambronne* complaint); *see McKenna v. WhisperText*, No. 5:14-cv-424-PSG, 2015 WL 5264750, at *3 (N.D. Cal. Sept. 9, 2015) (court may consider allegations in prior complaint). And Plaintiffs identify the asserted works, by their own account, from "publicly available metadata." Cog ¶ 27; CS ¶ 25; Cr ¶ 19; Kw ¶ 19; *see* Cam ¶ 40. Conclusory "attempted" concealment allegations paired with pleaded facts of public disclosure add up to transparency, not concealment.

**Plaintiffs have not alleged *American Pipe* tolling**. The complaints reference the *Bartz* class action, but neither invokes it for tolling nor explains how it would apply to their claims. That omission is fatal on its own—Plaintiffs bear the burden of pleading *American Pipe* tolling. *In re ZF-TRW*, No. 2:19-ml-02905, 2025 WL 2684021, at *48 (C.D. Cal. Aug. 15, 2025). Anthropic addresses the doctrine only for completeness; it remains Plaintiffs' burden.

A class action "suspends the applicable statute of limitations as to all asserted members of the class who would have been parties" had it proceeded as a class action. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974). *American Pipe* would not save Plaintiffs' claims.

First, tolling does not reach the Count I distribution theory, Count II, or Count III, because none was asserted in the *Bartz* complaint. *American Pipe* tolls "the same cause of action subsequently asserted," *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 467 (1975), but not "different or peripheral claims." *Williams v. Boeing Co.*, 517 F.3d 1120, 1136 (9th Cir. 2008) (quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983) (Powell, J., concurring)). The test is fair notice: claims the class complaint did not fairly flag for the defendant fall outside of *American Pipe*. *Crown*, 462 U.S. at 355 (Powell, J., concurring).

The *Bartz* class complained of reproducing works to train LLMs—not distribution by BitTorrent upload or CMI removal. *See Bartz*, No. 4:24-cv-05417, ECF No. 1 ¶ 71. It asserted no distribution claim, alleged no upload to anyone, and raised no CMI claim. A defendant reading that complaint would prepare to defend training-data copying, not the mechanics of a peer-to-peer client or data extraction tools. That the claims share a statute or statutory scheme does not matter; a new theory falls outside *American Pipe*'s fair-notice tolling even where the defendant and general subject matter are the same. *See Donahue v. Union Pac. R.R. Co.*, No. 21-cv-448-MMC, 2021 WL 2458351, at *2 (N.D. Cal. June 16, 2021); *Williams*, 517 F.3d at 1136. So the Count I distribution theory and Count II accrued with the 2021–22 downloads, untolled by *Bartz*'s training-focused complaint, and closed in June 2024 (LibGen) and July 2025 (PiLiMi). The Count III claim accrued no later than 2021, when Anthropic allegedly selected and used the extraction tools to "clean" training data, Cog ¶ 72; CS ¶ 70; Cr ¶ 96; Kw ¶ 102; Cam ¶ 72, and closed in 2024.[2]

Second, even setting fair notice aside, the Books3 and LibGen claims expired before *Bartz* was filed on August 19, 2024, so no suspension could reach them. Tolling suspends a running period; it does not revive an expired one. *Crown*, 462 U.S. at 347. The Books3 claims accrued in early 2021 and closed in early 2024, months before *Bartz*. Cog ¶ 62; CS ¶ 60; Cr ¶ 86; Kw ¶ 92; Cam ¶ 62. The LibGen claims accrued in June 2021 and expired in June 2024, two months before *Bartz* was filed. Cog ¶ 66; CS ¶ 64; Cr ¶ 90; Kw ¶ 96; Cam ¶ 66. Nothing remained to suspend.

**Plaintiffs have not alleged facts to invoke the discovery rule**. No complaint invokes the discovery rule. And none alleges when or how any Plaintiff discovered the alleged infringement, what it did to investigate, or why it could not have discovered this sooner. That omission is independently fatal—Plaintiffs bear the burden of pleading delayed accrual. *Michael Grecco Prods., Inc. v. BDG Media Inc.*, No. 19-cv-4716, 2019 WL 13128605, at *4 (C.D. Cal. Nov. 21,

[2] Nor is there tolling for Plaintiffs' central-library theory, which Plaintiffs expressly plead as conduct outside the *Bartz* class definition. *American Pipe* tolling reaches only plaintiffs the class complaint "arguably include[d]," *DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1099 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1426 (2025), and the *Bartz* class complaint and count were defined by works used in LLM training, *Bartz*, ECF No. 70 ¶¶ 63, 75, while Plaintiffs' central-library theory alleges Anthropic built the library "to exploit for a range of unspecified *other purposes*" and retained works "even if not used for training LLMs." Cog ¶ 74; CS ¶ 72; Cr ¶ 98; Kw ¶ 104; Cam ¶ 74 (emphasis added). Whether or not that allegation is accurate, it places the theory outside the class the *Bartz* complaint defined, so tolling does not reach it.

2019); *In re Napster, Inc.*, No. 04-cv-3004-MHP, 2005 WL 289977, at *3 (N.D. Cal. Feb. 3, 2005).

Anthropic addresses the rule only for completeness. The Ninth Circuit applies it to copyright claims, *Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*, 39 F.4th 1236, 1246 (9th Cir. 2022), but the Supreme Court has twice declined to endorse that approach, *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 368 (2024); *Petrella*, 572 U.S. at 670 n.4, and three Justices have questioned whether the Copyright Act "has any room for such a rule" given that it ties accrual to "when an infringing act occurs." *Nealy*, 601 U.S. at 375–76 (Gorsuch, J., dissenting). Anthropic recognizes the Court is bound by Ninth Circuit precedent but preserves for appeal its position that the discovery rule does not apply to these claims.

Even under the discovery rule, an otherwise untimely plaintiff must plead facts showing it lacked knowledge and, despite reasonable diligence, could not have discovered the facts sooner. *Michael Grecco Prods.*, 2019 WL 13128605, at *4. The complaints make no such showing. More developed allegations have failed in this District. In *Eidson v. Medtronic, Inc.*, a plaintiff's bare claim of "diligent investigation" did not survive dismissal, because it identified no date, no manner of discovery, and no investigative step. 981 F. Supp. 2d 868, 893–94 (N.D. Cal. 2013). The complaints here offer even less, across five actions and hundreds of works.

### B. Count I (Direct Infringement) Fails to Allege a Claim for Distribution or Any Infringement Theory Based on Claude's Outputs

Plaintiffs' direct-infringement theories rest on reproduction and distribution. The distribution theory—reuploading works via BitTorrent—fails to state a claim. So do the theories based on any Claude output, however styled. Anthropic addresses each.

#### 1. Plaintiffs' BitTorrent Distribution Theory Fails

Plaintiffs do not plausibly allege Anthropic distributed their works. The complaints allege no actual dissemination to any recipient, resting instead on how torrenting protocols work in general. They do not allege volitional conduct: on their own account, any upload came from third-party software's default settings and other users' independent download requests. And their own description of BitTorrent shows that any upload conveyed, at most, fragmentary pieces—never alleged to be substantial. Each defect independently defeats the distribution theory.

Distribution under 17 U.S.C. § 106(3) requires "actual dissemination" to another person. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007). "Merely making an unauthorized copy of a copyrighted work available to the public" fails. *Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 986 (D. Ariz. 2008). Courts dismiss distribution claims that describe a system's capacity to transmit files, coupled with a conclusory assertion that transmission occurred. *Annabooks, LLC v. Issuu, Inc.*, No. 20-cv-04271-CRB, 2020 WL 6873646, at *4 (N.D. Cal. Sept. 24, 2020) (no allegation "a single [] user ever downloaded or even viewed" the work).

The complaints suffer that same defect. Their sole factual predicate is generic: torrenting "works by breaking a file into many small pieces and distributing those pieces across a network," and protocols "are ***often configured*** by default to reupload pieces of the copyrighted files to others on the network." Cog ¶¶ 5, 59; CS ¶¶ 5, 57; Cr ¶¶ 5, 83; Kw ¶¶ 5, 89; Cam ¶¶ 5, 59 (emphasis added). From that premise, Count I asserts Anthropic "uploaded and distributed, either through 'seeding' and/or 'leeching,'" the works, "thereby making [them] available to third parties for downloading." Cog ¶ 96; CS ¶ 94; Cr ¶ 120; Kw ¶ 126; Cam ¶ 96.

That predicate never gets off the ground. Plaintiffs allege only that torrenting protocols are "often" configured by default to reupload—conceding they are not always so configured—and never allege that Anthropic's own client was among the ones configured that way. Whether Anthropic reuploaded anything is left to speculation, and a generic description of what protocols can do is not an allegation of what Anthropic's protocol did. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (must offer more than "a formulaic recitation of the elements"). Even crediting that predicate, the complaints plead availability, not dissemination, Cog ¶ 96; CS ¶ 94; Cr ¶ 120; Kw ¶ 126; Cam ¶ 96 ("making . . . available")—which *Howell* holds insufficient. 554 F. Supp. 2d at 986. Plaintiffs plead no IP address, no transfer, no log, and no recipient for any asserted work; they cannot even say whether uploads occurred at all. That falls short of nudging the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Nor do the complaints supply the architectural detail courts require before treating a file-sharing participant as a direct distributor rather than a source the recipient copies from. In *Howell*, the claim failed because the plaintiffs never explained the file-sharing system's architecture well

enough to show whether the defendant transmitted a copy or merely gave a third party the means to make one. 554 F. Supp. 2d at 986–87. Absent that showing, liability sounds in contributory infringement—if at all—not direct infringement. *Id.* The complaints say only that files are broken into pieces and exchanged among peers, and that software "reassembles those pieces into a complete library on the [recipient's] machine." Cog ¶ 59; CS ¶ 57; Cr ¶ 83; Kw ¶ 89; Cam ¶ 59. They never say whose machine initiates a transfer, so they never support an inference that Anthropic—rather than a requesting peer—did any copying.

The Ninth Circuit's line in *A&M Records v. Napster* that uploading file names "violate[s] plaintiffs' distribution rights" does not save the claim. 239 F.3d 1004, 1014 (9th Cir. 2001). That "review of the issue was cursory," with no precedent and no analysis, where direct infringement was uncontested. *Howell*, 554 F. Supp. 2d at 982.[3] *Perfect 10*'s later actual-dissemination holding "casts doubt" on that line and, at most, confines it to a defendant that "own[s] a collection" of works and communicates them to others—a predicate absent here. *Howell*, 554 F. Supp. 2d at 982.

Even crediting dissemination, the volitional-conduct requirement independently defeats the theory. Direct infringement requires the plaintiff to show causation by the defendant. *Annabooks*, 2020 WL 6873646, at *4; *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 669–70 (9th Cir. 2017) (affirming dismissal where "distribution happen[ed] automatically" and the defendant played no active role). Anthropic does not dispute that Plaintiffs allege volitional conduct for the downloads themselves—employees allegedly downloaded LibGen and PiLiMi. Cog ¶¶ 66, 68; CS ¶¶ 64, 66; Cr ¶¶ 90, 92; Kw ¶¶ 96, 98; Cam ¶¶ 66, 68. But Plaintiffs plead nothing comparable for uploading; they attribute it to two forces outside Anthropic's control. First, third-party software's factory settings: protocols "are often configured by default to reupload pieces," and software "reassembles those pieces" automatically. Cog ¶ 59; CS ¶ 57; Cr ¶ 83; Kw ¶ 89; Cam ¶ 59. Anthropic is alleged only to have used software that others built and shipped with uploading switched on—no chosen

[3] *See Napster*, 239 F.3d at 1013–14 (noting that "direct infringement by Napster users is not presently appealed by Napster," requiring the court only to "briefly address the threshold requirements," and noting "it [was] pretty much acknowledged . . . by Napster [in the district court] that this is [direct] infringement"); 114 F. Supp. 2d 896, 911–12 (N.D. Cal. 2000) (finding direct infringement based on undisputed evidence that "virtually all Napster users engage in the unauthorized downloading or uploading of copyrighted music," without addressing distribution and reproduction separately or analyzing what conduct constitutes actual dissemination).

setting, no designated work, no chosen recipient. Second, other users' independent requests: "[a] user downloads portions of a file from numerous other computers that already possess the file," Cog ¶ 5; CS ¶ 5; Cr ¶ 5; Kw ¶ 5; Cam ¶ 5—meaning the transfer begins when a peer asks for it, "automatically" and "at the user's command." *Giganews*, 847 F.3d at 669–70. There is no allegation that Anthropic "cull[ed] Plaintiff's copyrighted works for subsequent upload." *BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*, 716 F. Supp. 3d 835, 842 (C.D. Cal. 2024).[4]

Finally, even crediting dissemination and volitional conduct, Plaintiffs' own description of BitTorrent shows any upload involved only insubstantial fragments. An unauthorized copy is actionable only if substantial, not *de minimis*, measured by the quantitative and qualitative significance of the taking to the work as a whole; a "meager and fragmentary" taking that the average audience would not recognize is not actionable. *Newton v. Diamond*, 388 F.3d 1189, 1192–96 (9th Cir. 2004). The burden of pleading substantiality is Plaintiffs'. *Forlenza v. AT&T*, No. 03-cv-8232, 2004 U.S. Dist. LEXIS 29549, at *6–11 (C.D. Cal. Apr. 12, 2004).

Plaintiffs draw the contrast themselves. As to downloads, they allege software "reassembles those pieces into a completed whole"—a complete copy. Cog ¶ 5; CS ¶ 5; Cr ¶ 5; Kw ¶ 5; Cam ¶ 5. As to uploads, they allege only that clients "reupload pieces," and that a user receives "portions" from "numerous other computers." Cog ¶ 59; CS ¶ 57; Cr ¶ 83; Kw ¶ 89; Cam ¶ 59. No single participant supplies the whole. Nowhere do Plaintiffs allege how many pieces a work comprised, how many Anthropic uploaded, what any piece contained, or that Anthropic uploaded a "substantial" portion of any work. *Malibu Media LLC v. Doe*, No. 13-cv-6312, 2016 U.S. Dist. LEXIS 14798, at *21–24 (N.D. Ill. Feb. 8, 2016) (no showing that BitTorrent "pieces" were substantial); *Entrepreneur Media, LLC v. Meta Platforms, Inc.*, No. 25-cv-9579-VC, 2026 WL 898253, at *1 (N.D. Cal. Mar. 30, 2026) (surviving dismissal on allegation defendant uploaded "substantial portions" of the works). Because the only characterization anywhere is "pieces" and "portions" from "numerous other computers," the Court cannot infer substantiality.

[4] That these authorities arose in the service-provider context with an intermediary server host does not change the result; volitional conduct turns on proximate causation, not on that relationship. *Giganews*, 847 F.3d at 666. A peer-to-peer network has no intermediary host—the transfer function is built into the protocol and, as pleaded, operates by default when a third-party user initiates a download. That difference changes the mechanism of automation, not the causation analysis.

**2. Any Theory Based on Claude Outputs Fails**

Plaintiffs also target Claude's outputs, alleging Anthropic embedded "near-verbatim copies" of their works "in Claude's model weights." Cog ¶¶ 7, 76–80; CS ¶¶ 7, 74–78; Cr ¶¶ 7, 100–104; Kw ¶¶ 7, 106–110; Cam ¶¶ 7, 76–80. From that they plead a "direct substitute" theory and an "indirect substitute" theory. Cog ¶ 81; CS ¶ 79; Cr ¶ 105; Kw ¶ 111; Cam ¶ 81. The direct-substitute theory alleges Claude generates "nearly indistinguishable 'versions'" or "reproduce[s] substantial portions" of the works, resting on a study claiming Claude "memorized" content extractable through aggressive, adversarial prompting. Cog ¶¶ 76, 80, 84; CS ¶¶ 74, 78, 82; Cr ¶¶ 100, 104, 108; Kw ¶¶ 106, 110, 114; Cam ¶¶ 76, 79, 84. The indirect-substitute theory challenges outputs that do not infringe at all, but nevertheless complains that they "compete directly with" the works by occupying the same genre and "dilut[ing] . . . markets for works of the same kind." Cog ¶¶ 81, 83; CS ¶¶ 79, 81; Cr ¶¶ 105, 107; Kw ¶¶ 111, 113; Cam ¶¶ 81, 83. Neither states a claim.

First, both theories fail to the extent they rest only on Claude being "capable of" generating such content through user prompting. Cog ¶¶ 9, 81, 83–84; CS ¶¶ 9, 79, 81–82; Cr ¶¶ 9, 105, 107–108; Kw ¶¶ 9, 111, 113–114; Cam ¶¶ 9, 81, 83–84. The mere possibility of infringement is not infringement. *Justice v. Uncharted Labs*, No. 25-cv-5026, 2026 WL 1430232, at *2 (S.D.N.Y. May 21, 2026) (dismissing claim against AI developer where model was only "capable of" infringing output); *see Authors Guild, Inc. v. Google, Inc.*, 804 F.3d 202, 229 (2d Cir. 2015) (rejecting "possibility" that a library participant "may use [its digital copy] in an infringing manner").

Second, as to actual outputs, Plaintiffs must allege "non-speculative facts about what [Anthropic] infringed and how," including an example showing substantial similarity. *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-cv-933-MMC, 2020 WL 1877707, at *6 (N.D. Cal. Apr. 15, 2020). Plaintiffs offer none—the same defect that has repeatedly foreclosed output-infringement claims against AI developers. *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-3417-VC, 2023 WL 8039640, at *1 (N.D. Cal. Nov. 20, 2023); *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 778 (N.D. Cal. 2024); *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 868 (N.D. Cal. 2023).

The only alleged output anywhere in the complaints comes from two third-party studies, and neither supports infringement. Cog ¶¶ 76–80; CS ¶¶ 74–78; Cr ¶¶ 100–104; Kw ¶¶ 106–110;

Cam ¶¶ 76–80. The Liu study never tested Claude; it tested three other companies' models, and only after the researchers fine-tuned them to produce the relevant text. LeGolvan Decl., Ex. 8 at 1, 5–6. The Cooper study extracted text from Claude only by aggressively "jailbreaking" it—hundreds of adversarial prompts to defeat Claude's safeguards, then hundreds more per book to extract text piece by piece—a process that is plainly not how Claude is intended to be used. And it was not cheap: extracting a single book often costs more than buying it. LeGolvan Decl., Ex. 9 at 5, 11, 13, 18. The study's own authors caution that most attempts recovered little and there are "easier and more effective ways" to obtain the works than jailbreaking Claude. *Id.* at 3, 13, 19. Plaintiffs' own sources undercut, rather than support, the claim that Claude reproduces copyrighted works in ordinary use. Most critically, neither study tested, let alone extracted, any of Plaintiffs' works—both report extracting titles like *The Great Gatsby* and *1984*. Cog ¶¶ 77, 79; CS ¶¶ 75, 77; Cr ¶¶ 101, 103; Kw ¶¶ 107, 109; Cam ¶¶ 77, 79. An allegation that Claude reproduced third parties' works through jailbreaking does not plead infringement of Plaintiffs' works. *Justice*, 2026 WL 1430232, at *2 (dismissing claim based on outputs for works "owned by third parties").

The indirect-substitute theory fails for a more basic reason: it does not describe cognizable copying at all. "[W]orks of the same kind" describes genre. CS ¶¶ 79, 81. Chicken Soup, for example, asserts inspirational nonfiction essays. CS ¶¶ 21–24. The complaint is that a third-party user might prompt Claude to generate different uplifting essays, not expression from the asserted works. But copyright protects "actual expression, not methods of expression," and it confers no monopoly over a category of writing or the underlying idea—no publisher owns the idea or genre of inspirational essays. *Peters v. West*, 692 F.3d 629, 636 (7th Cir. 2012) ("no poet can claim copyright protection in the form of a sonnet or a limerick"); *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913, 916 (9th Cir. 2010) (Mattel could not "claim a monopoly over fashion dolls with a bratty look or attitude," even if MGA copied the "[g]ood idea" from Mattel).

A work that shares a subject, genre, structure, or audience with a plaintiff's work is not for that reason a copy of it; the question is whether the works are similar "beyond the fact that they depict the same idea." *Mattel*, 616 F.3d at 917. Nor does market competition supply the missing element, because Section 106 confers no right against competing works—MGA remained "free to

look at [Mattel's] sketches and say, 'Good idea! We want to create bratty dolls too.'" *Id.* at 913. That is ordinary competition, not infringement, and "America thrives on competition." *Id.* at 918.

Neither the direct- nor indirect-substitution theory identifies an actual infringing Claude output, and speculation about what Claude might someday produce cannot substitute for the infringement Plaintiffs must plead.

### C. Count II (Contributory Infringement) Fails under *Cox v. Sony* and for Failure to Allege Direct Infringement

The complaints speculate that, by downloading books for training, Anthropic's BitTorrent client might have been configured to upload pieces of the works to unidentified peers who then might have downloaded them. Cog ¶¶ 59, 96; CS ¶¶ 57, 94; Cr ¶¶ 83, 120; Kw ¶¶ 89, 126; Cam ¶¶ 59, 96. Count II fails for two independent reasons: Plaintiffs plead no act of third-party infringement, and they plead no facts showing Anthropic intended to facilitate infringement. *See Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. 583, 592–93 (2026) (a defendant is contributorily liable "only if it intended that the provided service be used for infringement").

First, the complaints identify no direct infringer who received any piece of any work from Anthropic. That is fatal on its own, because "the existence of direct infringement is a necessary element of a claim for contributory infringement." *Concord Music Grp., Inc. v. Anthropic PBC*, No. 24-cv-03811-EKL, 2025 WL 1487988, at *3 (N.D. Cal. Mar. 26, 2025). A generic reference to how torrenting protocols "are often configured" does not fill that gap. Cog ¶ 59; CS ¶ 57; Cr ¶ 83; Kw ¶ 89; Cam ¶ 59. Claims under a similar theory survive only where the complaint alleged that downloading "necessarily required" the defendant to upload the works, *Entrepreneur Media*, 2026 WL 898253, at *1, or documented the defendant's actual recipient-download of the specific works at issue. *Strike 3 Holdings, LLC v. Meta Platforms, Inc.*, 835 F. Supp. 3d 1026, 1033 (N.D. Cal. 2026) (surviving dismissal where the complaint documented continuous transfers from the defendant's own IP addresses). The complaints here allege neither.

Plaintiffs' only supporting fact is that BitTorrent protocols "are ***often configured*** by default to reupload pieces," Cog ¶¶ 59, 96; CS ¶¶ 57, 94; Cr ¶¶ 83, 120; Kw ¶¶ 89, 126; Cam ¶¶ 59, 96 (emphasis added)—conceding the protocols are not always so configured. No IP address,

transaction, log, or recipient is pleaded for any work. Whether Anthropic's client seeded, whether these works' pieces were among anything uploaded, and whether any third party downloaded a substantial portion of any work are all left to speculation—failing to cross the line "from conceivable to plausible." *Twombly*, 550 U.S. at 570. Count II fails on this element alone.

Second, contributory liability also requires intent to bring about another's infringement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 936–37 (2005). That intent exists "only if the party induced the infringement or the provided service is tailored to that infringement"; mere knowledge that a service will be used to infringe is not enough. *Cox*, 607 U.S. at 593–94. Plaintiffs do not allege Anthropic provided any service others used to infringe—their theory is that Anthropic, while downloading, might have made file pieces available to others. Anthropic provided no service to tailor, so the only path left is inducement, which requires facts showing Anthropic actively encouraged someone else's infringement. Plaintiffs plead none.

The complaints allege the opposite: that Anthropic downloaded books for its own training. Cog ¶¶ 62, 66, 68; CS ¶¶ 60, 64, 66; Cr ¶¶ 86, 90, 92; Kw ¶¶ 92, 96, 98; Cam ¶¶ 62, 66, 68. Any uploading, as pleaded, was incidental and depended on how third-party software *might* have shipped by default and whether other users *might* have initiated a download. Cog ¶ 59; CS ¶ 57; Cr ¶ 83; Kw ¶ 89; Cam ¶ 59. Plaintiffs identify no promotion, marketing, instruction, or the like between Anthropic and any alleged infringer. And a theory that Anthropic failed to disable default settings is foreclosed: "a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement." *Cox*, 607 U.S. at 594.

The alternative path—a service "tailored to" infringement because it lacks substantial noninfringing uses—is also foreclosed. *Id.* at 593. Anthropic does not provide the service at issue; the complaints allege only that Anthropic used BitTorrent, a general-purpose protocol built and distributed by others. The Ninth Circuit has recognized "a great number of non-infringing uses for peer-to-peer networks," with infringement "in no sense intrinsic to the technology." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1025 (9th Cir. 2013) (affirming contributory liability because the defendant personally solicited uploads of specific copyrighted films, provided

infringing links, and helped users obtain pirated content).[5]

Post-*Cox* decisions have turned on whether the defendant built its own tool dedicated to infringement. An allegation of merely "provid[ing] access to its servers, data centers, IP addresses, computers, networks, [and] accounts" is insufficient. *Strike 3*, 835 F. Supp. 3d at 1042 (claim survived because defendant "took active steps to encourage torrenting by implementing an algorithm and establishing VPCs" for that purpose); *see also Nazemian v. NVIDIA Corp.*, No. 24-cv-1454-JST, 2026 WL 1229583, at *6 (N.D. Cal. May 5, 2026) (defendant built and distributed scripts designed solely to download a pirated dataset). The complaints allege no Anthropic-built torrenting tool and no act directed at any network participant. The Court should dismiss Count II.

### D. Count III (CMI Removal) Fails for Lack of Article III Standing and Fails to Allege CMI Removal and Double Scienter under Section 1202(b)(1)

Count III fails for three independent reasons: Plaintiffs allege no Article III injury; they identify no CMI and do not plausibly allege Anthropic removed CMI from any of their works; and they plead neither of Section 1202(b)'s two scienter elements. Each alone requires dismissal.

#### 1. Plaintiffs Allege No Concrete Injury

Even setting aside the pleading defects addressed below, Count III fails at the threshold because Plaintiffs have not alleged a concrete injury under Article III. Two independent grounds show this: Plaintiffs never allege that Claude output a CMI-stripped copy of their works to anyone, so they allege no concrete harm; and their own allegations trace any removal to conduct that predates Anthropic's acquisition of the datasets, so any harm is not fairly traceable to Anthropic.

"No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). Congress cannot "simply enact an injury into existence"; concreteness turns on whether the plaintiff's harm bears a "close relationship" to one traditionally recognized in American courts. *Id.* at 424, 426. A "bare procedural violation, divorced from any concrete harm," does not suffice. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). *TransUnion* found inaccurate credit information

---

[5] Plaintiffs' remaining conclusory assertion—there was "no substantial or commercially significant non-infringing use of the copyrighted materials that Anthropic uploaded and distributed," Cog ¶ 97; CS ¶ 95; Cr ¶ 121; Kw ¶ 127; Cam ¶ 97—is a legal conclusion the Court should disregard, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and misstates the test, which asks about the service (BitTorrent), not the end use (LLM training).

sitting unshared in an internal file causes no concrete harm—"roughly the same, legally speaking, as if someone wrote a defamatory letter and then stored it in her desk drawer." 594 U.S. at 434.

That logic controls here. In *Raw Story Media, Inc. v. OpenAI, Inc.*, the court dismissed a CMI removal claim where the plaintiffs alleged only that their CMI-stripped articles "remain in ChatGPT's repository," with no allegation a copy reached a user. 756 F. Supp. 3d 1, 6–7 (S.D.N.Y. 2024). Conversely, courts find concrete injury where plaintiffs adequately alleged the AI product reproduces the CMI-stripped work to end users. *See New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 313 (S.D.N.Y. 2025); *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-3417-VC, 2025 WL 744032, at *1–2 (N.D. Cal. Mar. 7, 2025). Indeed, the Ninth Circuit recently confirmed that reproduction to end users is the key fact that carries an AI training-to-output claim past Article III. *See Doe 1 v. GitHub, Inc.*, No. 24-7700, 2026 WL 2728464, at *4 (9th Cir. Sept. 16, 2026) (Article III standing present where plaintiffs alleged examples where "Copilot reproduced portions of the named plaintiffs' code verbatim" and "without attribution").

Plaintiffs allege Anthropic removed CMI because it "wanted Claude to reproduce protected expression, not the copyright notices that identify the rights holders," thereby concealing "the source of its infringement." Cog ¶ 72; CS ¶ 70; Cr ¶ 96; Kw ¶ 102; Cam ¶ 72. *GitHub* requires plausible allegations of a "substantial risk" of an output infringing the plaintiff's work. *GitHub*, 2026 WL 2728464, at *4. But unlike in *GitHub*, Plaintiffs identify no Claude output reproducing their works, or even that there is risk of such occurrence—with or without CMI. Plaintiffs only vaguely allege Claude is "capable" of outputting training content, Cog ¶ 83; CS ¶ 81; Cr ¶ 107; Kw ¶ 113; Cam ¶ 83, and only based on the same two studies addressed above: one never tested Claude, and the other extracted pieces of other authors' text, at significant cost, through hundreds of adversarial jailbreak prompts. *See supra* Part B.2. Adversarial researchers extracting other authors' books at great expense does not plausibly allege a substantial risk that Claude will output Plaintiffs' material. *See Lake v. Fontes*, 83 F.4th 1199, 1202–04 (9th Cir. 2023) (despite complaint's reliance on expert reports of voter machine "manipulation risk," risk of voter-machine hacking based on mere "susceptib[ility]" was speculative). Plaintiffs did not need to speculate: Claude, like the services in *GitHub* and *Justice*, is publicly accessible, and Plaintiffs could have tested it themselves

to show any such output risk. *Justice*, 2026 WL 1430232, at *2 (no need for discovery where the plaintiff could test a "publicly accessible" AI model directly). Reliance instead on secondhand, work- and model-mismatched studies shows any risk is speculative at best, non-existent at worst.

Even if concrete harm were sufficiently alleged, the claim fails on traceability. The injury must be "fairly traceable to the challenged action of the defendant," not the "independent action of some third party." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs do not allege Anthropic removed CMI; they allege datasets already "contained copyrighted works whose copyright notices . . . ***had been removed*** through extraction tools" before Anthropic "trained Claude on these same stripped datasets." Cog ¶ 71; CS ¶ 69; Cr ¶ 95; Kw ¶ 101; Cam ¶ 71 (emphasis added). The only actors identified are "future Anthropic personnel" who worked on datasets at OpenAI—before Anthropic existed. *Id.* In the cases finding standing, the defendant itself did the removing. *See Kadrey*, 2025 WL 744032, at *1. The complaints' remaining allegation—that Anthropic "compared extraction tools" for "filtering" and "clean[ing]" data—describes tool selection, not CMI removal, and does not make any removal-based injury traceable to Anthropic. Cog ¶¶ 70–72; CS ¶¶ 68–70; Cr ¶¶ 94–96; Kw ¶¶ 100–102; Cam ¶¶ 70–72.

### 2. Plaintiffs Do Not Allege Anthropic Removed CMI from Their Works

Each plaintiff must "identify the exact type of CMI included in" its works. *Andersen*, 700 F. Supp. 3d at 872 (dismissing on that basis). The complaints identify none, beyond a catch-all reference to "information about the copyright owner." Cog ¶ 102; CS ¶ 100; Cr ¶ 126; Kw ¶ 132; Cam ¶ 102. Nor do they allege that any CMI was "conveyed in connection with" the copies Anthropic downloaded, as Section 1202(c) requires. Indeed, Plaintiffs suggest the opposite: that the downloaded copies had no CMI conveyed with the works. Cog ¶ 71; CS ¶ 69; Cr ¶ 95; Kw ¶ 101; Cam ¶ 71 (alleging major datasets contained "works whose [CMI] had been removed").

The removal element is lacking for similar reasons. Section 1202(b)(1) reaches only one who "intentionally remove[s] or alter[s]" CMI, yet Plaintiffs' own allegations place the removal before Anthropic acquired the datasets. Cog ¶ 71; CS ¶ 69; Cr ¶ 95; Kw ¶ 101; Cam ¶ 71. What remains are bare conclusions—that Anthropic "deliberately stripped" the works and "chose tools that removed CMI more effectively." Cog ¶¶ 70, 72; CS ¶¶ 68, 70; Cr ¶¶ 94, 96; Kw ¶¶ 100, 102;

Cam ¶¶ 70, 72; *Iqbal*, 556 U.S. at 678 ("threadbare recitals"). And the "more effectively" language concedes the point: CMI was already gone before any Anthropic tool touched the data.

The only factual allegation—that employees "compared extraction tools for filtering training data and then used these extraction methods to clean its training data"—names no tool and describes no act that removed CMI from any Plaintiff's work. Cog ¶ 72; CS ¶ 70; Cr ¶ 96; Kw ¶ 102; Cam ¶ 72. *Concord Music* dismissed a materially identical claim against Anthropic for the same reason: allegations that "simply repeat the statutory language without stating any facts" of intentional removal. 2025 WL 1487988, at *6. That claim proceeded only on amendment adding facts these complaints lack—a tool comparison on a scraped webpage bearing a copyright notice, and output reproducing the plaintiffs' lyrics. *Concord Music Group, Inc. v. Anthropic PBC,* No. 24-cv-03811-EKL, 2025 WL 4808984, at *3–4 (N.D. Cal. Oct. 6, 2025).

Finally, Count III's output theory asks the Court to infer removal from outputs Plaintiffs never allege occurred. Plaintiffs vaguely allege CMI-stripped "outputs," Cog ¶ 72; CS ¶ 70; Cr ¶ 96; Kw ¶ 102; Cam ¶ 72, but identify no output. What they describe instead is a range of things Claude is allegedly "capable" of producing: non-infringing content that "compete[s] directly with" their works, Cog ¶¶ 81, 83; CS ¶¶ 79, 81; Cr ¶¶ 105, 107; Kw ¶¶ 111, 113; Cam ¶¶ 81, 83; "nearly indistinguishable 'versions'" of those works, Cog ¶ 84; CS ¶ 82; Cr ¶ 108; Kw ¶ 114; Cam ¶ 84; and "substantial portions" of text reproduced "when prompted," Cog ¶ 76; CS ¶ 74; Cr ¶ 100; Kw ¶ 106; Cam ¶ 76. Under *GitHub*, everything short of a reproduced copy cannot support a removal claim, and any theory resting on reproduction fails for want of an output to examine.

*Outputs that are new works never carried CMI*. *GitHub* holds that "remove" and "alter" require "an affirmative act with respect to CMI connected to a work that already exists"; a tool that generates new work, rather than "look[ing] up and reproduc[ing] stored work," removes nothing, because the new work "never contained" CMI. 2026 WL 2728464, at *1, *5. The panel grounded that conclusion in the plaintiffs' own account of the technology: the model inferred "statistical patterns," identified "the most likely completion," and so "generate[d] new works," unlike "a traditional search engine, which . . . retrieves and displays stored information." *Id.* at *7. The complaints describe Claude the same way: it "learn[s]" statistical relationships among words, then

"process[es] complex mathematical sequences to 'predict' sequences of text." Cog ¶¶ 28–29; CS ¶¶ 26–27; Cr ¶¶ 52–53; Kw ¶¶ 58–59; Cam ¶¶ 28–29. That is prediction, not retrieval. Plaintiffs' own labels confirm it: "versions," "substitutes," content "of the same kind." Cog ¶¶ 81, 83–84; CS ¶¶ 79, 81–82; Cr ¶¶ 105, 107–108; Kw ¶¶ 111, 113–114; Cam ¶¶ 81, 83–84. Under *GitHub*, these are not reproductions, so no CMI was removed from them.

*Any theory resting on reproduction fails for lack of an output to compare*. *GitHub* explains that removal is ordinarily inferred by "compar[ing] the allegedly infringing copy with the original": where the two are otherwise the same and "the only material difference" is the missing CMI, "it was necessarily the case that the CMI had been removed." 2026 WL 2728464, at *6 (citation omitted). Plaintiffs plead no output at all, so there is nothing for the Court to compare. The *GitHub* plaintiffs pleaded more and still lost. They alleged that Copilot "reproduced portions of the named plaintiffs' code verbatim" and supplied examples. *Id*. at *4. Those allegations carried them past Article III but not past Rule 12. *Id*. at *7. Plaintiffs here offer neither examples nor reproduction of their own works—only two studies about other authors' books, one of which never tested Claude. *See supra* Part B.2. Count III should be dismissed to the extent it rests on Claude's outputs.

**3. Plaintiffs Do Not Plead the Second Scienter Element**

Plaintiffs must show Anthropic knew, or had reason to know, that removal "will induce, enable, facilitate, or conceal" infringement. 17 U.S.C. § 1202(b). That requirement "must have a more specific application than the universal possibility of encouraging infringement"; specific allegations of how identifiable infringements will be affected are necessary. *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018).

The complaints allege the removal was intentional "to . . . create high-quality LLM training data," not to bring about infringement. Cog ¶ 104; CS ¶ 102; Cr ¶ 128; Kw ¶ 134; Cam ¶ 104. Plaintiffs then allege Anthropic acted "knowing or having reasonable grounds to believe" removal was "enabling, facilitating, and concealing" infringement—without a supporting fact. Cog ¶ 105; CS ¶ 103; Cr ¶ 129; Kw ¶ 135; Cam ¶ 105. That is the threadbare recital *Iqbal* forecloses. 556 U.S. at 678. Plaintiffs identify no act of infringement any removal enabled, facilitated, or concealed, and no instance of Claude outputting any portion of any Plaintiff's work, with or without CMI.

The enabling theory fails because Plaintiffs' own allegations show the purpose had nothing to do with infringement: the tools were used "to . . . create high-quality LLM training data" and "to optimize its models' performance." Cog ¶ 104; CS ¶ 102; Cr ¶ 128; Kw ¶ 134; Cam ¶ 104. Filtering out CMI along with footers and other noise to prepare training data is not removal undertaken with knowledge that it will aid infringement. *Tremblay*, 716 F. Supp. 3d at 779; *Beaulier v. Meta Platforms, Inc.*, No. 26-cv-2632-CRB, 2026 WL 2521848, at *4 (N.D. Cal. Aug. 26, 2026). "[T]hat removing CMI might make the [] books work better as training data does not mean that removing CMI made it easier . . . to commit copyright infringement." *Kadrey*, 2025 WL 744032, at *1.

The concealment theory fails too. Plaintiffs allege removal made it "harder for others to discover the true sources" of the training data, Cog ¶ 105; CS ¶ 103; Cr ¶ 129; Kw ¶ 135; Cam ¶ 105, but never explain how omitting CMI from copies in a nonpublic corpus conceals anything from anyone. *Tremblay*, 716 F. Supp. 3d at 779; *The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 30 (S.D.N.Y. 2025). The complaints make the point themselves, pleading that Anthropic wanted to keep "the composition of its training datasets" private—removing CMI from a dataset Anthropic keeps to itself conceals nothing. Cog ¶ 90; CS ¶ 88; Cr ¶ 114; Kw ¶ 120; Cam ¶ 90. Holding otherwise would let a plaintiff satisfy the second scienter element merely by alleging removal. *See GitHub*, 2026 WL 2728464, at *7 (cautioning courts not to "transform run-of-the-mill copyright-infringement claims into DMCA claims").

The claim in *Kadrey* survived only because those plaintiffs alleged Meta "knew that Llama was especially 'prone' to . . . generating outputs of CMI unless CMI was removed from" its training data. 2025 WL 744032, at *2. The complaints here allege nothing like it about Claude—no claim that Claude is prone to reproducing CMI or any Plaintiff's work, and the removal they do allege was for training-data quality, not to enable or conceal any output.

### E. The *Bartz* Final Judgment and Release Bar Certain Claims

Eight works in *Chicken Soup* and *Kwon* asserted here were within the *Bartz* class and belong to Plaintiffs who did not opt out. LeGolvan Decl., Ex. 7. The *Bartz* release bars those claims.

A judgment approving a class settlement binds every class member who did not opt out, and the release bars later claims resting on the "identical factual predicate as that underlying the

claims" settled, even under a different legal theory. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (citation omitted). Where the *res judicata* bar appears from the complaint and judicially noticeable records, the Court may apply it on a Rule 12(b)(6) motion. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Adams v. Wells Fargo Bank, N.A.*, No. 13-cv-5164-YGR, 2015 WL 1434599, at *2–3 (N.D. Cal. Mar. 30, 2015).

On July 20, 2026, the court entered final judgment approving the settlement and dismissing the released claims with prejudice. Final Judgment and Order Granting Final Approval of Class Action Settlement, *Bartz v. Anthropic*, No. 4:24-cv-05417-AMO (N.D. Cal. July 20, 2026), ECF No. 680. The settling class is defined by the Works List. *See* Class Action Settlement Agreement § 1.7, *Bartz*, ECF No. 362-3 ("only legal and beneficial owners of works included on the Works List are in the Class"). And the release reaches the conduct Plaintiffs challenge here:

> "Released Claims" means any and all claims or causes of action for any relief of any kind . . . arising from Defendant's alleged past torrenting (including uploading and seeding), scanning, retention, and use of works, including training, research, development, and production of AI models and associated products and services of works on the "Works List" as of the date of preliminary approval of the Settlement.

*Id.* § 1.29. *Chicken Soup*'s and *Kwon*'s Count I alleges exactly that conduct: torrenting and downloading the works, uploading them via BitTorrent, retaining them, and using them for training. CS ¶¶ 72–73, 86; Kw ¶¶ 104–105, 118. Count II is released for the same reason, since it rests on the same torrenting and uploading alleged in Count I. CS ¶¶ 93–94; Kw ¶¶ 125–126. Count III is released too: Plaintiffs allege that Anthropic removed CMI to "create high-quality LLM training data." CS ¶¶ 70, 102; Kw ¶¶ 102, 134. On Plaintiffs' own telling, the CMI removal was a step in preparing the works for training—conduct the release covers. A release barring claims "of any kind" arising from that use is not avoided by recasting the theory under a different statute.

Each of the eight works in LeGolvan Decl., Ex. 7 appears on the *Bartz* Works List by registration number, and the settlement records show no opt-out for each work. LeGolvan Decl., Exs. 6; LeGolvan Decl. ¶¶ 9–10. The claims premised on these eight works should be dismissed.

### F. Certain Plaintiffs Improperly Assert Third-Party Rights

Certain Plaintiffs' ownership allegations are contradicted by their own copyright registrations. LeGolvan Decl., Exs. 1–3. That discrepancy has two consequences. First, those

Plaintiffs lack standing to assert claims for works they do not own, and their claims should be dismissed on that ground alone. Second, even if they could plead a non-futile basis for standing, the legal owners named in the registrations are necessary parties under Rule 19 who should be notified of this action and given the chance to join.

**1. Certain Plaintiffs Lack Statutory Standing**

Standing requires facts, not a bare assertion of ownership. A plaintiff must allege facts showing it is the "legal or beneficial owner" of the work in suit. 17 U.S.C. § 501(b); *Lackey v. Sheppard*, No. 22-cv-5653-PA, 2022 WL 19241141, at *3 (C.D. Cal. Dec. 16, 2022). A registration is prima facie evidence of ownership, 17 U.S.C. § 410(c); *Johnson Controls, Inc. v. Phx. Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989), and courts may take judicial notice of it, *Hall v. YouTube, LLC*, No. 24-cv-04071-WHO, 2025 WL 1482007, at *2 (N.D. Cal. May 5, 2025).

Here, the registrations for the works in Exhibit 1 list other parties as claimants. LeGolvan Decl., Ex. 1. The affected Plaintiffs allege only that they are "legal or beneficial owner[s]," Cr ¶ 15; Kw ¶ 15; Cam ¶ 15, or the "owner or exclusive licensee" of "thousands of copyrights," Cog ¶ 15; CS ¶ 15. None reconciles the discrepancies with the registrations. Each instead relies on the same disclaimer: "Even where other individuals or entities are listed as copyright claimants . . . Plaintiff[s] [is/are] the owner[s] of all copyrights listed in Exhibit A." Cog ¶ 16 n.4; CS ¶ 16 n.4; Cr ¶ 17 n.5; Kw ¶ 17 n.5; Cam ¶ 18 n.5. That boilerplate never says which plaintiff holds which interest in which work, how, or since when.

A conclusory ownership assertion contradicted by the registration does not suffice. *Lackey*, 2022 WL 19241141, at *3; *Mosher v. Veyda*, No. 22-cv-9632, 2024 WL 4932621, at *7 (S.D.N.Y. Dec. 2, 2024). Courts resolve the issue at the pleading stage. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139, 1145 (9th Cir. 2003); *see also Viral DRM LLC v. Seven W. Media Ltd.*, 768 F. Supp. 3d 1025, 1029–31 (N.D. Cal. 2025) (dismissing where the agreement the complaint invoked contradicted the ownership allegation); *Viral DRM LLC v. Navez*, No. 3:23-cv-6598-JSC, 2025 WL 834498, at *2 (N.D. Cal. Mar. 17, 2025) (dismissing where registration named another claimant because "[s]tatutory standing cannot be willed into existence").

Nor do the affected Plaintiffs plead beneficial ownership, an interest an author retains after transferring title in exchange for royalties. *Warren*, 328 F.3d at 1144–45. No complaint alleges such a transfer for any work in Exhibit 1, and the Court cannot supply the missing facts.

**2. Alternatively, the Registered Owners Are Necessary Parties, and Plaintiffs Must Comply with Rule 19(c)**

Even if the Plaintiffs could allege a non-futile basis for standing, the registered owners are necessary parties under Rule 19(a). If these claims proceed, the Court should order Plaintiffs to comply with Rule 19(c) by identifying the absent co-owners and "the reasons for not joining them." A party is necessary if proceeding without it would impair the absent party's ability to protect its interest or expose the defendant to a substantial risk of double or inconsistent obligations. Fed. R. Civ. P. 19(a)(1). The Copyright Act itself provides for notice to and joinder of "any person having or claiming an interest in the copyright." 17 U.S.C. § 501(b). Both grounds are met here.

First, proceeding without the registered owners exposes Anthropic to a substantial risk of double liability if they sue later. *See Shropshire v. Canning*, No. 10-cv-1941-LHK, 2011 WL 90136, at *7 (N.D. Cal. Jan. 11, 2011); *White v. Marshall*, No. 07-cv-892, 2009 WL 230096, at *3 (E.D. Wis. Jan. 30, 2009). This protects not only Anthropic but "the public in avoiding repeated lawsuits on the same essential subject matter." *CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991). The *Bartz* court eliminated this same risk by folding every owner of class works into a single class that binds "both the legal and beneficial owners." *Bartz v. Anthropic* PBC, 791 F. Supp. 3d 1038, 1052–53 (N.D. Cal. 2025). Where a work was part of that class and the Plaintiff opted it out, *see, e.g.*, Cr ¶ 16; Kw ¶ 16; Cam ¶ 15, that opt-out severed the joinder protection *Bartz* provided, and Rule 19 and Section 501(b) supply the means to reassemble it.

Second, because the registered owners hold their rights of record, proceeding without them could prejudice those rights. *See Shropshire*, 2011 WL 90136, at *7; *Taylor v. Universal Music Corp.*, No. 13-cv-6412, 2014 WL 12607685, at *4 (C.D. Cal. Mar. 10, 2014). Plaintiffs' ownership claims in some cases may conflict with the absent parties' prima facie ownership, and those parties are required to resolve any ownership conflict. *See Willis v. Elec. Arts, Inc.*, No. 08-cv-1311, 2009 WL 10710038, at *5 (D. Nev. Sept. 23, 2009).

Plaintiffs were also required to plead the identity of these interested parties and their reasons for not joining them. Fed. R. Civ. P. 19(c); *see Bickoff v. Wells Fargo Bank, N.A.*, No. 11-cv-2452, 2012 WL 3637381, at *3 (S.D. Cal. Aug. 20, 2012). None of the five complaints attempts this. The Court should order compliance. *Trinh v. Wells Fargo & Co.*, No. 3:16-cv-2985-L-BGS, 2017 WL 5548777, at *5 (S.D. Cal. Nov. 16, 2017). Other interested third parties—including co-authors and publishers listed on the registrations—raise the same questions, and the Court should order Plaintiffs to address them as part of that compliance. *See* LeGolvan Decl., Exs. 1–3.[6]

### G. Certain Works Could Not Have Been Downloaded by Anthropic Because They Were Created After the Alleged Downloads

Twenty-three asserted works were first published in August 2022 or later—after Anthropic's alleged downloads in 2021 and July 2022. LeGolvan Decl., Ex. 4. A work that did not exist when the copying took place cannot have been copied.

Infringement requires copying protected expression, which cannot occur before the work exists. Courts dismiss infringement claims on that basis. *See UAB Planner5D v. Facebook*, No. 19-cv-3132-WHO, 2020 WL 4260733, at *3 (N.D. Cal. July 24, 2020); *Oskar Sys., LLC v. Club Speed, Inc.*, 745 F. Supp. 2d 1155, 1160 (C.D. Cal. 2010); *Beijing Meishe Network Tech. Co. v. TikTok Inc.*, No. 23-cv-6012-SI, 2024 WL 1772833, at *5 (N.D. Cal. Apr. 23, 2024). The complaints allege Anthropic's last download occurred in July 2022. Cog ¶ 68; CS ¶ 66; Cr ¶ 92; Kw ¶ 98; Cam ¶ 68. These twenty-three works were each first published in August 2022 or later. Because those works were not even capable of being within any dataset, they cannot have been downloaded.

### H. Certain Plaintiffs Cannot Recover Statutory Damages or Attorneys' Fees for Direct or Contributory Copyright Infringement

No statutory damages or fees are available for the works in Exhibit 5, because those works were registered after the alleged infringement began.

[6] Anthropic continues to confer with Plaintiffs on this issue, as the Court directed at the CMC. *See* CMC Transcript at 21:13–22:7, Cam, ECF No. 225. As an alternative to notice and joinder, Anthropic has proposed that Plaintiffs disclaim damages attributable to the absent owners' revenue share. Courts have accepted that approach. *See Spatola v. Desrouleaux*, No. 23-cv-6191, 2026 WL 712576, at *3–4 (C.D. Cal. Mar. 5, 2026) (disclaimer of absent co-owners' revenue share resolved a Rule 19 necessary-party dispute); *Shropshire*, 2011 WL 90136, at *7 (suggesting the same). Plaintiffs have not responded. Absent agreement, the Court should order Plaintiffs to state—by Rule 19(c) amendment or otherwise—whether they seek damages beyond their own revenue share.

Statutory damages and fees are not allowed for "any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412(2). That turns on three dates: registration, first publication, and when infringement took place. *Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1026 (N.D. Cal. 2003). Courts resolve the question at the pleading stage where the complaint alleges when infringement began and the registration records supply the rest. *Id.*; *Becton*, 2020 WL 1877707, at *7; *Google, Inc. v. Affinity Engines, Inc.*, No. 05-cv-0598-JW, 2005 U.S. Dist. LEXIS 37369, at *17 (N.D. Cal. Aug. 12, 2005).

The complaints allege Anthropic's copying began in 2021 and 2022. Cog ¶¶ 62, 66, 68; CS ¶¶ 60, 64, 66; Cr ¶¶ 86, 90, 92; Kw ¶¶ 92, 96, 98; Cam ¶¶ 62, 66, 68. The registrations for the works in Exhibit 5 confirm registration well after those dates and outside the three-month window. LeGolvan Decl., Ex. 5. The Court should dismiss the demand for statutory damages and fees under Counts I and II as to each work in Exhibit 5.

**I. Plaintiffs' Claims Should Be Limited to Works Identified in Their Exhibits**

Plaintiffs allege infringement of a "non-exhaustive list" of registered copyrights and assert, "on information and belief," that Anthropic infringed "more works than Plaintiffs have currently identified." Cog ¶ 16; CS ¶ 16; Cr ¶ 17; Kw ¶ 17; Cam ¶ 18. That fails basic pleading requirements. *Premier Tracks, LLC v. Fox Broad. Co.*, No. 12-cv-1615, 2012 WL 13012714, at *8–9 (C.D. Cal. Dec. 18, 2012); *Bibbs v. Amazon.com, Inc.*, No. 24-cv-739, 2024 WL 4744035, at *4 (C.D. Cal. Aug. 22, 2024). The Court should limit each action to the works identified in that action's exhibit, as confirmed at the recent CMC. *See* CMC Transcript at 17:23–18:9, Cam, ECF No. 225 (declining open-ended leave to amend; "we're going to focus this case on . . . these works").

## IV. CONCLUSION

The Court should dismiss all claims as time-barred; dismiss Count I's distribution and output theories; dismiss Counts II and III entirely; dismiss the *Bartz*-released works, the works lacking standing (or order Rule 19(c) compliance), and the post-download published works, each identified in LeGolvan Decl., Exs. 7, 1–3, and 4, respectively; dismiss statutory damages and fees for the works in LeGolvan Decl., Ex. 5; and limit each action to the works identified in its exhibit.

Dated: September 24, 2026

WHITE & CASE LLP

By: *_____/s/ Yar Chaikovsky_____*
Yar Chaikovsky

Yar R. Chaikovsky
Mark Davies
Andy LeGolvan
Amir Jabbari

Attorneys for
Defendant Anthropic PBC