Elizabeth Brannen (SBN 226234)
ebrannen@stris.com
Lauren Martin (SBN 294367)
lmartin@stris.com
**STRIS & MAHER LLP**
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
T: (213) 995-6800
F: (213) 261-0299

Kyle W. Roche (*pro hac vice*)
kroche@fnf.law
**FREEDMAN NORMAND FRIEDLAND LLP**
155 E. 44th Street, Ste 915
New York, NY 10017
T: (646) 494-2900

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

CAMBRONNE INC., ET AL.,

Plaintiffs,

v.

ANTHROPIC PBC,

Defendant.

AND RELATED CASES AGAINST ANTHROPIC

Case No. 5:25-cv-10897-PCP

Related Cases:

- *Cognella Inc.*, No. 5:26-cv-04056-PCP
- *Chicken Soup for the Soul, LLC*, No. 5:26-cv-04218-PCP
- *Cruz et al.*, No. 5:26-cv-04482-PCP
- *Kwon et al.*, No. 5:26-cv-04649-PCP

**OPPOSITION TO DEFENDANT ANTHROPIC PBC'S MOTION TO STAY DISCOVERY PENDING MOTION TO DISMISS**

Hon. P. Casey Pitts

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

III. LEGAL STANDARD ........ 4

IV. ARGUMENT ........ 6

A. Anthropic has waived this issue. ........ 6

B. Anthropic cannot meet the *Realtek* test. ........ 7

1. Anthropic's challenge to third-party infringement and intent fails in the face of clearly pleaded allegations satisfying those elements. ........ 7

2. Anthropic's challenge to Plaintiffs' copyright-information-stripping claim fares even worse. ........ 9

C. Anthropic's side arguments cut the other way. ........ 11

D. Anthropic's request for relief would create more trouble and expense than it could possibly be worth. ........ 11

V. CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bartz v. Anthropic PBC*,
787 F. Supp. 3d 1007 (N.D. Cal. 2025) .......... 2, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) .......... 2

*Cox Communications, Inc. v. Sony Music Entertainment*,
607 U.S. 583 (2026) .......... 7, 8, 10, 11

*Doe 1 v. GitHub, Inc.*,
No. 24-7700, 2026 WL 2728464 (9th Cir. Sept. 16, 2026) .......... *passim*

*Entrepreneur Media, LLC v. Meta Platforms, Inc.*,
No. 25-CV-09579-VC, 2026 WL 898253 (N.D. Cal. Mar. 30, 2026) .......... 8, 9

*Flextronics AP, LLC v. Ricci*,
838 F. Supp. 3d 936 (N.D. Cal. 2026) .......... 5

*Gray v. First Winthrop Corp.*,
133 F.R.D. 39 (N.D. Cal. 1990) .......... 5

*Ingram v. W. Cap. Lending, Inc.*,
No. 22-CV-03865 BLF (NC), 2023 WL 4336694 (N.D. Cal. Apr. 28, 2023) .......... 6

*Jackson v. Laureate, Inc.*,
186 F.R.D. 605 (E.D. Cal. 1999) .......... 4, 6

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) .......... 4, 6

*Kadrey v. Meta Platforms, Inc.*,
No. 23-CV-03417-VC, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025) .......... 9

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) .......... 5

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
732 F. Supp. 3d 1101 (N.D. Cal. 2024) .......... 5, 7

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
2020 WL 2843369 (N.D. Cal. Apr. 10, 2020) .......... 5

*United States v. 1850 Bryant Land LLC*,
No. 21-CV-05742-RS, 2023 WL 4297585 (N.D. Cal. June 30, 2023) .................................... 8

**LOCAL RULES**

N.D. Cal. Civil L.R. 16-9 ........................................................................................... 3

**FEDERAL RULES**

Fed. R. Civ. P. 9(b)................................................................................................... 8

Fed. R. Civ. P. 16(b)................................................................................................. 4

## I. INTRODUCTION

On September 14, 2026, this Court entered a Case Management Order ("CMO") in this matter. The CMO was based on Anthropic's own proposal, and Anthropic stipulated to it. Among other features, this CMO opened discovery generally as to all claims and all Parties. Dkt. 227. The CMO also contemplated Anthropic's Motion to Dismiss, and set a briefing and hearing schedule for it. *Id*.

Only two weeks after the Court acted, Anthropic proposed a significant alteration to the schedule. Its counsel provided Plaintiffs' counsel with a portion of a letter brief Anthropic intended to file before Magistrate Judge Cousins, seeking a stay of discovery as to a majority of Plaintiffs' claims. *See* Exhibit A (Email from A. LeGolvan dated 9/30/26).

The Parties met and conferred. Plaintiffs did not agree to modify the CMO the Court had just entered, and Anthropic decided to proceed by Motion. The Motion to Stay Discovery provides no plausible excuse for Anthropic's failure to raise this issue at the Case Management Conference, as the Court's Standing Order provides. Anthropic vaguely suggests that a decision of the Ninth Circuit made on September 16, 2026 inspired its Motion, even though Anthropic filed a near-identical version of the same argument *in this case* a month and a half earlier. *Compare* Anthropic's Motion to Stay at 2-3 (Dkt. 232), *with* Anthropic's Motion to Dismiss filed on July 30, 2026 at 7-10 (Dkt. 212).

The Case Management Conference was the time for Anthropic to make this proposal. Its failure to do so without any plausible excuse, combined with the voluntary submission of a stipulated schedule opening discovery as to all claims and all parties should be treated as a waiver and the Court need proceed no further.

Alternatively, Anthropic's Motion fails on the merits: a "preliminary peek" at the Motion to Dismiss shows no easy way forward for any of Anthropic's arguments, and phasing discovery in the manner Anthropic suggests will result in more discovery disputes for the Court, and greater burden and expense for all of the Parties.

## II. FACTUAL BACKGROUND

Plaintiffs are the authors and publishers of copyrighted books that Anthropic pirated and copied without permission. Anthropic then kept Plaintiffs' books on file for its own purposes, without payment. Its conduct is well known in this District: "[Anthropic] stole the works for its central library by downloading them from pirated libraries." *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1029 (N.D. Cal. 2025); Amended Complaint at ¶¶ 38-59. Anthropic intended to keep the copies it obtained "forever." *Bartz,* 787 F. Supp. 3d at 1014; Amended Complaint at ¶ 74.

Anthropic accomplished its theft of Plaintiffs' books in part through peer-to-peer file exchange programs. *See e.g.*, Amended Complaint at ¶¶ 59, 81, 97-98; *Bartz,* 787 F. Supp. 3d at 1014. As Judge Alsup explained: "[f]rom the start, Anthropic 'ha[d] many places from which' it could have purchased books, but *it preferred to steal them* to avoid 'legal/practice/business slog,' as cofounder and chief executive officer Dario Amodei put it[.]" *Bartz,* 787 F. Supp. 3d at 1015 (emphasis supplied); Amended Complaint at ¶ 97 ("Defendant knowingly participated in peer-to-peer sharing networks that it knew trafficked in pirated copies of copyrighted materials . . . By participating in these networks and by further uploading and distributing Plaintiffs' copyrighted works, Defendant materially contributed to and induced further infringement of Plaintiffs' works."). Peer-to-peer programs work by allowing users to trade material one has for what others have in a distributed network. Amended Complaint at ¶¶ 5-7, 59, 96-98; *see also, e.g.*, *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1025-28 (9th Cir. 2013).

Anthropic, knowing its conduct was unlawful, endeavored to conceal it. Amended Complaint at ¶¶ 8, 72, 90, 105. As part of its scheme to keep the Plaintiffs' books "forever," Anthropic modified them, stripping out the copyright management information ("CMI") contained within the text of the books. Am. Compl. ¶¶ 8, 70, 71, 72. On other occasions, it obtained copies already stripped of CMI. The removal of CMI was part and parcel of Anthropic's willful infringement of Plaintiff's copyrights.

This is by no means an exhaustive catalog of Anthropic's wrongful conduct toward the Plaintiffs, but it suffices for purposes of the present Motion.

Based in part on the above, Plaintiffs filed this case in December of 2025. After various proceedings not directly relevant here, Anthropic filed a Motion to Dismiss in July of 2026. Dkt. 212. In due course, the Court set a Case Management Conference, triggering a series of procedures whereby the Court allowed the Parties to have detailed input into the scheduling and management of the case. These procedures require the Parties to submit a Joint Case Management Statement, which they did on August 27, 2026.

Anthropic included in the Joint Statement a proposed schedule and several pages of discussion about discovery, but nowhere in its portion of the Joint Statement did Anthropic propose any stay of discovery as to Counts II or III, or any stay of discovery at all. To the contrary, Anthropic suggested discovery open generally, as to all claims and all Parties, as of August 13, 2026, and close as to fact discovery on May 13, 2027. Dkt. 219 at 23.

The Northern District's Standing Order requires the Parties meaningfully to participate in the Case Management process, including identifying anticipated motions and the scope of discovery. *See* Standing Order for All Judges of the Northern District of California on the Contents of Joint Case Management Statement at para. 4 ("any anticipated motions"), para. 8 ("the scope of anticipated discovery"); N.D. Cal. Civil L.R. 16-9. Not only did Anthropic propose that discovery proceed in the Joint Statement, it did not even identify that it *anticipated* seeking a stay. Dkt. 219 at 7-8.

The Court held its Case Management Conference on September 3, 2026, and asked the Parties to meet and confer regarding *Anthropic's* suggested case schedule. Transcript of 9/3/26 CMC at 11, 18. Again, Anthropic made no suggestion that any category of discovery be stayed, or phased, or otherwise limited. The Parties submitted a joint schedule by stipulation. Dkt. 226. The Court adopted substantially all of the dates Anthropic had proposed and entered the current Case Management Order. Dkt. 227.

About two weeks later, on September 30, 2026 Anthropic emailed Plaintiffs' counsel a completed letter brief for the Magistrate Judge, seeking the stay it requests now by Motion. Counsel met and conferred, and after Plaintiffs submitted their half of the letter brief back to Anthropic for filing, Anthropic then changed course and filed this Motion. Although the Motion to Stay mentions

a Ninth Circuit decision that was handed down after the CMC (*GitHub*, *infra*), its attack on the Plaintiffs' copyright-information-removal claim is substantively identical to the one in Anthropic's July, 2026, version of its Motion to Dismiss.

Plaintiffs oppose the relief Anthropic requests since Anthropic failed to raise it at any of the numerous opportunities the Court provided prior to the entry of the CMO. Moreover, Anthropic cannot meet the standard required by the "preliminary peek" test, so its Motion should be denied on the merits in the event the Court reaches them. Finally, the stay Anthropic claims to seek, from December 17, 2026, until the time the Court rules on its Motion to Dismiss, is tailor-made to create unnecessary discovery disputes about the scope of the stay, arguments over whether certain depositions, or written discovery requests, cover one aspect of the case or the other, and it will waste more of the Court's and the Parties' time than could ever be saved by imposing the stay.

## III. LEGAL STANDARD

Anthropic's Motion seeks a modification of the CMO and such a modification is available only for good cause. Fed. R. Civ. P. 16(b). Good cause "primarily considers the diligence of the party" and "if the party was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "Central to this required showing of diligence is whether the movant discharged her obligation under Rule 16 to collaborate with the district court in managing the case." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999). "If Plaintiff was aware of those circumstances when she submitted her status report and yet said nothing about them, then such an omission would not be 'compatible with a finding of diligence.'" *Jackson,* 186 F.R.D. at 608 (internal cite omitted). Anthropic's failure to raise even the idea of a partial discovery stay at any of the many earlier opportunities, without excuse, thus resolves this Motion at step one.[1]

Only if Anthropic had satisfactorily explained why it omitted this issue from the Joint Case Management Statement, the Case Management Conference, and the stipulated schedule, should the Court even reach the Rule 26 and Rule 12 analysis Anthropic cites about whether a discovery stay

---

[1] Because this showing is Anthropic's burden and because it knew Plaintiffs challenged it from the letter-brief process described above, Anthropic should be precluded from attempting to meet it in the first instance in a reply brief.

is proper pending disposition of a motion to dismiss. This analysis requires a "strong showing" by the moving party and not simply assertions that dismissal will be granted or that discovery will be a waste:

> The district court has considerable latitude under Fed.R.Civ.Pro. 26(c) to craft protective orders during discovery. Such orders are only appropriate, however, upon a showing of "good cause" by the party seeking the order. *Id.* A party seeking a stay of discovery carries the heavy burden of making a "strong showing" why discovery should be denied. *Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir.1975). The moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements. *See* Wright & Miller, *Federal Practice and Procedure* § 2035; A.W. Tashima & J. Wagstaffe, *Federal Civil Procedure Before Trial* § 11:88.

*Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). To determine whether a "strong showing" has been made, courts first examine whether a motion to dismiss is potentially dispositive of the entire case, or at least an entire issue, and whether the motion can be decided without discovery. "In applying this two-factor test, the court must take a preliminary peek at the merits of the pending motion to assess whether a stay is warranted." *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1118 (N.D. Cal. 2024) (*citing*, *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 2020 WL 2843369 (N.D. Cal. Apr. 10, 2020)).

The showing required under *Realtek* is in turn governed by the pleading standard itself. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Flextronics AP, LLC v. Ricci*, 838 F. Supp. 3d 936, 947 (N.D. Cal. 2026).

Anthropic cannot meet these standards for some of the same reasons its Motion to Dismiss should not be well-taken, including the presence of allegations in the Complaint that Anthropic ignored in moving to dismiss, substantial in-District authority disposing of its main arguments, and other case law establishing the sufficiency of the Amended Complaint.

## IV. ARGUMENT

### A. Anthropic has waived this issue.

Anthropic's Motion ignores the Court's case management process. Anthropic never explains why it failed to raise this issue earlier. It simply pretends it did not propose a schedule opening discovery generally and stipulate to that schedule's entry, before suddenly reversing course and filing this Motion just a few weeks later.

The first step for Anthropic in making this Motion is to satisfy Rule 16's requirement of good cause and that means showing diligence in raising the issue at the first opportunity. *Johnson*, 975 F.2d at 609. Here, Anthropic had the case for ten months, including two specific points at which the Court's orders *required* this issue to be raised, if it could be anticipated, and Anthropic didn't do it.

"If [a litigant] was aware of those circumstances when she submitted her status report and yet said nothing about them, then such an omission would not be 'compatible with a finding of diligence.'" *Jackson,* 186 F.R.D. at 608 (internal cite omitted). The only hint of cause Anthropic offers (and it is just a hint, not any argument) is mentioning that the *GitHub* case came down after the CMC; but that case is not about discovery stays, it is about the substantive argument Anthropic is making about CMI removal – an argument that has remained the same since its July motion-to-dismiss filing. *GitHub* did not precipitate this Motion. *Cf.* Dkt. 228 at 4 and Dkt. 212 at 3 (substantively identical arguments on CMI removal being made both before and after *GitHub*).

Courts in this District enforce the *Johnson* rule straightforwardly. For example, in *Ingram v. W. Cap. Lending, Inc.*, No. 22-CV-03865 BLF (NC), 2023 WL 4336694, at *1 (N.D. Cal. Apr. 28, 2023), a request was made after the entry of a CMO to stay discovery on certain claims, and the court responded: "[t]hat ship has sailed. The parties presented their joint case management plan on October 17, 2022. ECF 16. West Capital did not request, and the Court did not grant, bifurcation or a stay of class discovery. Discovery is open and to the extent West Capital argues that all class discovery is premature, the objection is overruled." *Id.*

The failure to raise this issue in a timely fashion and when required to do so by court rules and orders is "not compatible with a finding of diligence" and therefore, "the inquiry should end." *Jackson,* 186 F.R.D. at 608, *Johnson*, , 975 F.2d at 609.

### B. Anthropic cannot meet the *Realtek* test.

Anthropic's Motion to Dismiss lacks the qualities required to justify a stay under the governing standard. First, it does not read Plaintiffs' Amended Complaint properly under the Rule 12 standard. Anthropic repeatedly treats one paragraph on a topic as though it is the only paragraph on that topic, to suggest that something has not been alleged. Plaintiffs can easily point to the supposedly omitted allegations. Second, Anthropic over-reads various cases, like *Cox* and *GitHub*, that are readily distinguishable from its deliberate violation of myriad copyrights to avoid costs and increase profits. Third, other courts including in this District have correctly rejected Anthropic's arguments; it simply cannot make a "strong showing" that its Motion to Dismiss is likely to succeed.

#### 1. Anthropic's challenge to third-party infringement and intent fails in the face of clearly pleaded allegations satisfying those elements.

For its headline challenge, Anthropic selects an inapposite case, *Cox Communications, Inc. v. Sony Music Entertainment*, 607 U.S. 583 (2026), and argues that Plaintiffs have failed to plead Anthropic's intent to bring about infringement.[2] *Cox* is a case about the derivative liability of an entire internet service provider with millions of customers for infringing actions by a small group of them. The Court can see at a glance that the *Cox* scenario has nothing to do with this case. The summary by Justice Thomas makes this clear on page one of the opinion: "[u]nder our precedents, a company is not liable as a copyright infringer for merely providing a service to the general public with knowledge that it will be used by some to infringe copyrights." *Cox,* 607 U.S. at 587.

Anthropic's conduct here is of a wholly different character. Not only was Anthropic itself infringing, it participated directly, willfully, and for profit, in the infringement of its peer-to-peer

[2] Because this analysis is provided for the "preliminary peek" test, Plaintiffs will analyze the authorities and arguments Anthropic chose to include in its Motion to Stay as the ones it relies on to satisfy that standard. Plaintiffs take this approach to prevent the preliminary peek from turning into full, premature briefing and argument on the Motion to Dismiss.

partners. Amended Complaint at ¶¶ 5-7, 59, 81, 97 (alleging in part that "Defendant knowingly participated in peer-to-peer sharing networks that it knew trafficked in pirated copies of copyrighted materials . . . [t]here was no substantial or commercially significant non-infringing use of the copyrighted materials that Anthropic uploaded and distributed."), 98. *Cox* was about an ISP with no knowledge of what users were doing with their connections, whereas in this case, "Anthropic's own Archive Team had described the shadow libraries it torrented from as a 'blatant violation of copyright.' Yet Anthropic proceeded, choosing torrenting over purchasing or licensing the copyrighted materials." Amended Complaint at ¶ 67. Anthropic did not supply the service that third parties used to commit the infringement, as the ISP did in *Cox*; rather, it *was* a third-party infringer, using existing torrenting clients to share pirated materials with its peers in the torrenting swarm.

Courts in this District have correctly rejected Anthropic's lead argument. Judge Chhabria examined a similar claim by Meta and rejected it decisively: "[b]ut here, Entrepreneur alleges that Meta used torrenting networks to obtain copyrighted works, and that the process of doing so necessarily required Meta to upload those works onto the torrenting network, thus enabling copyright infringement of the works by third parties. Meta argues that this is not enough because the complaint does not contain details establishing that Entrepreneur's works were part of the uploaded materials or that any third parties downloaded those works. But those are reasonable inferences that follow from the allegations in the complaint." *Entrepreneur Media, LLC v. Meta Platforms, Inc.*, No. 25-CV-09579-VC, 2026 WL 898253, at *1 (N.D. Cal. Mar. 30, 2026).

Anthropic also attacks scienter, but that may be pleaded generally and Plaintiffs' allegations here more than satisfy that standard. *See* Fed. R. Civ. P. 9(b); *United States v. 1850 Bryant Land LLC*, No. 21-CV-05742-RS, 2023 WL 4297585, at *4 (N.D. Cal. June 30, 2023); Amended Complaint at ¶¶ 5-8, 90, 96-98.[3] The Court likewise rejected a similar challenge in *Entrepreneur*:

[3] Even though Anthropic's Motion to Dismiss denies obtaining copies of certain of Plaintiffs works at all, it conspicuously fails to deny its reuploading and torrenting of copyrighted books in general. When the meet and confer on the letter brief occurred, Plaintiffs counsel asked if Anthropic would agree to targeted, inexpensive preliminary discovery on whether the reuploading, distribution and CMI conduct occurred, and Anthropic demurred, preferring to seek to prevent any discovery.

"the general *scienter* requirement for contributory liability—that is, the standard that applies when the *Sony* defense is not applicable—is 'that the secondary infringer know or have reason to know of direct infringement.' [*Napster*] at 1020 (citation modified). That standard is satisfied by Entrepreneur's allegations that Meta deliberately downloaded copyrighted works using BitTorrent, which users know requires uploading the works to the torrenting network, and that Meta knew or had reason to know that members of the network were infringing as a result." *Entrepreneur* at *1.

Anthropic's rehash of Meta's unsuccessful motion practice in *Entrepreneur*, and its pretense that peer-to-peer file sharing services like BitTorrent are mysterious novelties requiring copious explanation – more than two decades after *Napster* – is a dog that won't hunt. That is especially so in light of *Bartz*, *Entrepreneur*, and the Amended Complaint's clear allegations. On this key claim, the "preliminary peek" warrants denial of both Anthropic motions.

### 2. Anthropic's challenge to Plaintiffs' copyright-information-stripping claim fares even worse.

Here Anthropic attempts to take some advantage of the magnitude and diversity of its wrongful conduct. Anthropic copied so much copyrighted material that it came in different forms. As alleged in the Amended Complaint at ¶ 71, some "datasets" (large collections of pirated material used for training) that Anthropic obtained had already had certain CMI stripped out of them.[4] Anthropic, characteristically, treats this as the only allegation regarding CMI stripping. Motion to Stay at 5; Motion to Dismiss at 17. But it is not. Plaintiff also alleges that Anthropic *itself* stripped such information from Plaintiffs' works, Amended Complaint at ¶ 72, and made sure not to train Claude on CMI, in the hopes that it would not return any copyright management information in results. ¶ 8, 70, 72, 105.

CMI-stripping liability would attach to Anthropic whether or not some of the copies it obtained via piracy or torrenting had that information already stripped out, and of course the CMI-stripping claim applies to all the books obtained by scanning and used to train. Anthropic's Motion

[4] This gives rise to liability under 17 U.S.C. § 1202(b)(3) in any event.

has nothing going here – just a fragment of a paragraph it takes out of context in the hope that no one will look anywhere else in the Amended Complaint.

Anthropic is also just wrong that Plaintiffs have pleaded no concrete injury. Its theory has already been rejected in this District, this time just last year in *Kadrey v. Meta Platforms, Inc.*:

> The plaintiffs have alleged a sufficient injury for Article III standing. Although "the specific right created by the DMCA may be comparatively new," Meta's removal of copyright management information is an interference with a property right that is closely related to the "kind of property-based harms traditionally actionable in copyright." *Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 27 (S.D.N.Y. 2025). But see *Raw Story Media, Inc. v. OpenAI, Inc.*, 756 F. Supp. 3d 1, 5-6 (S.D.N.Y. 2024). The removal of CMI is thus a concrete injury for standing purposes.

No. 23-CV-03417-VC, 2025 WL 744032, at *1 (N.D. Cal. Mar. 7, 2025).

Anthropic follows this up with its contention that (having stripped out the CMI in training) Claude now does not generate responses that contain CMI, and therefore (!) Claude's responses have no CMI to remove, so Anthropic doesn't do that. Motion to Stay at 5. Plaintiffs' CMI-stripping claim does not depend on the responses Claude gives in response to queries, as the above discussion makes clear, and this circular argument falls far short of the "strong showing" required.

Finally, *GitHub*, like *Cox*, does not help Anthropic. It was a case about a highly specific claim by programmers that Copilot was reproducing their copyrighted computer code almost verbatim but without its CMI.[5] As is clear by now, the heart of Plaintiffs CMI removal claim differs and occurred at earlier stages of Claude's creation, so *GitHub* cannot help Anthropic. Anthropic

[5] "Plaintiffs' DMCA claim rests on their allegation that Copilot will sometimes produce "identical copies of code Copilot was trained on," a possibility that "is only increasing as the model scales." The operative complaint includes examples of cases in which Copilot reproduced "essentially verbatim" copies of code written by the proposed class representatives. Plaintiffs allege that when "Copilot reproduces code from its training materials, it does not include the attribution, copyright notices, or other license terms that were included with the code when it was published on GitHub. Plaintiffs claim that this omission violates section 1202(b) of the DMCA." *Doe 1 v. GitHub, Inc.*, No. 24-7700, 2026 WL 2728464, at *2 (9th Cir. Sept. 16, 2026). Notably, the court did not consider the plaintiffs' "input theory," *i.e.*, that "defendants violated section 1202(b)(1) at the training stage by removing CMI from putative class members' code before feeding the stripped code into Copilot as training data," because "plaintiffs forfeited it." *Id.* at *3.

distributed copyright-stripped material in violation of 1202(b)(3) in some cases, and removed it itself, in violation of 1202(b)(1), in others. Neither action was at issue in *GitHub*, but, incidentally, *GitHub* did find that removal of CMI *was* sufficient for standing at the Motion to Dismiss stage, which Anthropic does not mention. *Id*. at *4-5; *cf*. Amended Complaint at ¶¶ 8, 70, 72, 105.

And that's it. The Motion to Stay delves no further than these few points into Anthropic's Motion to Dismiss, though it calls them "numerous." Motion to Stay at 5. The arguments have correctly failed already. Neither *Cox* nor *GitHub* have changed anything significant. Anthropic's supposed strong showing isn't worth the preliminary peek.

### C. Anthropic's side arguments cut the other way.

First, Anthropic mentions in passing that it might have distributed insubstantial amounts of certain works. This is an unsubstantiated claim at variance with the allegations, and as such it calls for the very discovery Anthropic asks to stay. Amended Complaint at *e.g.* ¶¶ 61, 65-69.

Finally, Anthropic's last point is that discovery on its reuploading and distribution of Plaintiffs' copyrighted material would be a lot of work. About that, Anthropic says this:

> [f]or each work, BitTorrent discovery would require technical configuration analysis, and tracing any alleged uploads of file pieces from 2021 and 2022 and assessing whether the pieces uploaded were "substantial." *See* MTD at 2, 10, 13–14. That means subpoenas to nonparty BitTorrent users and forensic expert analysis. CMI discovery would require a similar work-by-work inquiry into whether each downloaded copy carried CMI, whether, when, and by whom that CMI was removed, and how each work was prepared for training, tool by tool.

Motion to Stay at 6. All of this would of course be false in the world where Anthropic *didn't do these things*. But we live in this world, where Plaintiffs have not only alleged that Anthropic did them, Anthropic actually did do them, courts in this District have so found, and now here, Anthropic all but admits doing it, while asking the Court to prevent discovery about it.

### D. Anthropic's request for relief would create more trouble and expense than it could possibly be worth.

Anthropic's requested stay from December 17, 2026 to the day this Court decides the Motion to Dismiss makes no practical sense. Motion to Stay at 7. It would provoke arguments about whether discovery requests pertain to the stayed issues, or others as well; it would delay document production

and set up potential repeat depositions of witnesses who could speak to stayed and unstayed issues; and it would cram what Anthropic admits will be challenging and time-consuming discovery into a couple of months instead of the nine-month period the Court ordered, which is enough, but still ambitious, for complex litigation such as this case.

## V. CONCLUSION

Anthropic fails to meet the applicable standards for obtaining relief. It cannot explain why it did not raise the issue at the proper time, or why the Court and the Parties should reverse course so soon after the stipulated schedule was ordered. On a "preliminary peek," the Motion to Dismiss comes nowhere near the required "strong showing." The stay suggested would be impractical and unhelpful in any case.

Plaintiffs respectfully ask the Court to deny the Motion.

DATED: November 2, 2026

*/s/ Elizabeth Brannen*

**STRIS & MAHER LLP**
Elizabeth Brannen (SBN 226234)
ebrannen@stris.com
Lauren Martin (SBN 294367)
lmartin@stris.com
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
T: (213) 995-6800
F: (213) 261-0299

**FREEDMAN NORMAND FRIEDLAND LLP**
Kyle W. Roche (*pro hac vice*)
kroche@fnf.law
155 E. 44th Street, Ste 915
New York, NY 10017
T: (646) 494-2900

*Attorneys for Plaintiffs*