**WHITE & CASE LLP**
YAR R. CHAIKOVSKY (CA 175421)
yar.chaikovsky@whitecase.com
ANDY LEGOLVAN (CA 292520)
andy.legolvan@whitecase.com
AMIR JABBARI (CA 339097)
amir.jabbari@whitecase.com
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

MARK DAVIES (*pro hac vice*)
mark.davies@whitecase.com
701 13th St NW # 600
Washington, DC 2005-3807
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

Attorneys for
Defendant Anthropic PBC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

CAMBRONNE, INC., ET AL.,
Plaintiffs,

v.

ANTHROPIC PBC,

Defendant.

AND RELATED CASES AGAINST ANTHROPIC.

Case Nos. 5:25-cv-10897-PCP

Related Cases:

- *Cognella Inc.*, No. 5:26-cv-4056-PCP
- *Chicken Soup for the Soul, LLC*, No. 5:26-cv-4218-PCP
- *Cruz et al.*, No. 5:26-cv-4482-PCP
- *Kwon et al.*, No. 5:26-cv-4649-PCP

**DEFENDANT ANTHROPIC PBC'S REPLY IN SUPPORT OF ITS MOTION TO STAY DISCOVERY PENDING MOTION TO DISMISS**

Judge: Hon. P. Casey Pitts

# TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. The Motion to Dismiss Would Dispose of the Stayed Theories Without Discovery. .......... 1

1. The distribution theory fails for lack of volitional conduct. .......... 2

2. Count II fails because Plaintiffs cannot plausibly allege intent. .......... 3

3. Count III fails because removing CMI from private training copies does not enable or conceal infringement. .......... 4

4. Amendment is unlikely to cure these defects. .......... 5

B. Anthropic Did Not Waive the Stay. .......... 6

1. Rule 16(b) governs scheduling-order deadlines, and the stay changes none. .......... 6

2. Anthropic followed the procedure this Court prescribed, and did so promptly. .......... 6

C. The Stay Is Narrow, Workable, and Fair. .......... 7

1. Download discovery and the stayed discovery are distinguishable. .......... 7

2. The burden is apparent, and Plaintiffs do not dispute it. .......... 8

III. CONCLUSION .......... 9

## TABLE OF AUTHORITIES


Page(s)

**FEDERAL CASES**

*Chicken Soup for the Soul, LLC v. Meta Platforms Inc.*, No. 26-cv-2333-VC (TSH), 2026 WL 2668437 (N.D. Cal. Sept. 10, 2026) ... 8

*Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. 583 (2026) ... 3, 4

*Doe 1 v. GitHub, Inc.*, No. 24-7700, 2026 WL 2728464 (9th Cir. Sept. 16, 2026) ... 5

*Entrepreneur Media, LLC v. Meta Platforms, Inc.*, No. 25-cv-9579-VC, 2026 WL 898253 (N.D. Cal. Mar. 30, 2026) ... 3

*Gray v. First Winthrop Corp.*, 133 F.R.D. 39 (N.D. Cal. 1990) ... 2, 8

*Ingram v. W. Capital Lending, Inc.*, No. 22-cv-3865-BLF (NC), 2023 WL 4336694 (N.D. Cal. Apr. 28, 2023) ... 6

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605 (E.D. Cal. 1999) ... 6

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) ... 6, 7

*Kadrey v. Meta Platforms, Inc.*, No. 23-cv-3417-VC, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025) ... 4

*Pereda v. Gen. Motors LLC*, No. 21-cv-6338-JST, 2022 WL 19692037 (N.D. Cal. Mar. 15, 2022) ... 2, 8

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) ... 2

*Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101 (N.D. Cal. 2024) ... 2, 5, 6, 8

*Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir. 1987) ... 8

*Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194 (9th Cir. 1998) ... 5

*Stevens v. CoreLogic, Inc.*, 899 F.3d 666 (9th Cir. 2018) ... 4

## FEDERAL STATUTES

17 U.S.C. § 1202(b) .......................................................... 4, 5

## FEDERAL RULES

Fed. R. Civ. P. 12 .......................................................... 5, 9

Fed. R. Civ. P. 16(b) .......................................................... 6, 7

Fed. R. Civ. P. 26(c)(1) .......................................................... 2, 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Anthropic seeks a narrow stay. It asks to defer discovery on two theories challenged in its pending motion to dismiss: that Anthropic's BitTorrent clients uploaded pieces of Plaintiffs' works to other BitTorrent users (Counts I and II), and that Anthropic removed copyright management information (CMI) from those works (Count III). Discovery on Plaintiffs' core claim, that Anthropic reproduced by downloading their works, would proceed in full. Deferring the remaining discovery would cost Plaintiffs little, whereas pursuing it now would impose a substantial burden that would be wasted if those theories are dismissed. The stay is warranted for three reasons.

*First*, each stayed theory fails for a legal defect discovery cannot cure. The complaints attribute any upload to BitTorrent's automatic response to other users' requests, not a volitional act by Anthropic. Plaintiffs do not respond to that argument. The complaints also allege that Anthropic downloaded books for its own training, not to encourage anyone else's infringement. That allegation defeats the intent contributory liability requires. And they allege that Anthropic removed CMI to prepare training data, not to enable or conceal infringement. Because Plaintiffs no longer rely on Claude's outputs, removing CMI from copies in a private training corpus could not conceal infringement from anyone. Plaintiffs' requested discovery would not change the result.

*Second*, Anthropic did not waive the stay. The stay changes no deadline in the case management order. Anthropic brought this motion just four days after the Court directed that any request to stay discovery be brought by noticed motion.

*Third*, the stay is workable, and Plaintiffs do not dispute the burden it avoids. The stayed discovery would require subpoenas to nonparty BitTorrent users and forensic reconstruction of activity from 2021 and 2022. Download discovery continues in the meantime, and the stay lasts only until the pleadings settle.

## II. ARGUMENT

### A. The Motion to Dismiss Would Dispose of the Stayed Theories Without Discovery.

The standard is good cause under Rule 26(c). Fed. R. Civ. P. 26(c)(1). Courts in this District find good cause to stay discovery pending a motion to dismiss when the motion is "potentially

dispositive of the entire case, or at least dispositive on the issue at which discovery is directed," and "can be decided absent additional discovery." *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1117–18 (N.D. Cal. 2024) (cleaned up). This Court has explained how it applies that test: If "it's likely that there's no possibility" Plaintiffs can state a valid claim, the Court "will probably grant" the stay. *Shakespeare* CMC Tr. 10:12–20.

Anthropic meets that standard. If granted, the motion would dispose of Counts II and III and Count I's distribution theory, which are the targets of the stayed discovery. ECF No. 228 ("MTD") 25; ECF No. 232 ("Mot.") 4. The motion rests on the complaints alone, so no discovery is needed to decide it. *Pereda v. Gen. Motors LLC*, No. 21-cv-6338-JST, 2022 WL 19692037, at *2 (N.D. Cal. Mar. 15, 2022) ("[f]urther discovery is not required to answer" whether a complaint plausibly alleges a claim). Plaintiffs contest neither point. They argue only that the motion will fail. ECF No. 233 ("Opp.") 7–11. Each stayed theory fails for a reason that turns on what the complaints affirmatively allege, so neither discovery nor amendment is likely to cure it.

Plaintiffs' "strong showing" language does not change that standard. Opp. 5. *Realtek* quotes the same language from *Gray* and applies the two-part test. 732 F. Supp. 3d at 1117–18. *Gray* is distinguishable. The defendants there sought to stay all discovery pending motions to dismiss, "some of which [were] yet to be filed," and offered only "unsubstantiated" predictions of dismissal. *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). Anthropic seeks a stay limited to two theories, tied to a filed motion that identifies specific legal defects.

**1. The distribution theory fails for lack of volitional conduct.**

Direct infringement requires that the defendant proximately cause the infringing act. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 669–70 (9th Cir. 2017) (affirming dismissal where "distribution happen[ed] automatically"); MTD 9. The complaints attribute any upload to two forces outside Anthropic's control: BitTorrent software "configured by default to reupload pieces," and other users' requests. Cambronne Second Am. Compl. ("Cam") ¶¶ 5, 59; MTD 9–10. A defendant does not cause a transmission that software makes automatically at another user's request, and courts have resolved that question on the pleadings. MTD 9–10. Plaintiffs do not respond to this argument. *See* Opp. 7–11.

Nor would Plaintiffs' requested discovery establish volition. Their requests seek client settings, configuration files, network records, and each occasion on which any part of a work was transferred. Mot. 2–3 n.1. That discovery could show whether uploads occurred and how much was sent, but not that Anthropic caused them. Even a client configured to upload sends a piece only when another user requests it. MTD 10 & n.4. Plaintiffs say that the size of any uploaded pieces "calls for the very discovery Anthropic asks to stay." Opp. 11. But volition does not depend on how much was sent. Because volition alone disposes of the distribution theory, the Court need not reach the motion's other distribution arguments.

**2. Count II fails because Plaintiffs cannot plausibly allege intent.**

Contributory intent "can be shown only if the party induced the infringement or the provided service is tailored to that infringement." *Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. 583, 593 (2026). Anthropic provided no service, so the only path is inducement. MTD 14. The complaints allege that Anthropic intended to acquire books and use them for its own training. Cam ¶¶ 62, 66, 68. They identify no promotion, instruction, or other act directed at any BitTorrent user. MTD 14. Those allegations do not plausibly suggest that Anthropic intended the results of automated software functions triggered by other users. And a theory that Anthropic should have changed the default settings is foreclosed. "[A] court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement." *Cox*, 607 U.S. at 594.

Plaintiffs' only authority applies a different standard. They rely on *Entrepreneur*, which held that contributory scienter requires only that the defendant "know or have reason to know of direct infringement." Opp. 9 (quoting *Entrepreneur Media, LLC v. Meta Platforms, Inc.*, No. 25-cv-9579-VC, 2026 WL 898253, at *1 (N.D. Cal. Mar. 30, 2026)). *Entrepreneur* issued five days after *Cox* and does not cite it. *Cox* holds that "mere knowledge that a service will be used to infringe is insufficient." 607 U.S. at 594. Plaintiffs allege that Anthropic "knew that others on these networks were infringing copyrighted materials." Cam ¶ 97. Under *Cox*, that is not enough.

Plaintiffs also argue that *Cox* concerns service providers, and that Anthropic was itself "a third-party infringer." Opp. 8. But if Anthropic provided no service, inducement is the only remaining path to intent. Inducement requires that Anthropic have "actively encourage[d]

infringement through specific acts." *Cox*, 607 U.S. at 593; MTD 14. Plaintiffs identify no such act. What they describe is Anthropic's own downloading, which is the subject of the reproduction claim that Anthropic has not sought to stay. Plaintiffs' requests for settings and logs would show how Anthropic's clients operated, not that Anthropic encouraged anyone else's infringement.

**3. Count III fails because removing CMI from private training copies does not enable or conceal infringement.**

Section 1202(b) requires that the defendant know, or have reasonable grounds to know, that removing CMI "will induce, enable, facilitate, or conceal" infringement. 17 U.S.C. § 1202(b). That requirement calls for specific allegations about how identifiable infringements will be affected. *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018). The complaints allege that Anthropic removed CMI "to . . . create high-quality LLM training data." Cam ¶ 104.

*Kadrey*, on which Plaintiffs rely, held that this purpose does not show that removal would enable or facilitate infringement. "[T]hat removing CMI might make the [] books work better as training data does not mean that removing CMI made it easier . . . to commit copyright infringement." *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-3417-VC, 2025 WL 744032, at *1 (N.D. Cal. Mar. 7, 2025). The claim in *Kadrey* proceeded only on a concealment theory, because the plaintiffs alleged that Llama was "prone" to outputting CMI. *Id.* at *2. Plaintiffs here have disclaimed that theory: they say their CMI claim "does not depend on the responses Claude gives in response to queries." Opp. 10.

Without outputs, removing CMI from copies in a nonpublic training corpus conceals nothing from anyone. MTD 20. The complaints themselves allege that Anthropic kept "the composition of its training datasets" private. Cam ¶ 90. Plaintiffs elsewhere suggest that Anthropic removed CMI "in the hopes that it would not return any copyright management information in results." Opp. 9. That is an output theory, and Plaintiffs identify no output of any Plaintiff's work. MTD 16, 19.

The second scienter element therefore turns on the complaints alone. Plaintiffs' own allegations supply the purpose of the removal and place the resulting copies in a private corpus. With outputs disclaimed, Plaintiffs identify no infringement the removal could enable or conceal.

MTD 19–20. Courts in this District have dismissed § 1202(b) claims at the pleading stage on allegations like these. MTD 20 (collecting cases). Discovery into which works carried CMI, and how and when it was removed, would not supply that missing infringement. Mot. 3 n.1 (Interrogatory No. 6).

Nor can Plaintiffs rely on theories that appear only in their brief. They now invoke § 1202(b)(3), but Count III is pleaded under § 1202(b)(1) alone. Opp. 9 n.4, 11; ECF No. 201 at 27. They also argue that the claim "applies to all the books obtained by scanning." Opp. 9. The complaints allege removal "[u]pon downloading," and their scanning allegations say nothing about CMI. Cam ¶¶ 73, 103. A court deciding a Rule 12(b)(6) motion "may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Section 1202(b)(3) carries the same scienter requirement regardless. 17 U.S.C. § 1202(b).

Finally, Plaintiffs argue that *GitHub* found CMI removal "sufficient for standing." Opp. 11. It did not. *GitHub* found standing only because the plaintiffs alleged "examples of cases in which Copilot reproduced portions of the named plaintiffs' code verbatim" and "without attribution." *Doe 1 v. GitHub, Inc.*, No. 24-7700, 2026 WL 2728464, at *4–5 (9th Cir. Sept. 16, 2026). Plaintiffs, who now disclaim reliance on outputs, allege nothing comparable. MTD 16.

**4. Amendment is unlikely to cure these defects.**

Each defect arises from what the complaints affirmatively allege: that BitTorrent software uploaded automatically at other users' requests, that Anthropic downloaded books for its own training, and that it removed CMI to prepare training data. Additional facts about transfers, settings, or tools would not change those allegations. *Cambronne* is already on its third complaint. ECF No. 201. And the requested stay accounts for any amendment, as it would run through Anthropic's answer to an amended complaint. Mot. 7. This Court similarly stayed discovery in *Realtek*, finding that "it is possible that Realtek may not be able to [state a valid claim] in any amended complaint," without requiring certainty that amendment would fail. 732 F. Supp. 3d at 1118.

**B. Anthropic Did Not Waive the Stay.**

**1. Rule 16(b) governs scheduling-order deadlines, and the stay changes none.**

Plaintiffs argue that the stay is a "modification of the CMO" requiring good cause, and that Anthropic waived it by not raising it at the case management conference. Opp. 4, 6–7. Their authorities concern parties who sought to amend their pleadings after the scheduling-order deadline had passed. In *Johnson*, the plaintiff moved to add a defendant four months after the joinder deadline. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 606–08 (9th Cir. 1992). *Jackson* applied the same rule to a motion to amend filed after the amendment deadline. *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 606–08 (E.D. Cal. 1999). In both, Rule 16(b) governed because a deadline had passed.

Anthropic missed no deadline and asks the Court to change none. Fact discovery would still close on May 13, 2027. ECF No. 227 at 1. Rule 26(c), not Rule 16(b), governs a request to stay discovery. Fed. R. Civ. P. 26(c)(1); *Realtek*, 732 F. Supp. 3d at 1117–18 (applying Rule 26(c) good cause to a stay pending a motion to dismiss).

Plaintiffs rely on *Ingram* for the proposition that a stay not requested in the joint case management plan comes too late. Opp. 6 (citing *Ingram v. W. Cap. Lending, Inc.*, No. 22-cv-3865-BLF (NC), 2023 WL 4336694, at *1 (N.D. Cal. Apr. 28, 2023)). But no dispositive motion was pending there, and the defendant had filed no motion to stay; instead, it had objected and refused the discovery, and in a joint discovery letter argued "all class discovery is premature." *Id.* Anthropic, by contrast, brought a noticed motion aimed at specific requests while its motion to dismiss is pending. It seeks to stay discovery only on theories that motion challenges, and only until the pleadings settle.

**2. Anthropic followed the procedure this Court prescribed, and did so promptly.**

The Court has said how requests like this one should proceed. Its "general practice is not to issue any formal stays of discovery, either on a topic or on the case as a whole, absent a noticed motion to stay discovery." *Shakespeare* CMC Tr. 10:4–7. Such a request "would be properly raised through a noticed motion and could be heard at the same time" as the motion to dismiss. *Id.* at 10:8–11. A statement at the case management conference would not have produced a stay. Once the

Court said it wanted a noticed motion, Anthropic filed one.

Anthropic also acted promptly at each step. At the September 3 conference, the Court said that disputes over "particularly burdensome discovery requests" would go "in the first instance, to the magistrate judge." ECF No. 225 at 7:8–15. No party had served discovery at that point. ECF No. 219 at 10:23. Plaintiffs served their BitTorrent and CMI requests on September 22. Mot. 2 & n.1. Eight days later, Anthropic proposed deferring that discovery and shared its portion of a joint letter for the magistrate judge. Opp. Ex. A. Anthropic filed this motion four days after the Court's October 15 direction to file a noticed motion before this Court rather than the magistrate judge.

Even if Rule 16(b) applied, that record shows diligence. Rule 16(b)'s good-cause standard "primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. The plaintiff in *Johnson* ignored repeated notice that he had sued the wrong entity. *Id.* at 606–07, 609. Here, Anthropic proposed deferring the discovery eight days after Plaintiffs served their requests. Plaintiffs say Anthropic knew its motion-to-dismiss arguments in July. Opp. 1, 6. But a stay responds to the burden of particular discovery, and that burden did not exist until Plaintiffs served their requests.

Nor is Anthropic precluded, as Plaintiffs contend, from making this showing on reply. Opp. 4 n.1. The opening brief already set out this timeline, and Plaintiffs' own exhibit confirms it. Mot. 2–3.

**C. The Stay Is Narrow, Workable, and Fair.**

**1. Download discovery and the stayed discovery are distinguishable.**

Plaintiffs predict that the stay would "provoke arguments about whether discovery requests pertain to the stayed issues" and lead to repeat depositions. Opp. 11–12. But the stay follows the complaints' own distinction. They plead downloading as reproduction, and separately plead uploading to other BitTorrent users and removal of CMI. Cam ¶¶ 59, 70–72, 96.

Download discovery would continue in full, including which works Anthropic downloaded, when, and why. Mot. 7–8. Only discovery directed to uploads and CMI would be deferred. The upload discovery covers whether Anthropic's clients uploaded, what they sent, and to whom; per-work tracing of outgoing pieces; and discovery from other BitTorrent users. The CMI discovery is

a work-by-work inquiry into whether each copy carried CMI and how it was processed. Mot. 6. Plaintiffs identify no request that would provoke a dispute about the scope of the stay. Regardless, ordinary relevance rules would resolve any edge cases, as in any case involving multiple claims.

Plaintiffs' concern about compressed discovery is overstated. Opp. 12. Fact discovery closes May 13, 2027, nearly five months after the hearing. ECF No. 227 at 1. Anthropic would respond to any stayed requests within 30 days after the stay lifts. Mot. 7. If a stayed theory survives, Anthropic will work with Plaintiffs in good faith on scheduling that discovery.

**2. The burden is apparent, and Plaintiffs do not dispute it.**

According to Plaintiffs, Anthropic must show "a particular and specific need" rather than "stereotyped or conclusory statements." Opp. 5 (quoting *Gray*, 133 F.R.D. at 40). But courts in this District, including this Court, have granted stays based on the movant's description of the discovery at issue. *Realtek*, 732 F. Supp. 3d at 1117–18 (finding good cause because "the burdens of discovery in antitrust lawsuits can be substantial"); *Pereda*, 2022 WL 19692037, at *2 (relying on the movant's description of discovery in granting a stay).

Plaintiffs' own requests show the burden. They seek configuration files, bandwidth logs, network records, and server logs for all torrenting, and each occasion on which any part of any work was transferred. Mot. 2–3 n.1. Answering them would require subpoenas to nonparty BitTorrent users and forensic reconstruction of activity from 2021 and 2022. Mot. 6. Plaintiffs' RFP No. 8 tracks, nearly word for word, a request several of these Plaintiffs served on Anthropic in their suit against Meta. *Compare* Mot. 2 n.1, *with Chicken Soup for the Soul, LLC v. Meta Platforms Inc.*, No. 26-cv-2333-VC (TSH), 2026 WL 2668437, at *5 (N.D. Cal. Sept. 10, 2026). The court denied that request because it would "require a vast technical investigation." *Id.* at *5–6. Even setting aside Anthropic's third-party status in that case, the burden of this discovery was substantial.

Plaintiffs quote Anthropic's description of this burden in full and challenge none of it. Opp. 11. They say instead that Anthropic "all but admits" the alleged conduct. *Id.* It does not. The motion to dismiss accepts the allegations as true, as Rule 12 requires. And "[i]t is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before

forcing the parties to undergo the expense of discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). The requested stay follows that practice. It lets the Court decide whether these theories belong in the case before the parties and nonparties bear the cost of discovery on them.

## III. CONCLUSION

The Court should stay discovery directed to Plaintiffs' BitTorrent reuploading and CMI theories pending resolution of Anthropic's motion to dismiss and, if the Court grants leave to amend, until Anthropic answers the amended complaint. Discovery on the Count I reproduction claim, including discovery that overlaps with those theories, would proceed.

Dated: November 9, 2026

WHITE & CASE LLP

By: /s/ *Yar R. Chaikovsky*
Yar R. Chaikovsky

Mark Davies
Andy LeGolvan
Amir Jabbari

*Attorneys for Defendant Anthropic PBC*