Elizabeth Brannen (SBN 226234)
ebrannen@stris.com
Lauren Martin (SBN 294367)
lmartin@stris.com
**STRIS & MAHER LLP**
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
T: (213) 995-6800
F: (213) 261-0299

Kyle Roche (*pro hac vice*)
kroche@fnf.law
Riley Clafton (*pro hac vice* forthcoming)
rclafton@fnf.law
**FREEDMAN NORMAND FRIEDLAND LLP**
155 E. 44th Street, Suite 915
New York, NY 10017
T: (646) 494-2900

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

CAMBRONNE INC., ET AL.,

Plaintiffs,

v.

ANTHROPIC PBC,

Defendant.

AND RELATED CASES AGAINST ANTHROPIC

Case No. 5:25-cv-10897-PCP

Related Cases:

- *Cognella Inc.*, No. 5:26-cv-04056-PCP
- *Chicken Soup for the Soul, LLC*, No. 5:26-cv-04218-PCP
- *Cruz et al.*, No. 5:26-cv-04482-PCP
- *Kwon et al.*, No. 5:26-cv-04649-PCP

**OPPOSITION TO DEFENDANT ANTHROPIC PBC'S CONSOLIDATED MOTION TO DISMISS PLAINTIFFS' COMPLAINTS**

Judge: Hon. P. Casey Pitts

## TABLE OF CONTENTS

I. INTRODUCTION ....... 1
II. RELEVANT ALLEGATIONS ....... 2
A. Pirating and Distribution ....... 3
B. Anthropic's Conduct Surfaced During the *Bartz* Case ....... 3
C. CMI Removal ....... 4
D. Ownership and License ....... 4
E. Further Copying and Retention ....... 4
III. ARGUMENT ....... 5
A. Anthropic's Factual Arguments Cannot Defeat Plaintiffs' Claims. ....... 5
B. Plaintiffs' Claims Are Timely. ....... 6
C. Count I States a Claim for Direct Infringement. ....... 11
D. Contributory Infringement Is Fairly Pleaded. ....... 15
E. Plaintiffs' CMI-Removal Claims Are Properly Pleaded. ....... 17
F. Anthropic's Work-Specific Defenses Fail. ....... 21
IV. CONCLUSION ....... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Recs., Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) .......... 11, 12

*Alvarez v. Hill*,
518 F.3d 1152 (9th Cir. 2008) .......... 7, 10, 19

*Am. Geophysical Union v. Texaco Inc.*,
60 F.3d 913 (2d Cir. 1994) .......... 11

*Am. Pipe & Const. Co. v. Utah*,
414 U.S. 538 (1974) .......... 10

*Andersen v. Stability AI Ltd.*,
700 F. Supp. 3d 853 (N.D. Cal. 2023) .......... 15, 18

*Annabooks, LLC v. Issuu, Inc.*,
No. 20-cv-04271-CRB, 2020 WL 6873646 (N.D. Cal. Sept. 24, 2020) .......... 12, 13

*Arista Recs., LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) .......... 17

*ASARCO, LLC v. Union Pac. R.R. Co.*,
765 F.3d 999 (9th Cir. 2014) .......... 23

*Atl. Recording Corp. v. Howell*,
554 F. Supp. 2d 976 (D. Ariz. 2008) .......... 13

*Bartz v. Anthropic PBC*,
787 F. Supp. 3d 1007 (N.D. Cal. 2025) .......... *passim*

*Bartz v. Anthropic PBC*,
791 F. Supp. 3d 1038 (N.D. Cal. 2025) .......... 8, 13, 16

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
No. 18-cv-933-MMC, 2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) .......... 25

*Bell v. Wilmott Storage Servs., LLC*,
12 F.4th 1065 (9th Cir. 2021) .......... 13, 16

*BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*,
716 F. Supp. 3d 835 (C.D. Cal. 2024) .......... 12, 13

*Bobbleheads.com, LLC v. Wright Bros., Inc.*,
259 F. Supp. 3d 1087 (S.D. Cal. 2017) .......... 25

*Broam v. Bogan*,
320 F.3d 1023 (9th Cir. 2003) .......... 22

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) .......... 12, 13

*Concord Music Grp., Inc. v. Anthropic PBC*,
No. 24-cv-03811-EKL, 2025 WL 4808984 (N.D. Cal. Oct. 6, 2025) .......... 19, 20, 21

*Corbello v. DeVito*,
777 F.3d 1058 (9th Cir. 2015) .......... 24

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
607 U.S. 583 (2026) .......... 15

*DeFries v. Union Pac. R.R. Co.*,
104 F.4th 1091 (9th Cir. 2024) .......... 10

*Disney Enters., Inc. v. MiniMax*,
839 F. Supp. 3d 1264 (C.D. Cal. 2026) .......... 12

*Doe 1 v. GitHub, Inc.*,
191 F.4th 1061 (9th Cir. 2026) .......... 18, 20

*Doe 1 v. GitHub*,
No. 24-7700, 2026 WL 2728464 (9th Cir. Sept. 16, 2026) .......... 20

*Donahue v. Union Pac. R.R. Co.*,
No. 21-cv-448-MMC, 2021 WL 2458351 (N.D. Cal. June 16, 2021) .......... 10

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) (per curiam) .......... 23

*Entrepreneur Media, LLC v. Meta Platforms, Inc.*,
No. 25-cv-09579-VC, 2026 WL 898253 (N.D. Cal. Mar. 30, 2026) .......... *passim*

*Free Speech Sys., LLC v. Menzel*,
390 F. Supp. 3d 1162 (N.D. Cal. 2019) .......... 7

*In re Google Generative AI Copyright Litig.*,
809 F. Supp. 3d 903 (N.D. Cal. 2025) .......... 11

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010) .......... 23

*Hexcel Corp. v. Ineos Polymers, Inc.*,
681 F.3d 1055 (9th Cir. 2012) .......... 9

*Johnson v. City of Shelby*,
574 U.S. 10 (2014) (per curiam) .......... 19

*Justice v. Uncharted Labs, Inc.*,
No. 25-cv-5026, 2026 WL 1430232 (S.D.N.Y. May 21, 2026) .......... 15

*Kadrey v. Meta Platforms, Inc.*,
788 F. Supp. 3d 1026 (N.D. Cal. 2025) .......... 14

*Kadrey v. Meta Platforms, Inc.*,
No. 23-cv-03417-VC, 2023 WL 8039640 (N.D. Cal. Nov. 20, 2023).......... 15

*Kadrey v. Meta Platforms, Inc.*,
No. 23-cv-03417-VC, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025).......... 17, 18, 21

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018).......... *passim*

*Lackey v. Sheppard*,
No. 22-cv-5653-PA, 2022 WL 19241141 (C.D. Cal. Dec. 16, 2022).......... 23

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) .......... 23

*Lynwood Invs. Cy Ltd. v. Konovalov*,
No. 20-cv-3778-LHK, 2021 WL 1164838 (N.D. Cal. Mar. 25, 2021) .......... 9

*MAI Sys. Corp. v. Peak Computer, Inc.*,
991 F.2d 511 (9th Cir. 1993).......... 14

*Makah Indian Tribe v. Verity*,
910 F.2d 555 (9th Cir. 1990).......... 24

*Mattel, Inc. v. MGA Ent., Inc.*,
616 F.3d 904 (9th Cir. 2010).......... 15

*McAdory v. M.N.S. & Assocs., LLC*,
952 F.3d 1089 (9th Cir. 2020).......... 16, 19

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*,
795 F.3d 997 (9th Cir. 2015).......... 23

*In re Napster, Inc.*,
No. 04-cv-3004-MHP, 2005 WL 289977 (N.D. Cal. Feb. 3, 2005) .......... 8, 9

*Nazemian v. NVIDIA Corp.*,
No. 24-cv-1454-JST, 2026 WL 1229583 (N.D. Cal. May 5, 2026) .......... 11

*Oddo v. Ries*,
743 F.2d 630 (9th Cir. 1984).......... 24

*Oskar Sys., LLC v. Club Speed, Inc.*,
745 F. Supp. 2d 1155, 1160 (C.D. Cal. 2010)........ 24

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.*,
943 F.3d 1243 (9th Cir. 2019)........ 2, 5

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007)........ 12

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017)........ 12, 13

*Peters v. West*,
692 F.3d 629 (7th Cir. 2012)........ 15

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014)........ 7

*Rabin v. Google LLC*,
725 F. Supp. 3d 1028 (N.D. Cal. 2024)........ 5

*RADesign, Inc. v. Michael Grecco Prods., Inc.*,
145 S. Ct. 2792 (2025)........ 7

*Raw Story Media, Inc. v. OpenAI, Inc.*,
756 F. Supp. 3d 1 (S.D.N.Y. 2024)........ 17, 18

*Robinson v. Binello*,
771 F. Supp. 3d 1114 (N.D. Cal. 2025)........ *passim*

*Scheibe v. ProSupps USA, LLC*,
141 F.4th 1094 (9th Cir. 2025)........ 5, 22, 23

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*,
733 F.3d 1251 (9th Cir. 2013)........ 9

*Shropshire v. Canning*,
No. 10-cv-1941-LHK, 2011 WL 90136 (N.D. Cal. Jan. 11, 2011)........ 24

*Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*,
39 F.4th 1236 (9th Cir. 2022)........ *passim*

*Stevens v. Corelogic, Inc.*,
899 F.3d 666 (9th Cir. 2018)........ 20

*Strike 3 Holdings, LLC v. Meta Platforms, Inc.*,
835 F. Supp. 3d 1026 (N.D. Cal. 2026)........ 5, 6, 12

*The Intercept Media, Inc. v. OpenAI, Inc.*,
767 F. Supp. 3d 18 (S.D.N.Y. 2025) ........ 17, 18

*Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*,
193 F.4th 271 (3d Cir. 2026) ........ 11, 14

*Tosti v. City of Los Angeles*,
754 F.2d 1485 (9th Cir. 1985) ........ 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 17

*Tremblay v. OpenAI, Inc.*,
716 F. Supp. 3d 772 (N.D. Cal. 2024) ........ 15

*United States v. 1850 Bryant Land LLC*,
No. 21-cv-05742-RS, 2023 WL 4297585 (N.D. Cal. June 30, 2023) ........ 16

*Viral DRM LLC v. Seven W. Media Ltd.*,
768 F. Supp. 3d 1025 (N.D. Cal. 2025) ........ 23

*Warner Chappell Music, Inc. v. Nealy*,
601 U.S. 366 (2024) ........ 7

*Weston v. DocuSign, Inc.*,
669 F. Supp. 3d 849 (N.D. Cal. 2023) ........ 6

*Williams v. Boeing Co.*,
517 F.3d 1120 (9th Cir. 2008) ........ 10

*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1134 (C.D. Cal. 2010) ........ 9

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
No. 2:19-ml-02905, 2025 WL 2684021 (C.D. Cal. Aug. 15, 2025) ........ 10

*Zito v. Steeplechase Films, Inc.*,
267 F. Supp. 2d 1022 (N.D. Cal. 2003) ........ 25

**Statutes**

17 U.S.C. § 410(c) ........ 23

17 U.S.C. § 501(b) ........ 23, 24

17 U.S.C. § 1202(b) ........ 19, 20

**Federal Rules**

Fed. R. Civ. P. 9(b) ........ 16, 20

Fed. R. Evid. 201 ........ 5

## STATEMENT OF ISSUES TO BE DECIDED

1. Does it appear beyond dispute from the face of the Complaints that Plaintiffs' copyright infringement, contributory copyright infringement, and copyright management information stripping claims are untimely?

2. Have the Plaintiffs adequately pleaded their claims for contributory copyright infringement and copyright-management-information stripping?

3. Can the Court dismiss Count I when Anthropic has not moved to dismiss all the theories on which it rests?

4. May Anthropic use counsel's declaration and exhibits to resolve factual disputes against Plaintiffs on a motion to dismiss?

## I. INTRODUCTION

Plaintiffs wrote, published, or hold the rights to copyrighted books. Defendant Anthropic PBC pirated those books, redistributed them over the internet, stripped them of their copyright management information, exploited them to train its large language models ("LLMs"), and retained them in a library for its own purposes. When piracy was not enough, Anthropic also scanned print copies of Plaintiffs' books for the same purposes. In the end, Anthropic burned through millions of pirated books to build a product that competes with the people who wrote them.

Anthropic's conduct is already well known in this District: Anthropic "downloaded for free millions of copyrighted books in digital form from pirate sites on the internet." *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1014 (N.D. Cal. 2025). "[Anthropic] stole the works for its central library by downloading them from pirated libraries." *Id.* at 1029. Anthropic intended to acquire "'all the books in the world' while still avoiding as much 'legal/practice/business slog' as possible." *Id.* at 1015-16 (cleaned up); *see also Cambronne*[1] ¶¶ 5-9, 38-61. Anthropic intended to keep the copies it obtained "forever." *Bartz*, 787 F. Supp. 3d at 1014; *Cambronne* ¶ 74.

---

[1] Citations are to the Second Amended Complaint filed in *Carreyrou et al. v. Anthropic PBC et al.*, Case No. 5:25-cv-10897 (*Cambronne*) and those allegations apply to all Complaints. Other Complaints are cited only where the allegations at issue are specific to that Complaint.

Anthropic moves to dismiss Plaintiffs' Complaints, arguing that Plaintiffs' claims are untimely, and in certain cases, not well-pleaded. But Plaintiffs allege violations continuing through 2024 and beyond, and the statute of limitations for copyright infringement runs three years from the time the infringing conduct is, or should have been, discovered, and not three years from the infringement itself; Plaintiffs' claims are timely. *Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*, 39 F.4th 1236, 1237, 1244 (9th Cir. 2022). Anthropic concealed its conduct, including its use of pirated datasets and its torrenting, and as late as December 2024 was still denying in *Bartz* that it knowingly downloaded pirated books—less than two years ago *today*. *See Bartz*, 787 F. Supp. 3d at 1016-17; *Bartz*, ECF No. 72 (Answer) ¶¶ 42, 45. Apart from timeliness, Anthropic does not challenge that it copied Plaintiffs' books by downloading, scanning, training, and retention. The Complaints' allegations that Anthropic does challenge are more than sufficient, as courts in this District have held this year. *See, e.g.*, *Entrepreneur Media, LLC v. Meta Platforms, Inc.*, No. 25-cv-09579-VC, 2026 WL 898253, at *1 (N.D. Cal. Mar. 30, 2026) (denying a motion to dismiss contributory infringement claims against an LLM developer premised on torrenting claims).

The remaining arguments fare no better. Anthropic's Motion cites inapposite authority and asks the Court to resolve issues in its favor, including on the basis of extraneous exhibits and counsel's declaration. Anthropic's arguments fall far short of showing "beyond doubt that Plaintiffs can prove no set of facts in support of their claims which would entitle them to relief" and its Motion should therefore be denied in its entirety. *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co.*, 943 F.3d 1243, 1248 (9th Cir. 2019) (cleaned up).

## II. RELEVANT ALLEGATIONS

Anthropic accomplished its massive theft of Plaintiffs' books in part through peer-to-peer-file-sharing programs. *Cambronne* ¶¶ 59, 97-98; *Bartz*, 787 F. Supp. 3d at 1014-15. As Judge Alsup explained: "[f]rom the start, Anthropic 'ha[d] many places from which' it could have purchased books, but it preferred to steal them . . ." *Bartz*, 787 F. Supp. 3d at 1015; *Cambronne* ¶ 97.

Peer-to-peer file-sharing programs work by allowing users to trade material one has for what others have in a distributed network. *Cambronne* ¶¶ 5-7, 59, 96-98. Because Anthropic knew this

conduct was unlawful, it endeavored to conceal it. *Cambronne* ¶¶ 8, 72, 90, 105. As part of its scheme to keep Plaintiffs' books "forever," Anthropic modified them, unlawfully stripping out the copyright management information ("CMI") contained within the text of the books. *Cambronne* ¶¶ 8, 70-72. On other occasions, it knowingly obtained copies already stripped of CMI. *Cambronne* ¶ 71. Anthropic also scanned copyrighted books to make more unauthorized copies and stripped those of CMI as well. *Cambronne* ¶¶ 72-73. The removal of CMI was part and parcel of Anthropic's willful infringement of Plaintiffs' copyrights.

### A. Pirating and Distribution

Copyright infringers frequently rely on illicit online marketplaces for digital copies of books. These marketplaces are commonly referred to as "shadow libraries," and they acquire, store, index, and disseminate complete copies of copyrighted books. Shadow libraries allow third parties to illegally copy books, entire collections of thousands, or even millions of books. *Cambronne* ¶ 40. These libraries have been criminally prosecuted but nonetheless persist. *Id.* ¶ 41.

Anthropic acquired millions of copyrighted books, including Plaintiffs' works, from shadow libraries. *Id.* ¶¶ 62, 65-68, 95-97. It did so willfully, internally describing the LibGen library as "a blatant violation of copyright." *Id.* ¶¶ 64, 67. Worse, Anthropic used peer-to-peer-file-sharing programs like BitTorrent to do it, redistributing the works to others. *Id.* ¶ 69. Anthropic therefore knew it was facilitating further copyright infringement and "distributed the Infringed Works through the use of torrenting software, programs, or protocols." *Cambronne* ¶¶ 69, 88; *see also id.* ¶¶ 65, 70, 89. Plaintiffs further alleged that full-text books—copyrighted by Plaintiffs—were included in these uploads (*id.* ¶¶ 68, 90, 96), and that Anthropic's conduct was knowingly executed with the approval of its senior leaders. *Id.* ¶ 66.

### B. Anthropic's Conduct Surfaced During the *Bartz* Case

The Complaints set forth how Anthropic's conduct only became known during the *Bartz* litigation. *Id.* ¶¶ 60-69. At least as late as December of 2024, before the Court itself in *Bartz*, Anthropic continued to deny knowingly downloading pirated books. *Bartz*, ECF No. 72 ¶¶ 42, 45.

This behavior was part and parcel of Anthropic's scheme to conceal its illegal acquisition of copyrighted material. *Cambronne* ¶ 90.

Anthropic makes factual notice arguments about a third party's datasheet, the Books3 compiler's statements about its source, and a paper. Mot. 5. None is alleged to have told any Plaintiff that Anthropic had copied its books, and as late as December 2024 Anthropic was still denying that it "downloaded and reproduced copies of The Pile and Books3." *Bartz*, ECF No. 72 ¶¶ 42, 45. Whether those disclosures put a reasonable owner on notice is a fact question. *See infra*, § III.B.

**C. CMI Removal**

Anthropic pirated millions of books in a variety of different forms. While some of the "datasets" (large collections of pirated books used for training) that Anthropic obtained already had CMI stripped from them, *Cambronne* ¶ 71, Plaintiffs allege that Anthropic affirmatively stripped such information from Plaintiffs' works, *id.* ¶ 72, and that Anthropic took these steps to ensure that Claude did not train on CMI, in the hopes that it would not return any copyright management information in results. *Id.* ¶¶ 8, 70, 72, 102, 105.

**D. Ownership and License**

The Plaintiffs allege their ownership of the relevant copyrights, their exclusive licenses, or both. *See Cruz* ¶¶ 15-16; *Kwon* ¶¶ 15-16; *Cambronne* ¶ 15; *Cognella* ¶ 15; *Chicken Soup* ¶ 15.

**E. Further Copying and Retention**

As described above and in *Bartz*, Anthropic maintained a permanent central library—including books not used for training—made copies throughout model development, began purchasing and scanning print books in 2024, and continued copying after repeated warnings. *Cambronne* ¶¶ 60, 73-75, 88, 90. Many such copies were not used for LLM training. *Id.* ¶ 74. Anthropic lacked "any entitlement to hold copies of the books at all" and "retain[ed] them even after deciding it would not make further copies of them for training." *Id.* ¶ 74 (cleaned up). These separate copies and uses are separate infringements, each complete in themselves. *Id.* ¶ 75.

## III. ARGUMENT

### A. Anthropic's Factual Arguments Cannot Defeat Plaintiffs' Claims.

To survive a motion to dismiss, a complaint need only articulate "enough facts to state a claim to relief that is plausible on its face," and the Court "accept[s] all well-pleaded factual allegations contained in the complaint as true." *Starz*, 39 F.4th at 1239.[2] Courts should deny a motion to dismiss unless "it appears beyond doubt that Plaintiffs can prove no set of facts in support of their claims which would entitle them to relief." *Painters*, 943 F.3d at 1248 (cleaned up).

When a party moves to dismiss based on an affirmative defense, a heightened standard applies. "In the Ninth Circuit, the statute of limitations is an affirmative defense that can provide the basis for dismissing a claim at the 12(b)(6) stage only if the allegations in the complaint or judicially noticeable materials establish beyond dispute that the statute ran prior to the filing of the case." *Robinson v. Binello*, 771 F. Supp. 3d 1114, 1124 (N.D. Cal. 2025); *see also Scheibe v. ProSupps USA, LLC*, 141 F.4th 1094, 1098 (9th Cir. 2025) ("Only when the plaintiff pleads itself out of court, by admitting all the elements of an affirmative defense, may a complaint that otherwise states a claim be dismissed"). Complaints are not required to anticipate affirmative defenses: "[t]he burden to establish that defense is on [the defendant]. Plaintiffs do not need to plead facts that would prove (or even plausibly suggest) that [defendant's] affirmative defense does not apply; they simply need to plead facts demonstrating a potential factual dispute that could affect whether the defense applies." *Rabin v. Google LLC*, 725 F. Supp. 3d 1028, 1031 (N.D. Cal. 2024).

The Court should not consider documents Anthropic submits in support of its factual arguments absent incorporation by reference or judicial notice. A document can be incorporated by reference only if the document is relied on by the plaintiff. *See Strike 3 Holdings, LLC v. Meta Platforms, Inc.*, 835 F. Supp. 3d 1026, 1034 (N.D. Cal. 2026). Even if a document is relied on by a plaintiff, incorporation by reference cannot be used to resolve factual disputes against the plaintiff's allegations in the complaint. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018). Anthropic failed to properly seek judicial notice of these documents, *see* Fed. R. Evid. 201,

[2] All internal quotations and citations are omitted unless otherwise indicated.

but even if it had done so, a court may only take judicial notice of undisputed facts. *Khoja*, 899 F.3d at 999. Courts cannot "take notice of disputed facts contained in a judicially-noticed document." *Strike 3*, 835 F. Supp. 3d at 1034.

Exhibits 1 through 5. The counsel-prepared charts, labels, and characterizations in each exhibit cannot be judicially noticed. *See Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 872 (N.D. Cal. 2023). As for the documents, the Court may notice that a copyright registration lists a given claimant, but the Court cannot use the registration to make a factual determination as to the current rights to the work. Not only is the exhibit silent as to current rights to the work—such that Anthropic failed to create a factual dispute—but more importantly, Anthropic's request for a factual determination that contradicts Plaintiffs' ownership allegations fails on a motion to dismiss. *Id.*

Exhibit 6. As an initial matter, the screenshots of the website are factually wrong and demonstrate the exhibit is unreliable—the exhibit mismatches five of the supposedly eight settled works to completely different titles. *See, e.g.*, ECF No. 228-7 at 3 (matching *Chicken Soup for the Soul: Breast Cancer* with *Chicken Soup for the Soul: Teacher Tales*). To the extent the contents contradict Plaintiffs' allegations, they at most raise a question of fact that cannot be resolved against Plaintiffs on a motion to dismiss. *See, e.g.*, *Kwon* ¶ 16 ("Plaintiffs have opted out of the *Bartz v. Anthropic* Settlement"); *Strike 3*, 835 F. Supp. 3d at 1033-36.

Exhibit 7. The counsel-prepared chart based on undisclosed documents cannot be judicially noticed. Even if it could, it at most raises factual disputes that cannot be resolved in Anthropic's favor on a motion to dismiss. *Khoja*, 899 F.3d at 1014.

Exhibits 8 and 9. To the extent the Court incorporates by reference the Liu and Cooper studies, Anthropic cannot use the studies to make factual arguments to rebut facts alleged in the complaint. *See id.*; *see also Strike 3*, 835 F. Supp. 3d at 1034 (declining to notice a research paper "introduced for the truth of its contents to rebut well-pleaded facts").

**B. Plaintiffs' Claims Are Timely.**

Anthropic's Untimeliness Defense Turns on Disputed Facts and Fails. Plaintiffs have timely filed their case well within three years of when they knew or should have known of Anthropic's

infringements. As set forth above, Anthropic concealed and denied this conduct in Court at least as late as December 2024, less than two years ago. Moreover, the statute of limitations is an affirmative defense: Anthropic bears the burden to establish untimeliness "beyond dispute." *Robinson*, 771 F. Supp. 3d at 1124. "[T]o survive a motion to dismiss, plaintiffs 'simply need to plead facts demonstrating a potential factual dispute that could affect whether the defense applies.'" *Id.* Anthropic purports to invert that burden by giving the discovery rule short shrift and arguing that Plaintiffs must affirmatively establish the application of a tolling doctrine. That is wrong. In any event, the claims are facially timely for three independent reasons—the discovery rule, separate accrual, and (for the opt-out Plaintiffs) *American Pipe* tolling. Anthropic's factual arguments cannot be resolved against Plaintiffs on Anthropic's motion.

<u>The Claims Did Not Accrue While Anthropic Concealed Its Conduct.</u> The discovery rule provides that a copyright claim accrues "when the copyright holder knows or reasonably should know that an infringement occurred." *Starz*, 39 F.4th at 1237. That rule is binding here, and Anthropic concedes it governs. *See* Mot. 7. Its suggestion that the Supreme Court has "declined to endorse" the rule, *id.*, is misleading; rather, the Supreme Court has assumed without deciding that the rule applies. *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 372 (2024); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 n.4 (2014).[3] In any event, *Starz* applies, and Plaintiffs need not name the rule in their Complaints. *Alvarez v. Hill*, 518 F.3d 1152, 1154 (9th Cir. 2008).

As a fact-bound inquiry, accrual "may be considered on a motion to dismiss if no reasonable finder of fact could conclude that the claimant's lack of knowledge was reasonable under the circumstances." *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1169 (N.D. Cal. 2019). *Starz* resolved this question on a motion to dismiss in the owner's favor: taking the allegations as

---

[3] Though irrelevant to the instant motion, Anthropic's suggestion that the Supreme Court may soon reconsider the application of the discovery rule to the Copyright Act in light of Justice Gorsuch's dissent for three justices in *Warner Chappell* warrants a response. Just a year after *Warner Chappell*, the Court denied certiorari without dissent in a case that squarely presented the question. *See RADesign, Inc. v. Michael Grecco Prods., Inc.*, 145 S. Ct. 2792 (2025). As noted in *Petrella*, "nine Courts of Appeals have adopted" the rule, 572 U.S. at 670 n.4, and the rule "is not the subject of a Circuit split," *Warner Chappell*, 601 U.S. at 371 n.1.

true, "[w]hen Starz did detect smoke . . . it quickly discovered the fire and promptly sued." 39 F.4th at 1247; *see also Robinson*, 771 F. Supp. 3d at 1124 ("the inferential chain from the general popularity of a gaming platform and one of the games on it, on the one hand, to a musician's awareness that his decades-old recording might be being used in an infringing matter, on the other, is too attenuated"). Inquiry notice requires a triggering "event[] . . . that should have placed [the plaintiff] on notice"; it does not impose a duty to patrol the internet, particularly where "the alleged infringer knows of and controls the infringing acts and the copyright holder has little means of discovering those acts." *Starz*, 39 F.4th at 1246-47.

Here, the specifics of Anthropic's conduct—its LibGen and PiLiMi downloads, its BitTorrent uploading, its "forever" library, and its scanning of print books—surfaced only through the *Bartz* litigation in 2025. *See Cambronne* ¶¶ 60–69 (citing documents from *Bartz*). As late as December 2024, Anthropic was still denying in the *Bartz* litigation that it knowingly downloaded pirated datasets. *Compare Bartz*, ECF No. 72 ¶¶ 42, 45 (denying allegations that "Anthropic's Claude models were trained on a mass of copyrighted books and other copyrighted material" and that "Anthropic downloaded and reproduced copies of The Pile and Books3"), *with Bartz*, 787 F. Supp. 3d at 1015 (Anthropic downloaded Books3 and LibGen in 2021 and PiLiMi in 2022); *Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038, 1046 (N.D. Cal. 2025) (describing Anthropic's July 2022 torrenting from PiLiMi).

When Plaintiffs should have discovered the copying is, at a minimum, a disputed factual question. Just as copyright plaintiffs generally have no obligation to "actively prowl the internet" to ensure their copyrights are not being infringed, *Robinson*, 771 F. Supp. 3d at 1124, Plaintiffs here had no duty to investigate Anthropic's internal conduct (nor any practical ability to do so). Indeed, this case is even farther afield from the mine run of cases in which discovery of infringing content is at least conceivable because it is public facing; here, Anthropic purposely sought to conceal its violative conduct and later denied it. *See*, *e.g.*, *Cambronne* ¶ 90. In that respect, Anthropic's citation to *In re Napster, Inc.*, (*see* Mot. 7), is particularly inapt; there, the Court could point to the complaint's own allegations that "Napster 'intentionally and *boastfully*' disguised the identity of its

users in order to frustrate the enforcement of copyright laws" as defeating application of the discovery rule. No. 04-cv-3004-MHP, 2005 WL 289977, at *3 (N.D. Cal. Feb. 3, 2005).

Rule 9(b) Does Not Apply. Anthropic recasts Plaintiffs' concealment allegations as a fraudulent-concealment tolling theory governed by Rule 9(b). *See* Mot. 4. That misreads the Complaints. "[T]he accrual doctrine for a discovery rule is conceptually distinct from the equitable tolling doctrine in fraudulent concealment cases": the former fixes accrual by the plaintiff's knowledge, while the latter "focuses on the actions of the defendant . . . calculated to prevent the plaintiff from filing suit." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1062 (9th Cir. 2012). Plaintiffs invoke the former. Because "neither fraud nor mistake is required to prove delayed discovery," Rule 9(b) "does not apply"; instead, Rule 8(a)(2) governs. *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1142 (C.D. Cal. 2010). Anthropic's only authority to the contrary, *Lynwood Invs. Cy Ltd. v. Konovalov*, was directed to an "entire Complaint alleg[ing] a fraudulent scheme," and the allegations of the complaint established notice on its face—neither of which is the case here. No. 20-cv-3778-LHK, 2021 WL 1164838, at *10-12 (N.D. Cal. Mar. 25, 2021).

The Separate-Accrual Doctrine Independently Defeats Dismissal. Apart from the discovery rule, "'the separate-accrual rule attends the copyright statute of limitations,' such that 'each infringing act starts a new limitations period.'" *Starz*, 39 F.4th at 1241; *see Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) ("each new infringing act causes a new claim to accrue," and "an action may be brought for all acts that accrued within the three years preceding the filing of the suit."). Anthropic's authority, *Seven Arts*, confirms the point: that case applied a one-time accrual bar only because "the gravamen of the dispute [was] ownership," not infringement. *Id.* at 1254-55, 1258. These are infringement cases, and the Complaints allege continuing copying well within three years of suit: a permanent library maintained to store "everything forever," copies at every stage of model development, scanning of print books from 2024, and continued copying after repeated warnings. *Cambronne* ¶¶ 73-75, 88, 90. Anthropic's focus on the 2021-22 downloads addresses only the earliest acts and can, at best, raise a factual dispute about when each work was copied.

*American Pipe* Tolling Further Preserves the Opt-Out Plaintiffs' Claims. For the Plaintiffs who were members of the *Bartz* class, tolling applies. "[C]ommencement of a class action suspends the applicable statute of limitations as to all asserted members of the class." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). Where, as in *Bartz*, the class is certified, the limitations period "begins running anew from the date when the class member exercises the right to opt out." *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1488 (9th Cir. 1985); *see also DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1097 (9th Cir. 2024). The *Cruz*, *Kwon*, and *Cambronne* Plaintiffs plead *Bartz* class membership and opt-out, *Cruz* ¶¶ 15-16; *Kwon* ¶¶ 15-16; *Cambronne* ¶ 15, tolling their claims. Chicken Soup likewise opted out and is entitled to the same tolling. *See infra* § III.F.1.[4] Anthropic's argument that Plaintiffs "bear the burden of pleading *American Pipe* tolling," Mot. 5, runs afoul of the "longstanding principle that federal complaints plead claims, not . . . legal theories." *Alvarez*, 518 F.3d at 1154.

Anthropic's contention that tolling does not reach the distribution and CMI-removal theories—like its other theories of why the statute of limitations has run—cannot win on the pleadings. The Ninth Circuit explicitly rejects a rule "that the individual suit must be identical in every respect to the class suit for the statute to be tolled." *Tosti*, 754 F.2d at 1489. Where the class definition "arguably includes particular bystander plaintiffs, they remain entitled to *American Pipe* tolling unless and until a court accepts a new definition that unambiguously excludes them," and "[a]mbiguity . . . should be resolved in favor of . . . tolling." *DeFries*, 104 F.4th at 1096, 1098-99. The *Bartz* complaint gave Anthropic notice of the "substantive claims" arising from its mass reproduction of pirated books, as is required for tolling to apply, *Williams*, 517 F.3d at 1136, and Plaintiffs' core reproduction claims fall within that notice.

[4] The cases on which Anthropic relies concerned a failure to plead the claims in the prior action at all, *see In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, No. 2:19-ml-02905, 2025 WL 2684021, at *48 (C.D. Cal. Aug. 15, 2025), or brought different causes of action, *see Donahue v. Union Pac. R.R. Co.*, No. 21-cv-448-MMC, 2021 WL 2458351, at *2 (N.D. Cal. June 16, 2021); *Williams v. Boeing Co.*, 517 F.3d 1120, 1136 (9th Cir. 2008). Here, Plaintiffs pleaded the applicability of the previous *Bartz* claims for infringement. *Cambronne* ¶ 15 n.4.

### C. Count I States a Claim for Direct Infringement.

Anthropic Does Not Meaningfully Challenge the Majority of Count I. Copyright holders have exclusive rights to the reproduction and distribution of their works. *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001). Plaintiffs allege direct infringement of those rights through three distinct means: (1) reproduction of the works by downloading the pirated libraries; (2) reproduction of the works through Anthropic's training, scanning, and retention practices; and (3) distribution through torrenting. *Cambronne* ¶¶ 62-69, 73-84. In its motion to dismiss Count I, Anthropic challenges only distribution; it otherwise attacks a strawman "output" theory that Plaintiffs do not plead.

To start with what is not at issue: Anthropic does not contest that it reproduced the works by downloading copies from the pirate libraries such as Books3, LibGen, and PiLiMi. *Id.* ¶¶ 61-64. "[T]he person who copies [a book] from a pirate site has infringed already, full stop." *Bartz*, 787 F. Supp. 3d at 1025.

Nor does the motion challenge Plaintiffs' allegations as to reproduction of the works through scanning, training, or retaining copies—all of which are actionable claims for infringement. *See Cambronne* ¶¶ 73-75, 88; *Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*, 193 F.4th 271, 287 (3d Cir. 2026) ("ROSS copied the entire text of the 25,000 Westlaw-written headnotes into its memos and used those to train its AI program"); *Nazemian v. NVIDIA Corp.*, No. 24-cv-1454-JST, 2026 WL 1229583, at *3 (N.D. Cal. May 5, 2026) ("Courts have routinely declined to dismiss allegations where plaintiffs alleged that their copyrighted material was present in datasets that contained their work"); *In re Google Generative AI Copyright Litig.*, 809 F. Supp. 3d 903, 913 (N.D. Cal. 2025) ("Plaintiffs trace specific copyrighted works to specific training datasets"); *Napster*, 239 F.3d at 1014 ("Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights"); *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 924 (2d Cir. 1994) (finding no fair use for "the predominant archival purpose of the copying").

Accordingly, most of the conduct alleged by Count I is not challenged by Anthropic at all, and Count I survives in its entirety. *See Disney Enters., Inc. v. MiniMax*, 839 F. Supp. 3d 1264, 1275 n.7 (C.D. Cal. 2026) ("Rule 12(b)(6) does not permit dismissal of part of a claim").

<u>Plaintiffs Stated a Claim for Distribution Through Torrenting.</u> Uploading copyrighted works to others violates an owner's distribution right. *A&M*, 239 F.3d at 1014; *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013). The Complaints allege that Anthropic "used BitTorrent to acquire and distribute" pirated books and "uploaded and distributed" Plaintiffs' works. *Cambronne* ¶¶ 65, 96. That is how BitTorrent works—"each user is both downloading and uploading" pieces "from and to multiple other users." *Fung*, 710 F.3d at 1027. In the face of those allegations, Anthropic seizes on a sentence describing BitTorrent generally—that protocols are "often configured" to re-upload (Mot. 8 (quoting *Cambronne* ¶ 59))—and ignores the unqualified allegations about what Anthropic did. Courts in this District sustain these allegations without any of the IP addresses, logs, and recipient information that Anthropic demands here. *See Entrepreneur Media*, 2026 WL 898253, at *1 (uploading of plaintiff's works and third-party downloads are "reasonable inferences" from allegations that torrenting "necessarily required" uploading); *Strike 3*, 835 F. Supp. 3d at 1036 & n.2 ("all that matters is whether Plaintiffs sufficiently alleged that Defendant torrented their films"). Those records are Anthropic's. *Robinson*, 771 F. Supp. 3d at 1123 ("In the context of allegations concerning a process generally concealed from the public and largely inscrutable absent discovery, demanding even greater specificity would effectively foreclose liability, far exceeding the demands of Rule 8.").

Anthropic's authorities confirm the point. Its lead case, *Perfect 10, Inc. v. Amazon.com, Inc.*, held that Google did not directly distribute images by merely linking to them. 508 F.3d 1146, 1162 (9th Cir. 2007). In doing so, *Perfect 10* reaffirmed that, in contrast, Napster users, "private individuals with collections of music files stored on their home computers," infringed the distribution right when they used peer-to-peer software to share those collections. *Id.* Anthropic, holding a collection of millions of pirated books and sharing them through a peer-to-peer network, is the Napster user, not Google. Its other cases are further afield. *Annabooks*, *Giganews*, and *BMG*

each involved a platform that automatically hosted or transmitted files that its users uploaded. The courts held the users, not the platform, caused any distribution. *Annabooks, LLC v. Issuu, Inc.*, No. 20-cv-04271-CRB, 2020 WL 6873646, at *3-4 (N.D. Cal. Sept. 24, 2020); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 669-70 (9th Cir. 2017); *BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*, 716 F. Supp. 3d 835, 842 (C.D. Cal. 2024).[5] Anthropic hosted nothing. Plaintiffs allege Anthropic was the user, and it chose, with its leadership's approval, to run a protocol in which it uploaded the works it stole. *Cambronne* ¶¶ 66, 68. Anthropic concedes volition for the downloads (Mot. 9); the uploads came from the same act.

Finally, Anthropic raises a de minimis defense, arguing that BitTorrent transmits only "pieces" of files. Mot. 10. But Plaintiffs allege that Anthropic "uploaded and distributed" their works, Cambronne ¶ 96, through a process in which "each participant in the torrent both copies and redistributes the copyrighted works" and the pieces are reassembled "into a complete library on the user's machine," *id.* ¶ 59. Complete copies are not de minimis. *See Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1074-77 (9th Cir. 2021) ("Wholesale copying or reproduction of another's protected work . . . by definition cannot be de minimis copying."). Judge Alsup rejected Anthropic's similar attempt to minimize its torrenting in *Bartz*: "[S]tealing a page of a copyrighted work is still a violation." *Bartz*, 791 F. Supp. 3d at 1056. How much of each work Anthropic transmitted is a question for discovery, and the records that answer it are Anthropic's. *See Robinson*, 771 F. Supp. 3d at 1123. Anthropic's authorities, decided on summary judgment records, are not to the contrary.

<u>Anthropic's Strawman Attacks on "Output Theories" Fail.</u> Perhaps because it cannot dismiss the Complaints as written, Anthropic attempts to recast Plaintiffs' Complaints to rest on different theories than those actually alleged. Anthropic contends that Plaintiffs bring derivative theories—which it terms "output" theories—that fail to allege any copying and instead rely only on the

---

[5] *Atl. Recording Corp. v. Howell* was a summary-judgment decision about KaZaA, where the copyrighted material was placed in a shared folder but no access was established by the record. 554 F. Supp. 2d 976, 986 (D. Ariz. 2008). On BitTorrent, the defendant itself uploads, causing the distribution, as Plaintiffs alleged. *Fung*, 710 F.3d at 1027.

possibility of infringing outputs and that "Claude reproduced third parties' works through jailbreaking." Mot. 11-13.

In support of their claim of direct infringement, Plaintiffs alleged that copies of their works remain embedded within Claude—further establishing reproduction through downloading and training—that Claude harms Plaintiffs and the market by operating as both an indirect and direct substitute for Plaintiffs' works, and that it can do so *because* it trained on and retained copies of Plaintiffs' works. *Cambronne* ¶¶ 76-84. These are not allegations that Claude or its outputs are a derivative work. The Liu and Cooper studies cited in Plaintiffs' Complaints further support those propositions, including by providing support for Plaintiffs' theories that the pirated libraries, which include Plaintiffs' works, were used for Claude's training, and that the Claude models retain copies of books from those libraries, including Plaintiffs' works, despite whatever limits Anthropic may place on Claude's outputs. Those retained copies, in turn, enable Claude to better compete with Plaintiffs' works and in Plaintiffs' market. *Cambronne* ¶¶ 81–84.

The contested allegations therefore support Plaintiffs' claims as to direct infringement by reproduction, particularly as evidenced by the copies that remain stored in Claude. *See, e.g.*, *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993) ("loading of copyrighted software into RAM creates a 'copy' of that software in violation of the Copyright Act"). They also support Plaintiffs' allegations as to market harm. *See Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1051 (N.D. Cal. 2025) ("even if the model can't regurgitate their own works or generate substantially similar ones, it can generate works that are similar enough (in subject matter or genre) that they will compete with the originals and thereby indirectly substitute for them"); *Thomson Reuters*, 193 F.4th at 287 ("we consider harm to the original market, harm to the value of the

copyrighted work, harm to the potential derivative market"). Plaintiffs do not allege derivative work theories[6] and Anthropic's authority is therefore inapposite.[7]

### D. Contributory Infringement Is Fairly Pleaded.

The Complaints allege that Anthropic's conduct in both downloading and uploading was willful, a higher bar than "volitional," with extensive allegations that Anthropic re-uploaded the material that Anthropic concedes it downloaded via torrenting. *Cambronne* ¶¶ 62, 65, 68, 69, 90, 92. Plaintiffs' description of how torrent clients work in one paragraph does not qualify these other allegations. Downloading and uploading terabytes of data via software built to do just that is plainly "volitional." *Cambronne* ¶¶ 6, 7, 54, 59, 65, 69, 88, 96-98.

The primary case on which Anthropic relies, *Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. 583 (2026), helps it the least. Anthropic uses *Cox* to argue that Plaintiffs have failed to plead Anthropic's intent to bring about infringement. *Cox* is a case about the derivative liability of an entire internet service provider: "[u]nder our precedents, a company is not liable as a copyright infringer for merely providing a service to the general public with knowledge that it will be used by some to infringe copyrights." *Id.* at 587. But in this case, Anthropic was not a service provider disinterestedly providing internet access; it was an active *user* that was downloading, uploading, storing, and using copyrighted material. The direct infringers are the peers who downloaded the works Anthropic made available; no IP address is required at the pleading stage. *See supra* § III.C.2.

Anthropic is one of the largest and most sophisticated software companies in the world (*Cambronne* ¶¶ 2, 10), and its suggestion that it was the unwitting victim of default settings (Mot.

---

[6] In the cases on which Anthropic relies, the defendants did not even challenge the direct-infringement claims based on copying works for training. *See Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 777 (N.D. Cal. 2024); *Kadrey v. Meta Platforms, Inc.*, 2023 WL 8039640, at *1 (N.D. Cal. Nov. 20, 2023); *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 864 (N.D. Cal. 2023); *see also Justice v. Uncharted Labs, Inc.*, No. 25-cv-5026, 2026 WL 1430232, at *1-2 (S.D.N.Y. May 21, 2026) (motion directed only to derivative-work, circumvention, and state-law claims).

[7] Anthropic also points to authorities in which plaintiffs asserted claims to unprotected works, but Plaintiffs assert their copyrights over their entire books; there is no question that Plaintiffs can assert claims over their books. *See, e.g.*, *Peters v. West*, 692 F.3d 629, 636 (7th Cir. 2012) (claiming copyright for use of a rhyme pattern, as opposed to the entire text); *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 916 (9th Cir. 2010) (claiming copyright over "unprotectable elements" of sketches).

9) on its own torrent client strains credulity. Even if it were plausible, it cannot be considered; "courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage," *Khoja*, 899 F.3d at 1014, and the Complaints allege that Anthropic deliberately torrented millions of books and uploaded them to others. *Cambronne* ¶¶ 65, 69, 88. Furthermore, Anthropic has told this Court that inquiry into its re-uploading will require an expensive and burdensome investigation including identification of torrent counterparties, forensic reconstruction of the file pieces transmitted, and analysis of uploading configurations. Mot. to Stay Discovery, ECF No. 232 at 1. Anthropic's own description confirms that Plaintiffs' allegations are not speculation but concrete, testable claims, and that whether Anthropic uploaded Plaintiffs' works is a factual question for discovery, not one to resolve on the pleadings.

Anthropic's de minimis argument fares no better. As addressed above, Plaintiffs allege that Anthropic torrented and redistributed complete, verbatim copies of their books. *See Cambronne* ¶¶ 59, 96; *Bell*, 12 F.4th at 1074-1079. Anthropic cannot rewrite Plaintiffs' Complaints with its factual argument; these are questions of fact for discovery. *See McAdory v. M.N.S. & Assocs., LLC*, 952 F.3d 1089, 1093 (9th Cir. 2020). Judge Alsup rejected Anthropic's factual and legal arguments that it only "obtained partial books due to errors in torrenting," finding Anthropic failed to provide any evidence of partial copying and, even if Anthropic had been able to prove incomplete copying, "stealing a page of a copyrighted work is still a violation." *Bartz*, 791 F. Supp. 3d at 1056-58.

Anthropic also attacks scienter, but scienter need only be pleaded generally and Plaintiffs' allegations here more than satisfy that standard. *See* Fed. R. Civ. P. 9(b); *United States v. 1850 Bryant Land LLC*, No. 21-cv-05742-RS, 2023 WL 4297585, at *5 (N.D. Cal. June 30, 2023) ("Well pleaded facts such as these are sufficient to establish Defendants' knowledge, and if nothing else they support an inference of scienter based on the circumstances. The TAC thus sufficiently avers scienter"); *Cambronne* ¶¶ 5-8, 90, 96-98. A similar challenge was likewise rejected in *Entrepreneur Media*:

> [T]he general scienter requirement for contributory liability—that is, the standard that applies when the *Sony* defense is not applicable—is that the secondary infringer know or have reason to know of direct infringement. That standard is satisfied by Entrepreneur's allegations that Meta deliberately downloaded copyrighted works using BitTorrent, which users know requires uploading the works to the torrenting

> network, and that Meta knew or had reason to know that members of the network were infringing as a result.

2026 WL 898253, at *1; *see also Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 121 (2d Cir. 2010) ("no more definitive assertion as to lack of permission seems possible when the [file sharing software] users remain anonymous.").

**E. Plaintiffs' CMI-Removal Claims Are Properly Pleaded.**

Anthropic makes three arguments against Plaintiffs' CMI claims: that Plaintiffs lack standing, Mot. 15-17; that Plaintiffs do not allege Anthropic removed CMI, *id.* at 17-19; and that Plaintiffs fail to plead scienter, *id.* at 19-20. Each fails.

*First*, Anthropic is wrong that Plaintiffs have alleged no concrete injury. Its theory has already been rejected in this District just last year in *Kadrey v. Meta Platforms, Inc.*:

> The plaintiffs have alleged a sufficient injury for Article III standing. Although the specific right created by the DMCA may be comparatively new, Meta's removal of copyright management information is an interference with a property right that is closely related to the kind of property-based harms traditionally actionable in copyright. The removal of CMI is thus a concrete injury for standing purposes.

No. 23-cv-03417-VC, 2025 WL 744032, at *1 (N.D. Cal. Mar. 7, 2025); *see also The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 28–29 (S.D.N.Y. 2025). Anthropic mischaracterizes *Kadrey* as finding injury only because the plaintiffs alleged that Meta's model output CMI-stripped works. Mot. 16. *Kadrey* held that "[t]he removal of CMI" is itself "a concrete injury." 2025 WL 744032, at *1. *TransUnion* does not hold otherwise. The harm there, inaccurate credit information, was analogous to defamation, which requires publication; that is why an unshared report "in her desk drawer" caused no injury. Mot. 15-16 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 434 (2021)). CMI removal is instead a property-based harm, *Kadrey*, 2025 WL 744032, at *1, and interference with property is complete when it occurs.

Anthropic's reliance on *Raw Story* is similarly unavailing. There, the plaintiffs alleged only that their CMI-stripped articles "remain[ed] in ChatGPT's repository." Mot. 16 (citing *Raw Story Media, Inc. v. OpenAI, Inc.*, 756 F. Supp. 3d 1, 6-7 (S.D.N.Y. 2024)). Plaintiffs here allege more: Anthropic itself stripped their CMI, *Cambronne* ¶¶ 72, 103, and Claude retains "near-verbatim

copies" of their works, *id.* ¶ 7. *Raw Story* is also the outlier. *Kadrey* and *Intercept* both found standing despite it. *Kadrey*, 2025 WL 744032, at *1. Anthropic's traceability argument, Mot. 17, fails for the same reason. It rests on paragraph 71's allegations about third-party datasets. But Plaintiffs separately allege that Anthropic itself removed CMI from the Infringed Works upon downloading them. *Cambronne* ¶¶ 72, 103. Anthropic concedes that standing exists where "the defendant itself did the removing." Mot. 17. Plaintiffs alleged Anthropic did so.

Nor does *GitHub* help Anthropic. *GitHub* concerned an "output" theory: that Copilot reproduced the plaintiffs' code without its CMI. *Doe 1 v. GitHub, Inc.*, 191 F.4th 1061, 1065 (9th Cir. 2026). The Ninth Circuit held that a model generating new code does not "remove" CMI from it. But the court expressly distinguished a separate "input" theory, that defendants violated "section 1202(b)(1) at the training stage by removing CMI . . . before feeding the stripped code into Copilot as training data," *id.* at 1065, and declined to reach it only because the plaintiffs had forfeited it. Plaintiffs bring that input theory here: "[u]pon downloading" the Infringed Works, Anthropic "processed the data" and "removed and altered" their CMI to "clean its training data." *Cambronne* ¶¶ 72, 103. *GitHub*'s analysis of outputs has nothing to say about it. For the same reason, Anthropic's attacks on the extraction studies, Mot. 16–17, are beside the point: Plaintiffs' injury does not depend on what Claude outputs.

*Andersen* is likewise inapposite. There, the plaintiffs' CMI allegations were "wholly conclusory," with "nothing in the Complaint about text CMI"—the plaintiffs only made allegations about their online images, failing to make any allegations about the types of CMI included in their online works. *Andersen*, 700 F. Supp. 3d at 872. Plaintiffs here identify the specific CMI their books carried: "author information, information about the copyright owner, and copyright notices." *Cambronne* ¶ 102. And contrary to Anthropic's argument that no CMI was "conveyed in connection with" the copies it downloaded, Mot. 17, Plaintiffs allege that Anthropic removed CMI "found in and on Plaintiffs' works" upon downloading them. *Cambronne* ¶ 103.

*Second*, as to the defense that third parties stripped the CMI—not Anthropic—Anthropic contends that the Complaint "place[s] the removal before Anthropic acquired the datasets." Mot. 17.

Not so. Plaintiffs allege that Anthropic itself, "[u]pon downloading" the Infringed Works, "processed the data" and "removed and altered" their CMI. *Cambronne* ¶ 103; *see also id.* ¶¶ 70, 72. Section 1202 reaches exactly that conduct.

Paragraph 71 separately alleges that certain third-party web datasets containing copyrighted material that Anthropic obtained, such as The Pile and Common Crawl, had already been stripped of CMI. That is no defense. Anthropic trained Claude on those datasets "despite knowing that they included unauthorized copies of copyrighted works stripped of their CMI," *Cambronne* ¶ 71, and it "distributed the Infringed Works" through BitTorrent, *id.* ¶¶ 65, 70. Knowingly distributing copies stripped of CMI is itself a violation of § 1202(b)(3).[8] CMI-stripping liability would attach to Anthropic whether or not some of the copies it obtained via piracy or downloading had that information already stripped out, and the CMI-stripping claim applies to all the books obtained by scanning. At most, Anthropic offers a competing inference, which the Court cannot adopt at this stage. *McAdory*, 952 F.3d at 1093-94.

Nor does the Complaint fail to name the tools used by Anthropic. Paragraph 71 identifies the extraction tools (Newspaper, Dragnet, Readability, and jusText) and alleges that Anthropic's founders were familiar with them. Paragraph 72 alleges that those founders, Mann and Kaplan among them, "compared extraction tools for filtering training data and then used these extraction methods to clean its training data, including the Infringed Works." *Id.* ¶¶ 71-72. Anthropic's reliance on *Concord* undermines its position. There, on allegations about the same datasets and the same tools, the court held that the plaintiffs had adequately alleged that Anthropic's cofounders intentionally removed CMI. Anthropic "elected to use a tool, Newspaper, that effectively removed CMI" from datasets including "Common Crawl" and "The Pile," choosing it "specifically because

---

[8] Although Count III's heading cites § 1202(b)(1), Plaintiffs seek relief under § 1202(b) generally, *Cambronne*, Prayer for Relief ¶ (d), and the Complaints allege facts supporting liability under § 1202(b)(3) as well: Anthropic "distributed the Infringed Works" through BitTorrent, and those works were "stripped . . . of copyright management information." *Id.* ¶¶ 8, 65, 70-71. A complaint need not identify the correct statutory subsection, because the federal rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam); *see also Alvarez*, 518 F.3d at 1157-58. At a minimum, Plaintiffs should be granted leave to amend to assert § 1202(b)(3) expressly.

it was more effective at removing CMI compared to another tool, jusText." *Concord Music Grp., Inc. v. Anthropic PBC*, No. 24-cv-03811-EKL, 2025 WL 4808984, at *1, *4 (N.D. Cal. Oct. 6, 2025). Anthropic did not even contest that it "intentionally remove[d] or alter[ed] CMI." *Id.* at *4. Plaintiffs allege the same conduct: the same datasets, the same tools, and Anthropic's choice of "tools that removed CMI more effectively." *Cambronne* ¶¶ 71-72. And Anthropic misdescribes *Concord* in claiming the claim survived because outputs were alleged. Mot. 18. The court's § 1202(b)(1) holding rested on Anthropic's tool selection and its cofounders' knowledge that language models memorize and "regurgitate" training data, not on outputs. *Concord*, 2025 WL 4808984, at *4-5. Outputs mattered only to the separate § 1202(b)(3) claim. *Id.* at *5.

Anthropic also argues that Claude's outputs are "new works" that "never carried CMI." Mot. 18 (citing *Doe 1 v. GitHub*, No. 24-7700, 2026 WL 2728464, at *1, *5 (9th Cir. Sept. 16, 2026)). But by Anthropic's own account, that argument reaches Count III only "to the extent it rests on Claude's outputs." Mot. 19. Plaintiffs' claim rests on Anthropic's removal of CMI from their works when it processed them for training. *Cambronne* ¶¶ 72, 103. Even if Plaintiffs had alleged an output theory, *GitHub* distinguished a model that generates new work from one that "look[s] up and reproduc[es] stored work." Mot. 18 (quoting *GitHub*, 2026 WL 2728464, at *5). Plaintiffs allege the latter: Claude's model weights contain "near-verbatim copies of copyrighted works, including Plaintiffs' works," *Cambronne* ¶ 7, which Claude can "reproduce [in] substantial portions . . . when prompted," *id.* ¶ 76; *see id.* ¶ 80. Anthropic's contrary characterization of its own technology is a factual dispute the Court cannot resolve at this stage. *Khoja*, 899 F.3d at 1014. And Anthropic's argument is circular. If Claude's outputs lack CMI, it is because Anthropic stripped the CMI from the works Claude was trained on. *Cambronne* ¶ 72 (Anthropic stripped CMI "from training data and outputs"). That is the removal § 1202(b)(1) prohibits, not a defense to it.

*Third*, Plaintiffs adequately plead the second scienter element: that Anthropic knew, or had reasonable grounds to know, that removing CMI would "induce, enable, facilitate, or conceal" infringement. 17 U.S.C. § 1202(b). At the pleading stage, knowledge "may be alleged generally." Fed. R. Civ. P. 9(b). *Stevens v. Corelogic, Inc.*, 899 F.3d 666 (9th Cir. 2018), on which Anthropic

relies, was decided on summary judgment, not the pleadings. Mot. 19. In any event, Plaintiffs allege specifics: Anthropic removed CMI because it "wanted Claude to reproduce protected expression, not the copyright notices that identify the rights holders." *Cambronne* ¶ 72. The "purpose and effect" of its tool selection "was to train Claude on Plaintiffs' expressive content while suppressing the ownership information attached to it." *Id.*; *see also id.* ¶¶ 8, 105. That is the theory Anthropic concedes was sufficient in *Kadrey*: the defendant knew that its model would output CMI unless CMI was removed from its training data. Mot. 20 (citing *Kadrey*, 2025 WL 744032, at *2). Anthropic removed CMI precisely so that Claude, which retains "near-verbatim copies" of Plaintiffs' works, *Cambronne* ¶ 7, would reproduce their expression without identifying its source.

The remainder of Anthropic's arguments ask the Court to draw inferences in its favor and wade into disputed facts at the motion to dismiss stage. First, Anthropic says it removed CMI only to improve its training data. Mot. 20. But Plaintiffs allege that was one reason "among other things." *Cambronne* ¶ 104. A company can have more than one motive, and a legitimate one does not cancel out an unlawful one. *See Concord*, 2025 WL 4808984, at *5; *Entrepreneur Media*, 2026 WL 898253, at *2. Second, Anthropic says removing CMI from a private corpus conceals nothing. Mot. 20. But Plaintiffs allege concealment through Claude's outputs, not just the corpus. Because Anthropic stripped CMI "from training data and outputs," users and copyright owners cannot tell where Claude's text came from. *Cambronne* ¶ 72. And Anthropic's efforts to keep its training data secret, *id.* ¶ 90, further confirm that it wanted the sources of that data hidden, *id.* ¶ 105.

**F. Anthropic's Work-Specific Defenses Fail.**

Anthropic's remaining arguments target particular works: eight it says were released in *Bartz*, works it says Plaintiffs do not own, works it says were published too late to be copied, works it says were registered too late for statutory damages, and works not yet identified. Mot. 20-25. These contentions rest on exhibits prepared by Anthropic's counsel and ask the Court to resolve factual disputes against Plaintiffs on the pleadings. Nothing Anthropic argues warrants dismissal.

<u>The *Bartz* Release Does Not Bar Plaintiffs' Claims.</u> Release is an affirmative defense, so Anthropic must show that it applies "beyond dispute" from the face of the complaints and properly

noticeable materials, with all reasonable inferences drawn in Plaintiffs' favor. *Robinson*, 771 F. Supp. 3d at 1124; *Scheibe*, 141 F.4th at 1098; *Khoja*, 899 F.3d at 1014. Anthropic cannot make that showing for any of the eight works it challenges. Its argument relies on material outside the pleadings that cannot be used to resolve a disputed fact against Plaintiffs. LeGolvan Decl. ¶¶ 9-10; LeGolvan Exs. 6-7; *see supra* § III.A; *Khoja*, 899 F.3d at 999, 1014.

Anthropic's argument is self-defeating. One of the eight works belongs to a Kwon Plaintiff. LeGolvan Ex. 7. Kwon alleges that Plaintiffs opted out of the *Bartz* settlement, *Kwon* ¶¶ 15-16, as Anthropic itself acknowledges. Mot. 4, 23. The other seven are Chicken Soup works, and the exhibit on which Anthropic asks the Court to dismiss the claims is facially inaccurate and in large part refutes Anthropic's argument that the claims were released. Anthropic represents that these works "were within the *Bartz* class." Mot. 20. But for five of them, its exhibit shows the Works List identifying a different book. Chicken Soup sues on *Breast Cancer*; the Works List identifies *Teacher Tales*.[9] Anthropic does not acknowledge these discrepancies, let alone explain them, yet asks the Court to find on a motion to dismiss that Chicken Soup released claims to books the settlement record does not identify.

Regardless, Chicken Soup timely opted out of the *Bartz* settlement. The Complaint does not expressly allege opt-out, but it makes clear that Chicken Soup chose to pursue its claims individually rather than through a class settlement. *Chicken Soup* ¶¶ 12-14. Read in Chicken Soup's favor, as it must be at this stage, that allegation supports the reasonable inference that Chicken Soup excluded itself from the *Bartz* class. *Khoja*, 899 F.3d at 1014. Even setting inference aside, the Complaint's silence on opt-out cannot establish Anthropic's defense. Chicken Soup nowhere admits that it was a class member or that it failed to opt out, and only a plaintiff who "admit[s] all the elements of an affirmative defense" pleads itself out of court. *Scheibe*, 141 F.4th at 1098.[10]

---

[9] *See* LeGolvan Ex. 6 at 1, 3, 5-7 (*Teenage Soul IV* listed as *Preteen Soul II*; *Breast Cancer* as *Teacher Tales*; *A Tribute to Moms* as *Christmas Magic*; *Father and Son's Soul* as *Dieter's Soul Daily Inspirations*; *Simply Happy* as *A Book of Christmas Miracles*).

[10] To the extent the Court disagrees, Chicken Soup requests leave to amend to expressly allege its opt-out. *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (facts raised in opposition

Finally, a release reaches only claims sharing an "identical factual predicate" with the settled claims. *Hesse v. Sprint Corp.*, 598 F.3d 581, 590-91 (9th Cir. 2010). Anthropic has already told the Court there is none here. To defeat tolling, it argues that the *Bartz* complaint "raised no CMI claim" and "alleged no upload to anyone," so that "[a] defendant reading that complaint would prepare to defend training-data copying, not the mechanics of a peer-to-peer client or data extraction tools." Mot. 6. Anthropic cannot argue that *Bartz* gave it no notice of Plaintiffs' distribution and CMI claims while also arguing that those claims share *Bartz*'s factual predicate. As Anthropic underscores, whether particular claims were released "presents a fact issue that cannot be resolved on a motion to dismiss." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1008-09 (9th Cir. 2014).

<u>Plaintiffs Adequately Allege Ownership.</u> Section 501(b) of the Copyright Act presents a merits question and not a jurisdictional one. *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1001 (9th Cir. 2015); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). Plaintiffs plead their legal or beneficial ownership or exclusive licenses of the works at issue. *Cognella* ¶¶ 15, 86; *Chicken Soup* ¶¶ 15, 84; *Cruz* ¶ 15; *Kwon* ¶ 15; *Cambronne* ¶ 15. A registration is only prima facie evidence of ownership, 17 U.S.C. § 410(c), and at most Anthropic raises a factual dispute about the copyrights that the Court cannot resolve on the pleadings, *Khoja*, 899 F.3d at 999. Anthropic has no basis to seek dismissal with prejudice—Plaintiffs have not "plead[ed] [themselves] out of court" and there have been no repeated failed amendments—this motion will be the Court's first ruling on a motion to dismiss in this case. *Scheibe,* 141 F.4th at 1098; *Eminence*, 316 F.3d at 1052. Anthropic's cases are not to the contrary. *See Viral DRM LLC v. Seven W. Media Ltd.*, 768 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025) (dismissing with leave to amend); *Lackey v. Sheppard*, No. 22-cv-5653-PA, 2022 WL 19241141, at *3 (C.D. Cal. Dec. 16, 2022) (same).

Anthropic's alternative request for Rule 19(c) compliance, Mot. 23-24, fails for the same reason. It rests on the possibility that registered owners might "sue later" and that Plaintiffs'

---

"should be considered by the court in determining whether to grant leave to amend"); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).

ownership claims "in some cases may conflict" with theirs. Mot. 23. But an absent party's interest must be more than "speculation about a future event," and Anthropic bears the burden of showing one. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).[11] The *Bartz* opt-outs do not supply what is missing; Anthropic cites no authority that opting out makes absent co-owners required parties. Mot. 23. And copyright co-owners are free to sue without one another: a co-owner may sue infringers "without joining any of his fellow co-owners," *Corbello v. DeVito*, 777 F.3d 1058, 1065 (9th Cir. 2015), and an absent owner's protection is their right to an accounting. *Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir. 1984).

Section 501(b) does not help Anthropic, either. The court "may require" notice to persons "shown, by the records of the Copyright Office or otherwise, to have or claim an interest in the copyright," and "shall require" notice only to persons "whose interest is likely to be affected by a decision in the case." 17 U.S.C. § 501(b). Joinder is discretionary, and an interested person may intervene. *Id.* Anthropic offers only possibilities: that absent owners' rights "could" be prejudiced, and that Plaintiffs' ownership claims "may conflict" with theirs. Mot. 23. It identifies no absent owner who disputes Plaintiffs' ownership, and no interest that is likely to be affected.[12]

<u>Plaintiffs Plausibly Allege Copying of Later-Published Works.</u> Anthropic's argument that certain works were published too late to have been part of certain downloading also fails. Anthropic argues only that these works "cannot have been downloaded." Mot. 24. It ignores allegations of unauthorized scanning since 2024, and repeated copying as part of Anthropic's central library and LLM training activities. *Cambronne* ¶¶ 73-75, 87-88. This case is not like *Oskar Sys., LLC v. Club Speed, Inc.*, where the alleged infringement was confined to one period that predated plaintiff's acquisition of the copyright. 745 F. Supp. 2d 1155, 1160 (C.D. Cal. 2010). Moreover, Anthropic's

---

[11] Anthropic's authority is not to the contrary. In *Shropshire v. Canning*, No. 10-cv-1941-LHK, 2011 WL 90136 (N.D. Cal. Jan. 11, 2011), the complaint's allegations established that there was a co-owner and the agreement attached to the complaint required the co-owner's approval for licenses and entitled it to a share of any recovery. Plaintiffs' Complaints plead no comparable agreement.

[12] Anthropic's footnote request for an order "[a]bsent agreement," Mot. 24 n.6, skips the process the Court set: an agreed proposal, or a motion giving Plaintiffs "a full opportunity" to respond. CMC Tr. 21:13-22:7, ECF No. 225. Plaintiffs remain willing to confer.

exhibits cannot be reconciled. Twenty-two of the 23 works in Exhibit 4, which Anthropic says were published too late to have been copied in the 2021-22 downloads, Mot. 24, reappear in Exhibit 5, which concerns works for which Anthropic says the alleged infringement "began" in 2021-22. Mot. 25; LeGolvan Exs. 4-5.

Statutory Damages Cannot Be Resolved on a Motion to Dismiss. Anthropic's § 412 argument fails for similar reasons. Anthropic cannot establish first dates of infringement as a fact at this point, nor can it identify at this stage (or perhaps, ever) the number of occasions on which it copied Plaintiffs' works. This is a result of its massive and indiscriminate copying and use of the works, as alleged by Plaintiffs. The registrations it purports to assemble in Exhibit 5 range from November 2022 to June 2025, but the Complaints allege scanning beginning in 2024, copying repeatedly during training, and other illicit uses of Plaintiffs' books and the incorporation of Plaintiffs' books into separate LLMs. *Cambronne* ¶¶ 73, 87-88, 90. Claude launched in March 2023, followed by seven successive versions described in *Bartz*. 787 F. Supp. 3d at 1014. Anthropic's authorities, *Zito* and *Becton*, fixed a single date from the plaintiff's pleading; here, the Complaints allege different kinds of violations across years. *Cambronne* ¶¶ 73, 87-88, 90. *Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1026 (N.D. Cal. 2003); *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-cv-933-MMC, 2020 WL 1877707, at *7 (N.D. Cal. Apr. 15, 2020). When infringement occurred is a fact question that Anthropic's exhibits cannot resolve. *See Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1102 (S.D. Cal. 2017).[13]

## IV. CONCLUSION

Anthropic does not dispute that it pirated, copied, and kept Plaintiffs' books. It asks the Court to dismiss the claims anyway, by reading the Complaints against Plaintiffs, treating its declaration and exhibits as established fact, and resolving disputed questions of timing, ownership, and release in its favor. None of that is permitted on a motion to dismiss. The Motion should be denied.

---

[13] Anthropic's request to limit each action to the works in its exhibit, Mot. 25, requires no ruling. Plaintiffs seek relief for the works listed in their Exhibits A, and any other work would only be added by amendment as contemplated under Rule 15.

Dated: November 16, 2026

Respectfully submitted,

*/s/ Elizabeth Brannen*

**STRIS & MAHER LLP**
Elizabeth Brannen (SBN 226234)
ebrannen@stris.com
Lauren Martin (SBN 294367)
lmartin@stris.com
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
T: (213) 995-6800
F: (213) 261-0299

**FREEDMAN NORMAND FRIEDLAND LLP**
Kyle W. Roche (*pro hac vice*)
kroche@fnf.law
Riley Clafton (*pro hac vice* forthcoming)
rclafton@fnf.law
155 E. 44th Street, Ste 915
New York, NY 10017
T: (646) 494-2900

*Counsel for Plaintiffs*